UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROBERT A. VIGEANT | : | |
| | : | |
| V. | : | C.A. NO. 02-441S |
| | : | |
| UNITED STATES OF AMERICA | : | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The defendant, United States of America, by and through its undersigned counsel, hereby moves for summary judgment, for the reasons set forth in the accompanying memorandum.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

ROBIN E. FEDER
Assistant United States Attorney
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by first-class mail, postage pre-paid, on the Plaintiffs' counsel, by mailing same on this the 31st day of October, 2005, to:

Daniel K. Flaherty, Esq.
Frederick A. Costello, Esq.
Flaherty, Butterfield & Costello
33 College Hill Road, Suite 20D
Warwick, RI 02886

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ROBERT A. VIGEANT :
:
V. : C.A. NO. 02-441S
:
UNITED STATES OF AMERICA :

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS FOR LACK OF JURISDICTION**

## I. INTRODUCTION

In his complaint filed under the Federal Tort Claims Act (FTCA), plaintiff Robert Vigeant (Vigeant) alleges the common law torts of false arrest (Count II), malicious prosecution (Count III), false imprisonment (Count IV) and abuse of process (Count V).[1] The United States moves for summary judgment, as there are no genuine issues of material fact, and the case can be decided as a matter of law, in its entirety. Fed. R. Civ. P. Rule 56(c). In addition, the United States moves to dismiss two counts for lack of jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). The motions are set forth separately, because the standard of review and the burden of proof are different for each motion.

The allegations in Vigeant's complaint are based on a search conducted by federal agents on May 12, 1997, pursuant to a warrant issued by this Court. The affidavit supported two search warrant applications in connection with an investigation of drug distribution and money laundering. The first was for the premises of Patrick M. Vigneau (Patrick Vigneau or Vigneau)

---

[1] As detailed, *infra*, plaintiff Concetta Pazienza (Vigeant's grandmother) was previously dismissed, as were claims for unlawful search and seizure (Count I) and lost investments and profits, inter alia (Count VI).

at 25 Kulas Road, West Warwick, Rhode Island. The second was for the premises at 24 Newport Lane, Narragansett, Rhode Island, Vigeant's residence. During the search of 24 Newport Lane, agents uncovered two firearms and ammunition that Vigeant admitted were his; seized the weapons and ammunition; and arrested Vigeant and charged him as a "felon in possession." He was tried by a jury, convicted, and sentenced to 235 months in prison. The First Circuit, finding fault with the affidavit supporting the search warrant application, vacated the conviction. United States v. Vigeant, 176 F. 3d 565 (1st Cir. 1999) (Vigeant). As will be detailed below, this Court is not bound by the First Circuit's finding that the search warrant affidavit did not set forth probable cause for several reasons, including, but not limited to, the fact that the probable cause at issue here is whether there was *probable cause to arrest Vigeant as a felon in possession,* and not whether the affidavit set forth probable cause to believe Vigeant had committed the offense of money laundering, the issue decided in Vigeant. At the time they arrested Vigeant, the agents knew that he was a convicted felon who had just admitted ownership of the weapons and ammunition found in his home. Therefore, as explained below, there was probable cause to arrest Vigeant as a felon in possession.

## II. BACKGROUND

### A. THE COMPANION CASES

The case against Vigeant began with a drug investigation involving Patrick Vigneau and Richard Crandall (Crandall). This was a joint investigation conducted by the Drug Enforcement Administration (DEA) and the Internal Revenue Service (IRS). United States v. Vigneau, 187 F.3d 70, 72 (1st Cir. 1999) (Vigneau I), attached as Exhibit A. Vigeant's name surfaced in the course of the Vigneau investigation and Vigeant and others were later identified as participating

members of the criminal venture. See, Exhibit B.[2] During the investigation, and before the search, the agents learned that Vigeant had an extensive criminal record, including convictions for carrying a pistol without a license; two separate convictions for extortion and blackmail; conspiracy; possession of arms after being convicted of a crime of violence; breaking and entering; and possession of a controlled substance. See, Exhibits C and D.[3]

In May 1997, Patrick Vigneau, Mark Vigneau, Donna Vigneau, Timothy Owens (Owens), Joseph Rinaldi (Rinaldi), Randy Panahi (Panahi) and Kyle Robson (Robson) were indicted on a variety of crimes, including participation in a continuing criminal enterprise, various marijuana offenses, conspiracies to distribute drugs, and money laundering.[4] Vigneau I at 73. The Government did not indict Vigeant at this time. Instead, it continued its investigation of Vigeant by obtaining a warrant to search Vigeant's residence for evidence of his involvement in the conspiracy. During that search, the agents uncovered the firearms which led to the criminal

---

[2] Exhibit B is a "DEA 6" report dated February 13, 1996, pertaining to Vigeant while the investigation was ongoing. Further detail regarding the companion cases can be found in Vigneau I at pp. 72-75.

[3] Exhibits C and D reflect Vigeant's criminal conviction information obtained separately by DEA and IRS, respectively, more than one year before the search.

[4] Vigneau was tried with his brother Mark Vigneau and others in a three-month trial. Vigneau I at 73. Vigneau was found guilty and sentenced to 365 months in prison. Vigneau I at 74. Panahi and Owens pled guilty to conspiracy to distribute marijuana. Vigneau I at 73. The government dismissed a similar charge against Donna Vigneau. Vigneau I at 73. The jury convicted Patrick Vigneau, Mark Vigneau and Rinaldi on various counts, and acquitted Robson. Vigneau I at 73. Crandall separately pled guilty to a marijuana conspiracy charge, and his sentence of 188 months was later upheld. Vigneau I at 73-74; United States v. Crandall, 181 F.3d 80 (1st Cir.1999); as to sentence, see, District Court docket 97-CR-066. During the Vigneau investigation, Owens and Panahi, who had also cooperated in the investigation, agreed to make a controlled delivery to Vigneau, but a Warwick Police Department dispatcher tipped off Vigneau. The dispatcher was subsequently convicted of unlawfully giving notice of an impending search and seizure. See, United States v. Reccko, 151 F.3d 29 (1st Cir. 1998). She was sentenced to 15 months in prison. See, District Court docket, 97-CR-032.

charges against Vigeant and this complaint.[5] See, Exhibits F and G.[6]

**B. THE SEARCH OF VIGEANT'S RESIDENCE**

Pursuant to the search warrant, agents searched Vigeant's residence on May 12, 1997. During the search, agents located two firearms and ammunition, as well as multiple bags of marijuana, a $9,000.00 cashier's check, a $5,000.00 Fleet Bank transaction receipt, a personal check for $10,000.00 to Sakonett Associates, a personal check for $20,000 to Michael Crowley, a bill of sale for a 1989 28' Stalker boat and other records, including handwritten notes indicating "$20,000 for profit from 'pot'." See, Exhibits F, G and H.[7] At the time the weapons were found, Vigeant admitted that they were his. Exhibit G. Subsequently, in a letter to Judge Lisi in support of his request to remain free on bail, he admitted that he made those statements, but argued that they were the product of a coercive environment. See, Exhibit I, p. 2. See also, Exhibit J, the trial testimony of Special Agent David Sherman of ATF regarding Vigeant's admissions during the search that the guns were his and that he knew he could not lawfully possess them, as well as the motion to suppress statements, filed by Vigeant, as criminal defendant, in District Court

---

[5] Although the First Circuit found that probable cause for the search warrant had not been set forth within the four corners of the affidavit, defendant is prepared to demonstrate that the agents actually had probable cause to seek the search warrant. Defendant is not raising that defense to Counts II, III and IV in this motion, but reserves the right to raise that defense in a later motion and/or at trial, should that be necessary. See, the government's Objection to Vigneau's Motion For New Trial, attached as Exhibit E.

[6] Exhibit F is a DEA investigative report, dated May 20, 1997, reflecting the items found at Vigeant's home during the search. Exhibit G is the investigative report of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), dated May 19, 1997, reflecting Vigeant's admission at the time of the search that the weapons were his and that he knew he could not lawfully possess them. This report also details Vigeant's criminal record from BCI reports found at his home during the search.

[7] Exhibit H contains copies of the hand-written notes reflecting "profit from pot."

docket no. CR- No. 97-042, contending that his admission that the guns were his was an "involuntary confession." See, Defendant's Motion To Suppress Statements, attached as Exhibit Q.

As set forth above, the agents knew that he had previously been convicted of a variety of felonies. Exhibits C, D and G. Not only were the agents aware of Vigeant's criminal history, his record is beyond dispute. After he was arrested, Vigeant gave a statement and made a proffer to federal agents in an attempt to mitigate his impending punishment. The statement and proffer illustrate Vigeant's ongoing criminal activity right up until the time he was arrested in 1997. The activity, according to Vigeant, involved a corrupt law enforcement officer, an ongoing dispute with members of the New York mafia over Vigeant's debts for a load of marijuana, and the smuggling of cocaine through T.F. Green Airport. Vigeant even revealed that 127-129 Oakland Street, one of the houses he now claims was part of a legitimate real estate empire that collapsed because of his conviction, was going to be used by him and Guatemalan associates to convert cocaine paste smuggled into Rhode Island into cocaine. See, the report detailing the statement Vigeant gave after his arrest, attached as Exhibit K, and Vigeant's proffer, attached as Exhibit L. Vigeant's Presentence Report, produced by Vigeant in discovery, and attached as Exhibit M, disclose, among other things, that the 1989 extortion and blackmail conviction was the result of Vigeant demanding cash from an attorney under threat of having his girlfriend (the attorney's then client) accuse the attorney of rape; and that the 1991 extortion and blackmail conviction was the result of Vigeant's demand for $5,000, because the intended extortion victim damaged the pride of a friend of Vigeant's. Id.

**C. CRIMINAL CHARGES AGAINST VIGEANT**

Following the search, Vigeant was arrested and charged with two counts of being a felon in possession of a firearm and one count of possession of ammunition. See, Docket Sheet, USA v. Vigeant, 97-CR-42, attached as Exhibit N. Vigeant's initial appearance before the Court was May 13, 1997; he was indicted on May 21, 1997, and arraigned on May 22, 1997. Id. On July 10, 1997, Vigeant filed a motion to suppress items on the grounds that the warrant application and affidavit did not establish probable cause to believe that he had been involved in drug distribution or money laundering. Id. He also filed a motion to suppress statements. Id. Both motions were denied. Id.

On September 2, 1997, Vigeant filed a motion for a Franks hearing (initial motion), challenging Special Agent Botelho's affidavit as the product of either deliberate falsehood or a reckless disregard for the truth. It was denied.[8] Id. On December 22, 1997, Vigeant requested the Court to reconsider its decision regarding the Franks hearing (second motion). Id. That motion was also denied. Id. Vigeant was convicted of possessing one of the firearms and the ammunition. Id. On April 3, 1998, he was sentenced to 235 months' incarceration as an armed-career criminal. Id. Although the conviction was reversed on appeal, the First Circuit did not find Vigeant innocent of the charges against him. It found that the affidavit supporting the search warrant application did not set forth probable cause to believe Vigeant had been involved in the money laundering conspiracy. Rather than remand the case to the District Court with instructions to conduct a Franks hearing, the appellate court vacated the conviction. Vigeant, 176

[8] Franks v. Delaware, 438 U.S. 154 (1978).

F.3d at 571.[9]

**D. TRAVEL OF THE CIVIL CASES**

Prior to the filing of this complaint under the FTCA, Vigeant filed a Bivens action on May 11, 2000, in which he alleged that Botelho and other unknown agents of ATF, DEA and IRS had violated his Fourth Amendment rights.[10] Vigeant's first two motions to enlarge the time to serve defendants were granted, but the third such motion was denied on December 13, 2000. See, District Court docket, C.A. No. 00-236T. Vigeant filed an interlocutory appeal of the third denial of the motion to enlarge the time to serve to the First Circuit, but later voluntarily dismissed it. See, Court of Appeals docket, C.A. No. 01-1020. Subsequently, Vigeant voluntarily dismissed the District Court action. See, District Court docket, C.A. No. 00-236T.

In his administrative claim, filed on May 11, 2001, Vigeant requested $18,310,000.00 from DEA, IRS, and ATF. Concetta Pazienza, another plaintiff, filed separate claims. The claims were denied on April 17, 2002. The FTCA complaint was filed in the United States District Court on October 9, 2002. Defendant filed a motion to dismiss all counts of the complaint, except Count III - the malicious prosecution claim, and all claims of plaintiff Pazienza. A report and recommendation (R&R) that two of the counts and all of Pazienza's claims be dismissed was issued on May 6, 2004. Id. The United States objected to the May 26, 2004, R&R, in part. The District Court affirmed that R&R, dismissing Pazienza and Counts I and VI. Although the Court stated that "the defendant's objection [as to the other counts] does

[9] The State Attorney General later moved to surrender Vigeant as a probation violator. The Superior Court of Rhode Island, Israel, J. found Vigeant guilty of the weapons charges, but did not find him to be in violation of his probation. See, transcript of violation hearing, August 20, 1999, p. 77, 80, attached as Exhibit O.

[10] Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

appear to have merit," it did not rule on the substance of the motion as to the other counts because it would not have disposed of the entire case. See, Memorandum and Order, dated October 1, 2004, p. 1.[11]

### E. SUMMARY OF ARGUMENT

**1. Summary Judgment** - The following defenses require that summary judgment enter for the United States on Count II (false arrest); Count III (malicious prosecution); Count IV (false imprisonment); and Count V (abuse of process):

The First Circuit opinion does not establish – through res judicata, collateral estoppel or otherwise – that the United States did not have probable cause for purposes of plaintiff's claims in this action. Vigeant was prosecuted for possession of a firearm, not money laundering, and the relevant issue in these tort claims is whether there was probable cause to believe Vigeant was a felon in possession of a firearm at the time he was arrested and charged, not whether there was probable cause to issue the search warrant. In order to prevail on his claims for false arrest, malicious prosecution and false imprisonment, plaintiff must prove, among other elements, that

[11] Subsequently, on February 18, 2005, defendant filed a motion to compel discovery responses which was granted by rule of court. The order was not complied with and defendant filed a motion to dismiss based on discovery violations on March 16, 2005. During a Rule 16 conference with Court, Smith J., on March 28, 2005, plaintiff's fact discovery closure and expert disclosure dates were extended to May 2, 2005. At the Court's request, defendant withdrew its motion to dismiss, without prejudice to renewing it. Vigeant did not comply with the Court's order, and defendant renewed and then amended its motion to dismiss on May 9, 2005 and May 11, 2005, respectively. An R&R issued on June 17, 2005, suggesting that the motion be denied and that Vigeant be ordered to provide supplemented discovery and expert disclosures not later than July 15, 2005. A decision on defendant's objection to the June 17, 2005, R&R is being held in abeyance until the instant motion is ruled on. See, Scheduling Order, dated August 2, 2005. Vigeant finally supplemented his expert disclosures on August 26, 2005 - 4 ½ months after the Court's order and 1 ½ months after the magistrate judge's recommended extended deadline. Defendant continues to press its motion to dismiss for Vigeant's failure to comply with the Court's discovery orders, including the R&R's generous recommendations.

there was no probable cause to arrest and charge him as a felon in possession of a firearm. As the United States had probable cause to arrest and charge Vigeant as a felon in possession of a firearm, judgment as a matter of law must enter on Counts II, III and IV (false arrest, malicious prosecution and false imprisonment);

Under the Rhode Island law of malicious prosecution (Count III), a plaintiff must demonstrate four elements. One of these is lack of probable cause, which plaintiff must establish by "clear proof." Not only was there probable cause, as stated above, but the conviction on weapons charges, even though subsequently reversed on appeal, conclusively establishes that there was probable cause to charge Vigeant with that offense. Another element requires plaintiff to prove that the prior prosecution resulted in a "favorable termination." The termination of a prior criminal proceeding must be reflective of the plaintiff's innocence of those charges in order to be favorable. Vigeant cannot demonstrate that his criminal case resulted in a favorable termination. Although his conviction was reversed on appeal, the reversal was on Fourth Amendment grounds only, and is not the equivalent of a finding that he was innocent of the charges of possession of a firearm by a convicted felon. Therefore, judgment must enter for defendant on Count III;

Proof that the plaintiff in a malicious prosecution case was in fact guilty of the offenses with which he was charged is a complete defense to the claim of malicious prosecution, even if the original prosecution was brought without probable cause and with malice. Based on his conviction and his admissions, Vigeant was guilty of the crime with which he was charged, and judgment must enter for defendant on his malicious prosecution claim;

Plaintiff's claimed injuries were not proximately caused by the search of which he complains. Victims of unreasonable searches may recover damages related to invasion of their

privacy, but not for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution.

An abuse of process (Count V) is different than malicious prosecution. To prove abuse of process, a plaintiff must demonstrate that the defendant instituted and used proceedings for an ulterior or wrongful purpose that the proceedings were not designed to accomplish. Abuse of process cases typically involve misuse of such procedures as discovery, subpoenas, and attachment. Vigeant has neither alleged that the process was abused, nor that the process was used for any purpose other than the criminal process. He alleged that agents sought a search warrant in an attempt to prosecute him, and that is what they did. Judgment must enter for defendant on Count V;

**2. Lack of Subject Matter Jurisdiction** - Vigeant's claims for false arrest and false imprisonment (Counts II and IV) are barred by the two-year statute of limitations, and should be dismissed for lack of jurisdiction. The accrual date for false arrest and false imprisonment is the date of arrest. Vigeant was arrested and imprisoned on May 12, 1997. He had until May 12, 1999, to file his administrative claim, but it was not filed until May 11, 2001, almost two years late. Therefore, Counts II and IV must be dismissed.

## III. ARGUMENT

### A. STANDARD FOR REVIEW

#### 1. The Summary Judgment Motion

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Pagano

v. Frank, 983 F.2d 343, 347 (1st Cir. 1993); Lipsett v. University of Puerto Rico, 864 F.2d 881, 894 (1st Cir. 1988). Astoria Jewelry v. N. Barquet, Inc., 291 F. Supp. 2d 16, 21 (D.P.R. 2003), aff'd by Jewelers Mutual Ins. Co. v. N. Barquet, 410 F.3d 2 (1st Cir. 2005). The role of summary judgment in civil litigation is "'to pierce the pleadings to assess the proof in order to see whether there is a genuine need for a trial.'" Ousley v. Town of Lincoln, 313 F. Supp. 2d 78, 81 (D.R.I. 2004) quoting *De-Jesus-Adorno v. Browning Ferris Ind. of Puerto Rico, Inc.*,160 F.3d 839, 841 (1st Cir.1998). When a motion for summary judgment is directed against a party that bears the burden of proof, the movant bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).[12] If that showing is made, the nonmovant then bears the burden of producing definite, competent evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The evidence "cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial." Mack, 871 F.2d at 181. In other words, the nonmovant is required to establish that there is sufficient evidence to enable a jury to find in its favor. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through filing of supporting affidavits or otherwise, that there is a genuine issue for trial. See, Goldman v. First Natl Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993); Astoria Jewelry, Inc., 291 F. Supp. 2d at 16.

---

[12] A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. Mack v. Great Atl. & Pac. Tea Co., Inc., 871 F.2d 179, 181 (1st Cir. 1989).

**2. Motion To Dismiss For Lack of Subject Matter Jurisdiction**

The United States also moves to dismiss two counts based on a lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Specifically, the Court lacks jurisdiction to entertain Counts II and IV (false arrest and false imprisonment), because they are barred by the statute of limitations.

The standard for dismissal for lack of jurisdiction is different than that for summary judgment. When an FTCA claim is barred by the statute of limitations, see Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002); and Roman v. Townsend, 224 F.3d 24, 28 (1st Cir. 2000), it must be dismissed for lack of subject matter jurisdiction.

Once subject matter jurisdiction has been questioned, it is the plaintiff's burden to establish, by competent proof, that jurisdiction in fact exists. Pejepscot Industrial Park, Inc. v. Maine Central Railroad Co., 215 F.3d 195, 200 (1st Cir. 2000); Murphy v. United States, 45 F.3d 520, 522 (1st Cir.1995), cert. denied, 515 U.S. 1144 (1995); Bank One Texas, N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992). "No presumption of truthfulness attaches to the [plaintiff's] allegations [of jurisdiction]." Media Duplication Services, Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1235 (1st Cir. 1991). Matters outside the pleadings can be presented to and considered by the court in ruling upon a motion to dismiss for lack of subject matter jurisdiction. Gonzalez, 284 F.3d at 288; Dynamic Image Technologies, Inc. v. United States, 221 F.3d 34, 37 (1st Cir. 2000). "District courts have wide discretion to determine which procedures to employ in resolving the jurisdictional issue." Bank One, Texas, 964 F.2d at 51.

## B. THE FIRST CIRCUIT'S DECISION DOES NOT ESTABLISH ANY OF THE ELEMENTS OF PLAINTIFF'S CLAIMS

Defendant expects that Vigeant will ask this court to hold that his burden of establishing a lack of probable cause in this action is carried by the First Circuit's opinion reversing his conviction. Although a thorough discussion of why collateral estoppel does not apply is deferred until, and if, plaintiff articulates such an argument, defendant briefly explains here why the issues raised in this motion are not precluded by the criminal case.

"Collateral estoppel 'is the doctrine which renders conclusive in a subsequent action on a different claim the determination of particular issues actually litigated in a prior action.'" Wiggins v. Rhode Island, 326 F. Supp. 2d 297, 303 (D.R.I. 2004). A party seeking to estop the litigation of an issue by reference to a previous adjudication between the parties must establish (1) that the issue sought to be precluded is the same as that which was involved in the prior proceeding, (2) that the point was actually litigated in the earlier proceeding, (3) that the issue was determined by a valid and binding final judgment or order, and (4) that the determination of the issue in the prior proceeding was essential to the final judgment or order. Faigin v. Kelly, 184 F.3d 67, 78 (1st Cir. 1999). The reach of collateral estoppel is "confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding." Comm'r of Internal Revenue v. Sunnen, 333 U.S. 591, 599-600 (1948).

"The burden of showing that an issue raised in a subsequent proceeding 'is identical to one that was raised and necessarily decided in the prior action rests squarely on the party moving for preclusion.'" Cobb v. Pozzi, 363 F.3d 89, 113 (2d Cir. 2004), quoting Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000). Here, the issues are different. As set forth more fully below, to prevail in this action, plaintiff must prove that there was no probable cause to arrest him and

charge him with possession of a firearm by a convicted felon. The issue addressed in the First Circuit opinion was whether probable cause to believe that Vigeant had participated in the drug and money-laundering conspiracy had been set forth within the four corners of the affidavit. Vigeant, 176 F.3d at 569. Since the issues in the two proceedings are different, collateral estoppel does not apply.

Even if the issue in this case were whether there was probable cause to search for evidence of money laundering, and it is not, the change in the burden of proof renders the issues in the two different proceedings non-identical, and thereby makes collateral estoppel inappropriate. Cobb, 363 F.3d at 113; Clark v. Bear Stearns & Co., 966 F.2d 1318, 1320 (9th Cir. 1992). Issue preclusion does not apply when the party seeking to benefit from preclusion has a significantly heavier burden in the subsequent action than in the prior action. Restatement of Judgments (Second) § 28(4); James W. Moore *et al.*, Moore's Federal Practice, § 18-132.02[4][e] (2005). Since the search at issue in the prior criminal proceeding was conducted pursuant to a warrant, it was Vigeant's burden in that proceeding to show by a preponderance of the evidence that the search was unlawful. United States v. Matlock, 415 U.S. 164, 177-78, n. 14 (1974); United States v. Legault, 323 F. Supp. 2d 217, 220 (D.Mass. 2004). In a claim of malicious prosecution, plaintiff must "establish the existence of malice and want of probable cause by clear proof." Rezendes v. Beaudette, 797 A.2d 474, 479 (R.I. 2002); quoting Clyne v. Doyle, 740 A.2d 781, 782 (R.I. 1999). Since plaintiff faces a higher burden of proof in this case than he bore in the prior criminal case, collateral estoppel is inapplicable.

Moreover, collateral estoppel will not be applied unless the party to be precluded had a full and fair opportunity to litigate the issue in the prior proceeding. Allen v. McCurry, 449 U.S. 90, 95 (1980). In the criminal case, the precise issue was whether "the information provided in

the four corners of the affidavit" established probable cause. Vigeant, 176 F.3d at 569. The United States could not have offered evidence outside of the affidavit to prove the existence of probable cause at the suppression hearing. See, Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 565, n.8. There is no such limitation on the United States in its defense of this case. Since the United States did not have a full opportunity to offer evidence that it in fact had probable cause at the time the warrant was obtained, it would be improper to rely on the First Circuit opinion to preclude litigation of the issue of the different probable cause in this case. Here, a new determination is mandatory because "the party sought to be precluded ... did not have an adequate opportunity to obtain a full and fair adjudication in the initial action." Restatement of Judgments (Second) § 28(5)(c) (1982).[13]

For these and other reasons, the issue of lack of probable cause is not established by the First Circuit opinion.

### C. BECAUSE THERE WAS PROBABLE CAUSE TO ARREST AND PROSECUTE VIGEANT FOR POSSESSION OF A FIREARM, JUDGMENT SHOULD ENTER FOR THE UNITED STATES ON HIS CLAIMS OF FALSE ARREST, MALICIOUS PROSECUTION AND FALSE IMPRISONMENT (COUNTS II, III AND IV)

As set forth more fully below, one of the elements of a malicious prosecution action is lack of probable cause to prosecute for the offense charged. Henshaw v. Doherty, 881 A.2d 909, 915 (R.I. 2005); Wiggins, 326 F. Supp. 2d at 312.[14] Similarly, to prevail on a claim for false

[13] Whether viewed under the full and fair opportunity to litigate principal or under the principle that the issues in the two cases must be identical, the result is the same: collateral estoppel will not establish a lack of probable cause in this case or preclude the United States from litigating that issue.

[14] An action for malicious prosecution requires proof of four elements: (1) the initiation of a criminal proceeding against the person who is now the tort plaintiff; (2) the termination of the previous proceeding in that person's favor; (3) a lack of probable cause on defendants' part when they initiated the criminal proceeding; and (4) the existence of malice on defendants' part.

arrest, a plaintiff "must demonstrate that he was detained without legal justification, that is, without probable cause." Id., citing Winn v. Collins, 723 A.2d 798 (R.I. 1998). A claim for false imprisonment is also similar - it is the restraint of another without legal justification. Cioci v. Santos, 207 A.2d 300, 302 (R.I. 1965).[15] *Lack of* probable cause is therefore an essential element in plaintiff's false arrest, false imprisonment, and malicious prosecution claims. Beaudoin v. Levesque, 697 A.2d 1065, 1067 (R.I. 1997) (characterizing lack of probable cause as "a necessary element in false arrest, false imprisonment, and malicious prosecution claims").

The existence of probable cause is a question of law to be determined by the Court. Solitro v. Moffatt, 523 A.2d 858, 862 (R.I. 1987), citing Prosser & Keeton, The Law of Torts § 119 at 882 (5th ed. 1984); Restatement (Second) Torts § 673, comment (e) at 450 (1977). The standard of probable cause for either arrest or the issuance of an arrest warrant is defined as "those facts and circumstances known to the police [] or of which they have reasonably trustworthy information that would cause a person of reasonable caution to believe that a crime has been committed and that the person under suspicion has committed it." Henshaw, 881 A.2d 915-16 and n. 7; Ensey v. Culhane, 727 A.2d 687, 691 (R.I. 1999). See also, Hoffman v. Reali, 973 F.2d 980, 985, 986 (1st Cir. 1992) ("Only the probability, and not a prima facie showing of criminal activity is the standard of probable cause"). Probable cause can and often does rest

---

Henshaw, 881 A.2d at 915.

[15] In Dyson v. Pawtucket, 670 A.2d 233, 239 (R.I. 1996) the court set forth the plaintiff's burden in establishing false imprisonment as follows: A "plaintiff must show more than that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. The plaintiff must also show that he or she was detained without legal justification." (Internal quotations and citations omitted). The elements of lack of probable cause and malice must be supported by "clear proof." Rezendes, 797 A.2d at 479.

upon evidence that would not by itself be sufficient to prove guilt in a criminal trial. Henshaw, 881 A.2d at 916. See also, United States v. Ventresca, 380 U.S. 102, 107 (1965). The determination of probable cause should be made in accordance with a "flexible 'totality-of-the-circumstances' analysis." Henshaw, 881 A.2d at 916, quoting Illinois v. Gates, 462 U.S. 213, 238 (1983).

Vigeant has attempted to frame the question in this case as whether the agents had probable cause to believe he was involved in the drug distribution and money laundering conspiracy that was set out in the search warrant affidavit. Indeed, his entire cause of action is based exclusively on the First Circuit's ruling in Vigeant, 176 F.3d at 565, in which that court found that the affidavit in support of the search warrant application did not set forth probable cause to believe Vigeant was involved in that conspiracy. Id. Vigeant's reliance on this decision to seek more than eighteen million dollars ($18,000,000) in damages as a result of his later arrest, arraignment, conviction and imprisonment as a felon in possession of a firearm is insufficient to support his claims. In fact, Vigeant does not even present a claim for unreasonable search and seizure in this lawsuit. His claim of unreasonable search and seizure (Count I) was dismissed by this Court on October 1, 2004, and his previously-filed Bivens action, based on the search, was voluntarily dismissed on February 27, 2001. His attempt to now cram the square peg of a Fourth Amendment violation into the round hole of an action for malicious prosecution, false arrest and false imprisonment fails.[16]

[16] Apparently unsatisfied with the amount of damages he would be able to recover in a civil rights claim for unlawful search and seizure, Vigeant abandoned his Bivens case in favor of a belated tort claim for damages far in excess of what he might have recovered in the Bivens case. "[T]here is a gross disconnect between the ... unreasonable search and seizure and the injury or harm for which [plaintiff] seeks a recovery (his subsequent conviction and incarceration)." Townes v. City of New York, 176 F.3d 138, 148 (2d Cir. 1999).

As set forth above, in order to establish his malicious prosecution claim, Vigeant must prove that the original action was instituted without probable cause. That is the essence of malicious prosecution. Vigeant was arrested and prosecuted for being a felon in possession of firearms and ammunition.[17] The correct probable cause inquiry is therefore: whether the agents who made the arrest had reasonably trustworthy information that would cause a person of reasonable caution to believe that Vigeant committed the offense of possession of a firearm by a convicted felon, the offense with which he was charged.

That this is the correct question is demonstrated by several cases. In Gordy v. Burns, 294 F.3d 722 (5th Cir. 2002), the court reached this same conclusion as to the proper inquiry under strikingly similar circumstances. There, a Louisiana Sheriff's Department received information from a DEA agent indicating that UPS employees in California had discovered a package containing approximately 20 pounds of marijuana, addressed to "C. Charles" at an apartment in Metairie, Louisiana. The Sheriffs submitted an application for a search warrant to be executed following a controlled delivery of the package. The package was delivered and was signed for by Gordy. The officers then forced their way into the apartment, arrested Gordy, took custody of the package and searched the apartment. Gordy was charged with possession of marijuana with

[17] To establish a violation of 18 U.S.C. § 922(g)(1), the government must prove the following elements:

(1) that the defendant knowingly possessed a firearm (actual or constructive possession);

(2) in or affecting commerce; and,

(3) that prior to possessing the firearm, the defendant had been convicted of a crime punishable by a term of imprisonment exceeding one year.

18 U.S.C. § 922(g)(1). First Circuit Pattern Jury Instructions, § 4.06.

intent to distribute. The prosecutor ultimately issued a *nolle prosequi*. Gordy then filed a civil action for malicious prosecution and other civil rights and state law counts that were dismissed as time-barred.

The District Court determined that the officers lacked probable cause to seek the search warrant and allowed the malicious prosecution claim to go to trial. On appeal following a judgment for the plaintiff, the Fifth Circuit stated, "The crux of this case is whether there was probable cause for the criminal proceedings against Gordy." 294 F.3d at 727. Noting that the magistrate judge's determination that the officers lacked probable cause was based entirely on deficiencies in the search warrant, the court held that "[t]he validity of the search warrant is irrelevant to whether an officer reasonably could have believed that Gordy had committed the crime of possessing marijuana with intent to distribute." Id. at 728-29. The court of appeals held that the district court "erred by focusing on probable cause to search the apartment, even though [it] had already dismissed Gordy's ... claim for an unreasonable search in violation of the Fourth Amendment." Id. at 729. The court explicitly held

> "[t]he correct question, then, is whether the officers, at the time Gordy was charged, had probable cause to believe that he was guilty of possessing marijuana with intent to distribute."

Id. Redirecting the focus to what the officers reasonably and honestly believed at the time they arrested Gordy, not at the time they applied for the search warrant, the court concluded that there was probable cause to arrest and charge Gordy and therefore ordered the district court to enter a judgment in favor of the defendants. Id. Here, at the time Vigeant was arrested and charged, there was ample cause to believe that he was a convicted felon in possession of firearms; he had admitted it.

In Freeman v. New Jersey, 788 A.2d 867 (N.J. Super. 2002), the court reached the same

result. There, defendants were charged with possession of cocaine following a traffic stop and search of their vehicle. After their motion to suppress was denied, they were convicted. On appeal, the court reversed the denial of the suppression motion, finding that there was no probable cause to search the vehicle. The prosecutor dismissed the charges because he could not proceed without the suppressed evidence. Addressing the question of whether plaintiffs could make out a claim of malicious prosecution, the court found that they could not, because there was probable cause for their arrest and prosecution. Id. at 875-76.

> Plaintiffs' were found with more than six ounces of cocaine in their possession as well as 500 zip-lock bags. Although later suppressed, the evidence of illegally possessed contraband establishes that probable cause existed at the time the criminal prosecution proceeded. ... We agree with [the lower court's] finding that the strength of this evidence alone negated any argument that probable cause was lacking.

Id. at 877. See also, Townes v. City of New York, 176 F.3d 138, 149 (2d Cir. 1999) (holding that allegations that defendants searched and arrested defendant without probable cause did not establish malicious prosecution); Martinez v. Schenectady, 761 N.E.2d 560, 564-65 (N.Y. 2001) (describing the two probable cause inquiries as "separate").

Focusing on the correct question, whether there was probable cause to arrest and prosecute Vigeant for possession of firearms, the answer to the probable cause inquiry is quite simple. At the time of his arrest and charging, the agents knew that Vigeant was a convicted felon, they had found weapons and ammunition in his home, and Vigeant acknowledged that they were his and that he knew he could not possess them because he was a convicted felon. Exhibits G, I and J.[18] Not only did they have probable cause to believe a crime had been committed,

[18] At trial Vigeant denied that the firearms were his. In a letter to Judge Lisi and in his motion to suppress, he claimed that his admission to the agents during the search that the firearms were his was false and the product of confusion and the coercive environment of the

Vigeant admitted committing the crime. Exhibits G, I and J. Since the agents had reasonably trustworthy information that would cause a person of reasonable caution to believe that Vigeant had committed the offense of possession of a firearm by a convicted felon, judgment must enter for the United States on the false arrest (Count II), malicious prosecution (Count III), and false imprisonment (Count IV) claims.

### D. AS A MATTER OF LAW, VIGEANT CANNOT ESTABLISH THE ELEMENTS OF HIS MALICIOUS PROSECUTION CLAIM [COUNT III]

As shown above, Vigeant's claim for malicious prosecution must fail because there was probable cause to initiate the prosecution against him. In addition, judgment must enter on Count III because the prosecution against him did not terminate favorably. As noted, an action for malicious prosecution requires proof of four elements: (1) the initiation of a criminal proceeding against the person who is now the tort plaintiff; (2) the termination of the previous proceeding in that person's favor; (3) a lack of probable cause on defendants' part when they initiated the criminal proceeding; and (4) the existence of malice on defendants' part. Henshaw, 881 A.2d at 915. See also, Butera v. Boucher, 798 A.2d 340, 352 (RI 2002); Rezendes, 797 A.2d at 478-79; and Solitro, 523 A.2d at 861-62. Malicious prosecution actions are traditionally viewed with disfavor because they tend to deter the prosecution of crimes and/or to chill free access to the courts. Henshaw, 881 A.2d at 915, n. 5; Clyne, 740 A.2d at 782, quoting Brough v. Foley, 572 A.2d 63, 66 (R.I. 1990). Because of this disfavor, a plaintiff alleging malicious prosecution must prove lack of probable cause and malice by clear proof. Rezendes, 797 A.2d at 479; Clyne, 740 A.2d at 782.

search. Exhibits I and Q. The question, of course, is what the agents had reason to believe at the time of the arrest and the decision to charge him as a felon in possession. Although he later claimed the admission was false, the agents cannot be faulted for relying on the admission that he acknowledges was made at the time of the search.

### 1. Vigeant's Criminal Prosecution Did Not Result in a "Favorable Termination" as That Term Is Used in Malicious Prosecution Law

"In order for a plaintiff to maintain an action for malicious prosecution, he or she must show that the original proceeding finally terminated in his or her favor." Guay v. Wistow, 685 A.2d 290 (R.I. 1996). Accord, Nagy v. McBurney, 392 A.2d 365, 368 (R.I. 1978). In the context of malicious prosecution law, favorable termination has a special meaning. A termination is favorable only when it is dispositive as to the accused's innocence of the crime for which he was charged. In Guay v. Kappelle, 70 F.3d 1252 (1st Cir. 1995) (unpublished), a federal companion case to Guay v. Wistow, *supra,* the First Circuit stated, "[t]o be favorable, then, a termination 'must be reflective of the merits of the action and of the plaintiff's innocence of the misconduct alleged therein.'" Id., citing Villa v. Cole, 4 Cal. App. 4th 1327, 1335 (1992). In Villa, the court held "[a] resolution of the underlying litigation that leaves some doubt as to the defendant's innocence or liability is *not* a favorable termination, and bars that party from bringing a malicious prosecution action against the underlying plaintiff." [emphasis in original]).

The principle that a resolution must indicate innocence in order to be favorable for purposes of malicious prosecution is not unique to Rhode Island law. See, Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995) (final disposition must indicate that the accused is not guilty); Singleton v. City of New York, 632 F.2d 185, 193 (2d Cir.1980) (same); Taylor v. Gregg, 36 F.3d 453, 455 (5th Cir. 1994) (dismissal as part of pre-trial diversion is not favorable termination); Freeman, 788 A.2d at 877 (N.J. Super. 2002) (suppression of evidence on finding of Fourth Amendment violation not favorable termination), citing the Restatement (Second) of Torts, § 660. See also, Ienco v. City of Chicago, 148 F. Supp. 2d 938, 945 (N.D. Ill. 2001), rev'd on other grounds, 286 F.3d 994 (7th Cir. 2002). Cf., Hector v. Watt, 235 F.3d 154, 156 (3d Cir.

2001) (a plaintiff claiming malicious prosecution must be innocent of the crime charged in the underlying prosecution); Restatement of Torts (Second) § 660, Comment a (2001) ("Proceedings are 'terminated in favor of the accused,' as that phrase is used ... throughout this Topic, only when their final disposition is such as to indicate the innocence of the accused.").

A conviction based on reliable evidence that is later suppressed under the Fourth Amendment does not prove innocence of the crime charged. Gonzalez v. Entress, 133 F.3d 551, 555 (7th Cir.1998). This principle has been applied to bar a malicious prosecution claim following an appellate court's reversal of a conviction on Fourth Amendment grounds. In Martinez, 761 N.E.2d at 560, the court held that a reversal on Fourth Amendment grounds was not a favorable termination. There, a criminal defendant's home was searched pursuant to a warrant issued in part on information provided by a confidential informant. The search uncovered drugs, and Martinez was convicted of possession of a controlled substance and sentenced to 15 years to life in prison. The conviction was affirmed by the intermediate appellate court which found probable cause for issuance of the warrant. However, the court of appeals reversed on the ground that the warrant application did not include enough detail to enable the issuing court to determine the reliability of the undisclosed informant. After serving four years of her sentence, Martinez was released from prison. Id. at 562. The court dismissed Martinez' common law claim for malicious prosecution, finding that "[p]laintiff's felony conviction was reversed, not because of her lack of culpability – indeed, her guilt was proven beyond a reasonable doubt – but because the evidence that formed the basis for her conviction was obtained pursuant to a faulty search warrant," and ruled that there was "plainly no favorable termination here for purposes of a malicious prosecution." Id. at 564. Similarly, in Freeman, 788 A.2d at 867, the appellate court reversed the plaintiff's conviction based on the trial court's

failure to suppress evidence. The court held that, since the reversal was not a determination that plaintiffs were innocent of the criminal behavior charged, it was not a favorable termination, and thus, an action for malicious prosecution would not lie. Id. at 878.

In seeking damages for malicious prosecution, Vigeant has alleged repeatedly that his criminal conviction was overturned because of a faulty search warrant, but he has not alleged that any court found him innocent of the underlying charges of being a felon in possession of weapons, for which he was convicted by a jury. The First Circuit, in its decision overturning the conviction, made no judgment of the guilt or innocence of Vigeant on the weapons charges. Other than reporting the jury's findings, no mention is made of this issue at all. To this day, Vigeant has not been found innocent of the charges, nor has any court expressed any doubt as to his actual guilt.[19] As Vigeant did not receive a favorable termination, as that phrase is used in malicious prosecution actions, judgment must enter for the United States on Count III, as a matter of law. This argument effectively disposes of Vigeant's malicious prosecution claim, although there are additional grounds for summary judgment on the claim, which the Court may choose to consider. They are set out below.

---

[19] The Rhode Island Superior Court, which directly addressed the issue of Vigeant's guilt, specifically found that Vigeant committed the offenses with which he had been charged. The State Attorney General charged Vigeant with violating his probation based on the possession of the firearms. The Superior Court, Israel J., following an evidentiary hearing on August 20, 1999, said:

> I know, the defendant knows, everybody that heard anything in this case knows, that as a matter of fact, the defendant violated his probation. There is no question that he was in possession of a firearm having been convicted with a number of felonies. ... This Court, sitting without a jury, would have convicted the defendant in a heartbeat.

See Transcript of Violation Hearing at 77, 79, attached as Exhibit M.

**2. Vigeant's Conviction for Possessing Firearms, Even Though Reversed on Appeal, Is Conclusive on the Issue of Probable Cause**

As addressed above, the agents possessed probable cause to arrest and charge Vigeant as a felon in possession. In addition, it is a generally-accepted principle, in Rhode Island and elsewhere that, in a malicious prosecution action, proof of a conviction resulting from an arrest is conclusive evidence of probable cause. Dyson, 670 A.2d at 239. This is so even if the conviction is reversed on appeal. Yates v. Gawel, 37 F.3d 1484 (1st Cir. 1994) (unpublished), citing Nagy v. McBurney, 392 A.2d at 368 (applying same principle in a civil case); Bolduc v. United States, 2002 WL 1760882 (D. Mass. 2002).

Bolduc, 2002 WL at 1760882 is particularly compelling. For more than 25 years, two men dressed in trench coats committed a series of bank robberies across the country. Three of them took place in Wisconsin. Prior to the arrest of Bolduc and Larkin, Federal agents had taken three separate statements which identified two others as the so-called "trench-coat robbers." These statements were not turned over to defense counsel before or during Bolduc and Larkin's criminal trial, after which they were convicted and sentenced to lengthy prison terms. In 1999, after nine years in prison, they learned that there had been exculpatory evidence not turned over to them in 1991. Six months later, another man confessed that he and his accomplice had committed the "the trench coat robberies," and Bolduc and Larkin's convictions were vacated. A certificate of innocence was issued to Bolduc. Bolduc and Larkin then filed suit under the FTCA for malicious prosecution, abuse of process, false imprisonment, negligent supervision and under Bivens, for violation of their civil rights. The Government's motion to dismiss was granted as to every claim except negligent supervision. The court held that a conviction in a court of record, even though reversed on appeal, is conclusive evidence of the existence of probable cause in a

subsequent malicious prosecution action. Id. at *3.[20]

Vigeant's conviction, although later reversed, stands as conclusive proof that there was probable cause to prosecute him; there is no evidence that the conviction (as opposed to the search warrant) was procured by perjured testimony or other fraud and Count III must be dismissed.

### 3. Vigeant Cannot Establish His Claim for Malicious Prosecution (Count III), Because He Was Guilty of the Crime with Which He Was Charged

Even if Vigeant were able to demonstrate that defendant acted without probable cause in instituting a prosecution, and he cannot, he cannot prevail on his malicious prosecution claim because he was guilty of possessing the firearm. "Guilt-in-fact" is a complete defense to an action for malicious prosecution. "[I]t is always open to the defendant to escape liability by showing in the malicious prosecution suit itself that the plaintiff was in fact guilty of the offense with which he was charged." Hector v. Watt, 235 F.3d at 156, quoting Prosser and Keeton, *supra*, at 885 (citing Restatement of Torts, § 557), Ware v. United States, 971 F. Supp. 1442, 1473 -75 (M.D. Fla. 1997). See also, Heck v. Humphrey, 512 U.S. 477, 484 (1994) (The requirement of favorable termination precludes the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same

[20] The only exception to this rule is a conviction obtained by fraud, perjury or other corrupt means. Id. In Bolduc, the failure to turn over the exculpatory evidence was found to be obtaining a conviction by collateral fraud or other corrupt means. The count was dismissed anyway because plaintiffs did not plead malice. In this case, the conviction on weapons charges was not obtained by fraud. See also, Restatement 2d Torts, § 667; Prosser on Torts, § 96; Ramos v. Gallo, 596 F. Supp. 833, 840 (D. Mass. 1984); and Sheffield v. Cantwell, 101 F.2d 351, 352 (7th Cir. 1939). There is no evidence that Vigeant's conviction on weapons charges was obtained by fraud, perjury or corruption. The First Circuit's conclusion that the agents were not truthful in relation to the search warrant is irrelevant with respect to proof at Vigeant's criminal trial. Freeman v. New Jersey, 788 A.2d at 877-78.

or identical transaction.)

Vigeant was clearly guilty of being a felon in possession. Not only were guns and ammunition located in his home, he admitted that they were his, and that he knew he could not lawfully possess them because of his felony conviction. Exhibits G, I, J and Q. Moreover, he was convicted by a jury of those charges. Even after the First Circuit vacated his conviction and remanded the case on Fourth Amendment grounds, a judge of the Superior Court also found that he was guilty of the very same charges. Exhibit O. See also, footnote 19, *supra*. Since Vigeant was guilty of the offense with which he was charged, judgment must enter for the United States on Vigeant's malicious prosecution claim (Count III).

**E. VIGEANT CANNOT ESTABLISH HIS CLAIM FOR MALICIOUS PROSECUTION, FALSE ARREST, FALSE IMPRISONMENT OR ABUSE OF PROCESS (COUNTS II, III, IV AND V), BECAUSE THE ALLEGED ILLEGAL SEARCH WAS NOT THE PROXIMATE CAUSE OF THE INJURIES HE ALLEGES**

In order to prevail in any tort case, a plaintiff must establish that the breach of conduct of which he complains proximately caused the resulting injury and the actual loss or damage for which he seeks redress. Jenard v. Halpin, 567 A.2d 368, 370 (R.I. 1989); Atlantic Home Insulation, Inc. v. James J. Reilly, Inc., 537 A.2d 126, 128 (R.I. 1988). Proximate cause is narrower than cause in fact. Hector, 235 F.3d at 162 ("Unlike causation in fact, proximate causation is a legal construct fashioned according to policy considerations."). It is the doctrine through which the law limits damage awards to those which society is willing to recognize as reasonably flowing from the offending conduct. Palsgraf v. Long Island R.R., 248 N.Y. 339, 162 N.E. 99, 103 (1928) ("[w]hat we mean by the word 'proximate' is that, because of ... public policy ... the law arbitrarily declines to trace a series of events beyond a certain point.").

Although Vigeant purports to set forth claims of malicious prosecution, false arrest, false

imprisonment and abuse of process, all of his allegations of breach of duty concern the agents' application for the search warrant and the search of his home. In order to prevail on any of his claims, Vigeant must prove that the illegal search proximately caused the damages he seeks.[21] Vigeant does not seek damages for the invasion of his privacy caused by the allegedly illegal search. Instead, the damages he seeks all stem from his arrest, conviction and imprisonment as a felon in possession. Since the law does not recognize an illegal search and seizure as the proximate cause of a conviction and imprisonment resulting from evidence found during the search, Vigeant cannot establish proximate cause.

In Townes v. City of New York, 176 F.3d at 148, the court held that although

> "[v]ictims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy, ... [they] cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution."

There, plaintiff was riding in a taxicab which was stopped and searched without probable cause. During the search, police officers located two handguns. Townes and his fellow passengers were taken into custody and driven to the police station, where cocaine was discovered on Townes. Townes' motion to suppress the evidence was denied, after which he entered a guilty plea and was jailed. More than two years later, the appellate court reversed the conviction on the ground that the police lacked probable cause to stop and search the taxicab. Eventually, the indictment was dismissed. Townes brought a civil rights action under 42 U.S.C. § 1983, *inter alia*, for violation of his Fourth Amendment rights.[22] In rejecting Townes demand for damages flowing

---

21 Defendant does not concede that the agents did not have probable cause to seek the search warrant, but acknowledges that the First Circuit found that probable cause was not set forth within the four corners of the affidavit.

22 Civil actions brought under § 1983 are analogous to state common law tort actions, serving primarily the tort objective of compensation, and employ the principle of proximate causation. Townes, 176 F.3d at 146.

from his incarceration, the court stated:

> Now Townes seeks damages to compensate him for his conviction and time served, on top of the benefit he enjoys as a result of the suppression. That remedy would vastly overdeter police officers and would result in a wealth transfer that is peculiar, if not perverse.

Id. at 148 (citations omitted), quoted in Hector, 235 F.3d at 157.

In Hector, the Third Circuit reached a similar result as to the damages the law would recognize as flowing from an unreasonable search and seizure. There, Hector had been prosecuted after State Troopers seized 80 pounds of hallucinogenic mushrooms from his airplane. Following the trial court's suppression of the evidence on Fourth Amendment grounds, the criminal charges were dismissed. Hector brought a § 1983 action, seeking money damages to compensate him for the costs he incurred in defending the criminal prosecution. The Third Circuit described the "narrow issue" it faced as a determination of the type of damages plaintiff could recover following a violation of his Fourth Amendment rights. Hector, 235 F.3d at 157.

Relying on the Supreme Court's analysis in Carey v. Piphus, 435 U.S. 247 (1978), the court in Hector held that "damages for an unlawful search should not extend to post-indictment legal process, for the damages incurred in that process are too unrelated to the Fourth Amendment's privacy concerns." 235 F.3d at 157.[23] The court stated:

> When we reflect on the interests protected by the Fourth Amendment, we believe that it follows that a plaintiff cannot recover the litigation expenses incurred because police officers discovered criminal conduct during an unconstitutional

---

[23] Even if Vigeant could establish proximate cause, his false arrest and false imprisonment claims would not provide an award for the damages he seeks in this action. As the Supreme Court has held, false arrest and false imprisonment only provide damages "up until issuance of process or arraignment, but not more." Heck, 512 U.S. at 484 (1994) (quoting Prosser and Keeton on the Law of Torts 888 (5th ed. 1984)).

> search. As the Second Circuit has said in a case much like ours, "The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all."

Hector, 235 F.3d at 157, quoting Townes, 176 F.3d at 148. Vigeant, who like Townes and Hector, complains that his Fourth Amendment rights were violated, cannot recover damages for his conviction and incarceration, because those damages were not proximately caused by the illegal search. [24]

## F. VIGEANT HAS NOT ALLEGED AN ABUSE OF PROCESS [COUNT V] AND JUDGMENT MUST ENTER FOR DEFENDANT ON THAT CLAIM

An abuse of process arises when a legal proceeding, although set in motion in proper form, becomes perverted to accomplish an ulterior or a wrongful purpose for which it was not designed. Hoffman v. Davenport-Metcalf, 851 A.2d 1083, 1090 (R.I. 2004), citing Butera v. Boucher, 798 A.2d at 353. To prove abuse of process, a plaintiff must demonstrate that "(1) the defendant instituted proceedings or process against the plaintiff and (2) the defendant used these proceedings for an ulterior or wrongful purpose that the proceedings were not designed to accomplish." Id. "The gist of an abuse of process claim is the misuse of legal process to obtain an advantage, 'not properly involved in the proceeding itself. ... '" Butera, 798 A.2d at 3534. In Rhode Island, abuse of process actions are disfavored because they tend to deter the prosecution of crimes and chill free access to the courts. Butera, 798 A.2d at 353; Brough v. Foley, 572 A.2d 63, 66 (R.I. 1990). Moreover, when the process achieves at least one purpose for which it was

[24] Nor may Vigeant rely on the fruit of the poisonous tree doctrine to establish causation for these common law torts. The fruit of the poisonous tree doctrine is an evidentiary rule that operates in the context of criminal procedure and is inapplicable to civil actions. Townes, 176 F.3d at 145. It is an extension of the exclusionary rule, and as such has generally been held to apply only in criminal trials. Id., quoting Pennsylvania Bd. of Probation & Parole v. Scott, 524 U.S. 357, n. 4 (1998). The fruit of the poisonous tree doctrine "disregards traditional causation analysis to serve different objectives," and may not serve as a substitute where causes of action, like Vigeant's, require proof of proximate cause. Townes, 176 F.3d at 145.

designed, an action for abuse of process will not lie. Hoffman v. Davenport-Metcalf, 851 A.2d at 1090.

The Rhode Island Supreme Court has frequently chosen to describe abuse of process by distinguishing it from malicious prosecution. In Nagy, 392 A.2d at 370, the court stated:

> Abuse of process differs from malicious prosecution in that the gist of the former is not in commencing an action or causing process to issue without justification, but in misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish.

Similarly, in Hillside Associates v. Stravato, 642 A.2d 664, 667 (R.I. 1994), the court contrasted the two causes of action by way of example:

> Thus, if the defendant prosecutes an innocent plaintiff for a crime without reasonable grounds to believe him guilty, it is malicious prosecution; if he prosecutes him with such [reasonable] grounds [but his ulterior motive is] to extort payment of a debt, it is abuse of process.

In Butera, the court stated, "[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property, or the payment of money. ... " 798 A.2d at 353 (citations omitted). On the other hand, the allegation that the government's ulterior purpose was to make arrests rather than find the true perpetrators is not encompassed by abuse of process. Bolduc, 2002 WL at 1760882. "[E]ven a pure spite motive is not sufficient [for abuse of process claim] where process is used only to accomplish the result for which it was created." Butera, 798 A.2d at 354, citing, W. Page Keeton, Prosser & Keeton on the Law of Torts, § 121 at 897 (5th ed. 1984).

Without a showing that the use of the process itself was illegal, a claim for abuse of process must be dismissed. Andrade v. Chojnacki, 65 F. Supp. 2d 431, 469 (W.D. Tex. 1999). Andrade, which was dismissed, arose out of the events at the Mount Carmel religious center

outside Waco, Texas, involving the Branch Davidians. The court went so far as to assume that the government had an improper motive in prosecuting [the Davidians], but pointed out that there is no liability where the defendant has done nothing more than carry out the process to the authorized conclusion. Id. Put another way, "[A]n abuse of process action is only appropriate for the improper use of process after it has been issued, and not for maliciously causing it to issue." DirecTV v. Zink, 286 F. Supp. 2d 873, 876 (E.D. Mich. 2003) (internal quotations and citation omitted). See also, Nogueras-Cartagena v. United States, 172 F. Supp. 2d 296, 316 (D.P.R. 2001) (" ... abuse of process covers the allegedly improper use of individual legal procedures after a suit has been filed properly," and abuse of process cases typically involve misuse of such procedures as discovery, subpoenas, and attachment.).

A plaintiff's first burden in an abuse of process case is to allege that defendant perverted the legal process and to specify how it was perverted. See, e.g., Beaudoin, 697 A.2d at 1068 (R.I. 1997) ("Other than Beaudoin's unsupported and conclusory allegations, there is nothing in the record that even suggests that the prosecution against Beaudoin was perverted for an ulterior or a wrongful purpose."); Goldstein v. Rhode Island Hospital Trust National Bank, 296 A.2d 112, 116 (R.I. 1972) (In order to prevail, plaintiff "had to first allege that [defendant] has used the process to accomplish some ulterior purpose for which it was never intended ... plaintiff has not even come close to pleading such an action").

Vigeant has not cleared the first hurdle. His allegation of abuse of process is simply the conclusory statement that he "was subjected to abuse of process," as a result of the federal agents "negligently, deliberately and/or recklessly" misleading a United States Magistrate Judge into issuing a search warrant. See, Complaint at ¶ 69. He has not alleged any ulterior purpose. Indeed, his abuse of process claim is virtually identical to his malicious prosecution claim.

Vigeant's allegations are like those made in Nogueras-Cartagena, 172 F. Supp. 2d at 316, where the court dismissed plaintiffs abuse of process claims, finding:

> There are no allegations of ulterior motive or abuse in the instant case. The allegations are that of either negligence or gross negligence in investigating and prosecuting the underlying criminal case. There are simply no facts pled against any investigative or law enforcement officer to support a claim for abuse of process.

Vigeant's case is also similar to Washington v. Drug Enforcement Administration, 183 F.3d 868 (8th Cir. 1999). There, the DEA undertook the investigation of a national organization which was suspected of drug trafficking and other related crimes. A convicted felon provided the plaintiffs' address as a location where drug activity had taken place, but this information had not been corroborated. In fact, the plaintiffs had occupied the residence for more than 20 years, and neither had a criminal record or had been investigated in connection with any crime. Nonetheless, DEA prepared a master affidavit for 15 search warrants for various locations (including the plaintiffs' residence) and executed them all on the same evening. The plaintiffs were awoken by Federal agents who had broken down their door with a battering ram, shouted, shoved and threatened to shoot and then detained them. Neither narcotics nor drug paraphernalia were found, although agents did find and seize firearms, ammunition and personal papers. Id. at 870-72. In affirming judgment for the defendants, the Court stated:

> Although the DEA agents failed to corroborate [the informant's] information about the house and executed the search warrant at night, these actions or omissions do not constitute an abuse of process because there was no collateral purpose.

Id. at 875.

So it is here. No collateral purpose was alleged, nor is there evidence of one. The process was initiated in the proper way and its goals were achieved: prosecution and conviction. Even an

improper motive (and none has been alleged) would not change this.[25] Judgment must enter for the United States on Vigeant's abuse of process claim (Count V).

### G. VIGEANT'S FALSE ARREST AND FALSE IMPRISONMENT CLAIMS [COUNTS II AND IV] ARE BARRED BY THE STATUTE OF LIMITATIONS

#### 1. The FTCA Is A Limited Waiver of Sovereign Immunity And Is Strictly Construed

This Court lacks jurisdiction over Vigeant's claims for false arrest and false imprisonment. "The United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Mitchell, 445 U.S. 535, 538 (1980), quoting United States v. Sherwood, 312 U.S. 584, 586 (1941). Thus, the starting point for any analysis of jurisdiction in a lawsuit against the United States is the applicable statutory waiver of sovereign immunity. Absent a waiver of sovereign immunity, a court is without subject matter jurisdiction to proceed. United States v. King, 395 U.S. 1, 4 (1969). Statutes which waive sovereign immunity must be strictly construed in favor of the United States. "A waiver of sovereign immunity cannot be implied, but must be unequivocally expressed." United States v. Mitchell, 445 U.S. at 538, quoting United States v. King, *supra.*

Under the FTCA, an administrative claim must be filed no more than two years after the claim accrues. 28 U.S.C. § 2401(b).[26] This is a jurisdictional prerequisite to instituting a judicial

---

[25] Even if the Court found Vigeant's allegations to be sufficient, judgment would still have to enter on his abuse of process claim, because defendant achieved its purpose in prosecuting Vigeant - he was convicted of the charge of illegally possessing weapons. Hoffman v. Davenport-Metcalf, 851 A.2d at 1090.

[26] 28 U.S.C. § 2401(b) provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues."

action under the FTCA. Cascone v. United States, 370 F.3d 95, 103 (1st Cir. 2004).

### 2. False Arrest and False Imprisonment Actions Accrue on the Date of Arrest

Under the FTCA, the general rule is that a claim accrues when an injury is inflicted. United States v. Kubrick, 444 U.S. 111, 113, 117-18 (1979); Skwira v. United States, 344 F.3d 64, 73 (1st Cir. 2003). The ultimate extent of damages need not be known before the statute is triggered. Marrapese, 749 F.2d 934, 938-39 (1st Cir. 1984); and Hitchmon, at 260-261.[27] Claims of false arrest and false imprisonment accrue on the date of arrest. Fisher v. United States, 959 F.2d 230, 1992 WL 63516 (1st Cir. 1992) (unpublished opinion); Wang v. United States, 61 Fed. Appx. 757 (2d Cir. 2003) (unpublished); Grullon v. Vanacora, 2002 WL 1553373, *2 (N.D. Il. 2002); Trueman v. Lekberg, 1998 WL 181816, *2 (E.D. Pa. 1998); and Hitchmon, at 260.[28] In Fisher, the plaintiff argued that his false arrest claim did not accrue until the date the charges against him were dismissed. Fisher asserted that even though he was aware of his injury from the

[27] Under the discovery rule exception to the rule articulated above, a claim accrues when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the factual basis for the cause of action. Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2003). In order to toll the statute of limitations pursuant to the discovery rule, the cause of action must have been "inherently unknowable" at the time of injury. Id. at 288-890, quoting Attallah v. United States, 955 F.2d 776, 780 (1st Cir. 1992). Obviously, the discovery rule has no place in this case. Not only was Vigeant aware of the search and seizure of the guns on May 12, 1997, he challenged the search from the outset of his criminal case. Exhibits N and P (Exhibit P contains excerpts from Vigeant's May 22, 1997, arraignment and the November 24, 1997, hearing on Vigeant's motions to suppress and motion for a Franks hearing.).

[28] Civil rights cases based on false arrest also have accrual dates on the date of arrest. Nieves v. McSweeney, 241 F.3d 46, 52 (1st Cir. 2001) (all claims of abuse or arrest accrued at time events occurred) citing, Beck v. City of Muskogee Police Dep't., 195 F.3d 553, 558 (10th Cir. 1999) (claims arising from police action, such as arrest and seizure, are presumed to accrue when the actions occur); Montgomery v. DeSimone, PTL, 159 F.3d 120, 126 (3d Cir. 1998); Sneed v. Rybicki, 146 F.3d 478, 481 (7th Cir. 1998) (false arrest claim accrues on day of arrest); and Singleton v. City of New York, 632 F.2d at 191; and Gordy, 294 F.3d at 725.

moment of his arrest, he did not know why a confidential informant had concocted a story about him which resulted in his arrest. Id. at 3. The First Circuit rejected his argument and held that it was not necessary for Fisher to know why the informant accused him of a crime in order for his cause of action to accrue. Id. at 4. [29]

Vigeant's house was searched and he was arrested on May 12, 1997. He filed his administrative claim on May 11, 2001, nearly four years after the search. In this case, Vigeant's false arrest and false imprisonment claims accrued on the date he was arrested. He obviously knew of his claims, because he immediately began challenging the search in Court. Exhibits N and P. See also, footnote 26, *supra*. As in Fisher, *supra,* this is a case in which a single incident can be identified as the cause of Vigeant's alleged harm. Id. at *3. His tort suit, therefore, was filed too late and his claims for false arrest and false imprisonment are therefore barred as a matter of law.

The Supreme Court has recognized an exception to this accrual rule in civil rights claims which necessarily implicate the validity of a conviction. Heck, 512 U.S. at 489-90. Heck does not address, or change, the point at which state law claims of false arrest or false imprisonment accrue. In Heck, the Court held that a Section 1983 claim for damages attributable to an unconstitutional conviction or sentence does not accrue until that conviction or sentence has been invalidated. Heck, 512 U.S. at 489-90. The Court also noted, however, that if a successful claim would not demonstrate the invalidity of any outstanding criminal judgment, it should be allowed

[29] Similarly, the imprisonment or confinement engendered by a false arrest is a continuing ill effect of an initial wrong for purposes of determining when the statute of limitations starts to run. Fisher, at *3, citing, McCune v. Grand Rapids, 842 F.2d 903, 906-07 (6th Cir. 1988) ("Appellant's claim of wrongful continued incarceration constitutes an ill effect from the original false arrest."), and Sandutch v. Muroski, 684 F.2d 252, 254 (3rd Cir. 1982)(*per curiam*). See also, Maslauskas v. United States, 583 F. Supp. 349, 351-52 (D. Mass. 1984).

to proceed. Id. at 487. Because a conviction and sentence may be upheld even in the absence of probable cause for the initial stop and arrest, Vigeant's false arrest and false imprisonment claims are not the type of claims which necessarily implicate the validity of a conviction or sentence. See, Mackey v. Dickson, 47 F. 3d 744, 746 (5th Cir. 1995) (stating that "[i]t is well established that a claim of unlawful arrest, standing alone, does not necessarily implicate the validity of a criminal prosecution following the arrest."). Accordingly, Heck has no bearing on the question of when Vigeant's false arrest and false imprisonment claims accrued.

Moreover, it is apparent from the Court's opinion in Heck that the Court would not apply its analysis to claims for false arrest and false imprisonment. The Court in Heck specifically distinguished malicious prosecution claims, which challenge the validity of a conviction and do not arise until the conviction is vacated, from claims for false arrest and false imprisonment, which do not:

> The common-law cause of action for malicious prosecution provides the closest analogy to claims of the type considered here, because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process. "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more." W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 888 (5th ed. 1984).

Heck, 512 U.S. at 484. Indeed, the basis for this distinction was that "one element that must be proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." Id. There is no similar requirement in false arrest and false imprisonment cases. See, Pierce v. Pawelski, No. 98C 33337, 2000 WL 1847778, *2 (N.D. Ill. December 14, 2000) (unpublished) ("Heck's analysis does not govern [plaintiff's] state law claims," and that "[u]nlike 42 U.S.C. § 1983 claims, the state law claims accrue when the injury occurred ... Because

plaintiff's false arrest and imprisonment claims accrued when Pierce was arrested and imprisoned, they are time-barred.") Id.

Rhode Island law on false arrest and false imprisonment compels the same conclusion. In Rhode Island, an arrestee's guilt or innocence of the underlying charge is not relevant to a determination of whether the arresting officer committed either false imprisonment, Moody v. McElroy, 513 A.2d 5, 10 (R.I. 1986), or false arrest. Dyson, 670 A.2d at 239. Consequently, Vigeant could prevail on either of those counts without proof that his conviction was invalid. Since Vigeant's state law tort claims for false arrest and false imprisonment did not implicate the validity of his underlying conviction, those claims accrued on the date of arrest. His administrative claim was therefore untimely.

Some courts have applied the reasoning of Heck and determined that state law claims do not accrue until the criminal proceeding has been concluded.[30] This approach, however, is decidedly a minority view and is also erroneous. The problem with these cases is that they assume a plaintiff's claims of false arrest and false imprisonment must implicate the validity of the underlying conviction. However, that is rarely the case. Even some civil rights actions will not implicate the validity of a conviction. Heck, at 487, n. 7. In the ordinary case, a conviction is not improper because the government's agents are later shown in a tort suit to have arrested the defendant without probable cause. In Montgomery, the court held that Heck did not apply to claims for false arrest or false imprisonment. Since "a conviction and sentence may be upheld even in the absence of probable cause for the initial stop and arrest, ... claims for false arrest and false imprisonment are not the type of claims contemplated by the Court in Heck which

[30] Alvarez-Machain v. United States, 107 F.3d 696, 700-701 (9th Cir. 1997), judgment vacated on other grounds by Alvarez-Machain v. United States, 374 F.3d 1384 (9th Cir. 2004) (lengthy interim history omitted); and Parris v. United States, 45 F.3d 383, 385 (10th Cir. 1995).

necessarily implicate the validity of a conviction or sentence." Montgomery, 159 F.3d at 126. Other courts have reached the same conclusion. See, e.g., Booker v. Ward, 94 F.3d 1052, 1056 - 57 (7th Cir. 1996) ("We disagree [that Heck controls] because a wrongful arrest claim, like a number of other Fourth Amendment claims, does not inevitably undermine a conviction; one can have a successful wrongful arrest claim and still have a perfectly valid conviction."); Simpson v. Rowan, 73 F.3d 134, 136 (7th Cir. 1995) ("Simpson's claims relating to an illegal search and an improper arrest are not barred by Heck because neither claim, if successful, would necessarily undermine the validity of his conviction for felony murder."); Perez v. Sifel, 57 F.3d 503, 505 (7th Cir. 1995) ("The claims relating to an illegal search and an improper arrest may not be barred, as neither claim would necessarily undermine the validity of the conviction."); Jordan v. Crandley, 1999 WL 718616, *3 (E.D. Pa. 1999) (success on a state law claim of false arrest, false imprisonment, excessive use of force and even some civil rights claims, does not necessarily imply the invalidity of a conviction); Mackey, 47 F.3d at 746 (It is well established that a claim of unlawful arrest, standing alone, does not necessarily implicate the validity of a criminal prosecution following the arrest.).

Moreover, the great majority of cases, including those decided by the Third Circuit and a number of other jurisdictions, conclude that Heck does not govern claims for false arrest and false imprisonment. Montgomery, 159 F.3d at 126 (Montgomery's claims for false arrest and false imprisonment are not the type of claims contemplated by the Court in Heck which necessarily implicate the validity of a conviction or sentence); Gausvik v. Perez, 239 F. Supp.2d 1108, 1123 (E.D. Wash. 2002) ("Plaintiff is simply wrong in claiming that federal courts have ruled that state law claims are also barred or preserved by Heck"); Pierce v. Pawelski, No. 98 C 3337, 2000 WL 1847778, at *2 ("Heck's analysis does not govern Pierce's state law claims");

Seaton v. Kato, 1995 WL 88956, *7 (N.D. Ill. 1995) ("Unlike Seaton's claims under section 1983, which are governed by Heck, the state law claims accrued when the injury occurred."); Parra v. State of New Hampshire, 40 F.3d 1235 at *2 (1st Cir. 1994) (Although it might be argued that a judgment in favor of Parra on his false arrest claim would not necessarily imply the invalidity of his conviction or sentence, the false arrest claim is in any event time-barred because it accrued on the date of arrest.). Thus, Heck does not govern this case.[31]

In short, Heck addressed the intersection between the civil rights act and the federal habeas corpus statute, 512 U.S. at 480, and a state prisoner who challenged the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983, in a claim which necessarily impugned the underlying conviction. Vigeant's tort suit, which does no such thing, should not be viewed through the Heck prism. Even if Vigeant were to succeed on his false arrest claim, it would not mean that his underlying conviction were invalid. Heck's holding does not apply to Vigeant, who neglected his civil rights claim for unlawful search and seizure and attempted to enter the back door with a belated tort claim. Judgment must therefore enter for defendant on Counts II and IV.

[31] The First Circuit specifically addressed the issue of when claims for false arrest and false imprisonment accrue in Fisher, 959 F.2d at 230. Although Fisher was decided before Heck, the First Circuit specifically rejected the notion that a false arrest claim does not accrue until the criminal charges are dismissed, or extending the argument, until a conviction is overturned. Thus, Fisher is no different than the case at bar, and there is no reason to suspect the First Circuit would treat the issue any differently post-Heck. See also, Nieves, 241 F.3d at 46 (civil rights action in which the First Circuit found that the false arrest claim accrued on the date of arrest and not on the date the charges were dismissed).

## IV. CONCLUSION

Wherefore, for all of the forgoing reasons, defendant requests this Court to enter judgment in its favor.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

ROBIN E. FEDER
Assistant United States Attorney
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by first-class mail, postage pre-paid, on the Plaintiffs' counsel, by mailing same on this the 31st day of October, 2005, to:

Daniel K. Flaherty, Esq.
Frederick A. Costello, Esq.
Flaherty, Butterfield & Costello
33 College Hill Road, Suite 20D
Warwick, RI 02886

Nancy A. DeQuarto