UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**ROBERT A. VIGEANT**

**VS C.A. NO. 02-441S**

**UNITED STATES OF AMERICA**

**PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS FOR LACK OF JURISDICTION**

Now comes the Plaintiff in the above captioned matter and objects to Defendant's Motion for Summary and Motion to Dismiss. Basis for said Objection is contained in the attached Memorandum.

Plaintiff,
By his attorney,

Frederick A. Costello #2205
**FLAHERTY, BUTTERFIELD & COSTELLO**
33 College Hill Road Suite 20D
Warwick, Rhode Island 02886
Tel. No. 401 822 1800 x 6 Fax 822 1879

**CERTIFICATION**

I hereby certify that on the 11 day of January, 2006 I sent a true copy of within to: Robin E. Feder, Assistant United States Attorney, Fleet Center, 50 Kennedy Plaza 8th Floor, Providence, RI 02903.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**ROBERT A. VIGEANT**

**VS C.A. NO. 02-441S**

**UNITED STATES OF AMERICA**

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS FOR LACK OF JURISDICTION

## I. INTRODUCTION

Plaintiff Robert Vigeant (Vigeant) has filed a Complaint under the Federal Tort Claims Act (FTCA), alleging false arrest, malicious prosecution, false imprisonment and abuse of process.[1]

The Government has moved for Summary Judgment on the issues of malicious prosecution, false arrest and false imprisonment and re-alleges its Motion to Dismiss the claim for false arrest and false imprisonment for lack of jurisdiction, essentially restating the same claim of violation of the statute of limitations that was denied previously. Defendant also re-files its Motion to Dismiss Plaintiff's Abuse of Process claim for failure to state a claim for which relief can be granted.

The substance of Plaintiff's Complaint is that the Affidavit made by the Federal agents who searched his home on May 12, 1997 contained numerous falsehoods, misrepresentations, and reckless omissions. The desire to search his home was

[1] The Plaintiff initially included a Count for illegal search and seizure that has been previously dismissed because it was a constitutional claim, and as such was not a claim allowed under the FTCA. Additionally, a claim of Plaintiff's grandmother, Concetta Pazienza, was dismissed as having no standing to file a claim under the FTCA. Defendant's Motion to Dismiss the Counts of False Arrest and False Imprisonment for lack of jurisdiction due to violation of the statute of limitations was denied in a previous Order issued by this Court. Defendant's Motion to Dismiss the Abuse of Process Count for failure to state a claim for which relief could be granted was also denied by a previous Order of this Court.

completely unrelated to the underlying basis for which the search warrant was issued; namely, to find evidence of drug money laundering. Plaintiff alleges, among other things, that the representatives of the Government had some stale (two year old), untrue and unreliable evidence of a connection with some drug dealers and they concluded Plaintiff was a bad person. They knew Vigeant had a previous criminal history and were determined to get into his house to find anything that would allow them to prosecute him as a "three strikes" offender. The mechanism for doing that was a patently false Affidavit submitted to Magistrate Judge Lovegreen just prior to the search of May 12, 1997.

The search was scheduled in the early dawn hours specifically for the reason of shocking and intimidating the Plaintiff, taking advantage of him in a dazed and stunned state and searching for "evidence" for which they had no probable cause. Their intentions were successful. They broke down the door of his house, after waiting about five seconds for him to respond from a deep sleep, and handcuffed him to a chair while he was half naked in the presence of a female agent. The "bank records search" produced two firearms, which resulted in the charge of being a "felon in possession". Vigeant was convicted of one Count of being in possession of a firearm and found innocent of the second Count. Since Vigeant did have a previous criminal record, the minimum sentence for the possession of a firearm was 235 months in prison. After serving 2 ½ years in prison, the 1st Circuit Court of Appeals found that not only was the search warrant clearly lacking in probable cause but it contained falsehoods, misrepresentations, misleading statements and numerous omissions of material facts that were at least reckless. The Court went further and found that even the so-called "good faith exception" to a warrant that lacked probable cause was not present in this particular case.

In fact, the opposite was true. As a result, the Court vacated the conviction and ordered Vigeant's release from prison. United States v Vigeant, 176 F.3d 565 (1st Cir. 1999). Exhibit 1. Vigeant was never again charged as a felon in possession and has never at any time been connected or charged in anyway with any drug conspiracy with one Patrick Vigneau, or any of Vigneau's associates.

## II. BACKGROUND

This case apparently was initiated pursuant to an investigation of Patrick Vigneau, (Vigneau) and Richard Crandall, (Crandall). According to the Government, this was a joint investigation of the Drug Enforcement Administration (DEA) and the Internal Revenue Service (IRS). The Government states in its Brief that during the investigation before the search the agents learned that Vigeant had an extensive criminal record, including convictions for carrying a pistol without a license and convictions for extortion and blackmail. What the Government does not say is that at least one of the investigators, Agent Patrick Burns, had a personal vendetta against Vigeant as described by the Plaintiff at his sentencing hearing. See sentencing hearing transcript at p. 34.[2] Exhibit 2.

The Government attempts to buttress this argument alleging that in May of 1997 several of the Vigneaus (Patrick Vigneau, Mark Vigneau, Donna Vigneau), Timothy Owens, Joseph Rinaldi, Randy Panahi and Kyle Robson were indicted on a variety of

[2] "Instead of serving a search warrant as one professional would do, Agent Burns started sticking evidence in my face, in this case, a weapon.
He (Burns) said I made him sick to his stomach because he saw me on my boat at a waterfront restaurant in downtown Providence the previous year with my girlfriend, Stacy, when I pulled up to have dinner. He said he sent his girlfriend or his wife, I am not sure which one, home from dinner so he could stay there and watch me for three hours enjoy dinner with my girlfriend."

crimes including criminal enterprise, various marijuana offenses and conspiracies to distribute drugs and money laundering. See Defendant's Brief at page 3.

Vigeant has never been convicted of any of those crimes. In fact, he was never indicted or charged, even though they now assert that they had solid evidence of Vigeant making a $10,000.00 drug payment to Richard Crandall.[3] The search warrant that Defendant obtained against Vigeant was specifically to obtain bank records that would establish evidence of money laundering. In reality, the Government already had all of Vigeant's bank records. If any records were missing, they could have been obtained through a garden-variety subpoena duces tecum of any of the banks utilized by Vigeant, which they had apparently already done.[4]

The obvious motivation to enter Vigeant's house was to find something other than bank records (which they already had), thus the claim of abuse of process.

## A. THE DELIBERATE FALSEHOODS AND MISREPRESENTATIONS IN THE AFFIDAVIT USED TO OBTAIN THE SEARCH WARRANT.

The United States Court of Appeals for the 1st Circuit in its Decision made the following findings of facts in commenting on the deficiencies and falsehoods contained in the Affidavit used to support the request to search Vigeant's residence. United States v Vigeant, 176 F.3d 565:

1. In March of 1995, Vigeant opened a personal bank account at Fleet Bank. On the application for the account, he listed his previous employer but left blank the space calling for the name of his current employer.

---

[3] The alleged payment to Crandall turned out not to be true. Even the investigative report indicates that Crandall never received any money directly from Vigeant. Crandall later stated that he never had any drug dealings directly with Vigeant. See Statement of Richard Crandall, Exhibit 3. This statement (Exhibit 3) was given while he was still considered a "government witness" expecting to receive a lighter sentence for his cooperation. At a later date, the Government revoked that offer.

[4] See CTR Bank Reporting Form, with fax date of May 7, 1997, two days before search warrant was issued, Defendant's Exhibit E, Brief Section B. Exhibit 4.

2. Fifteen months later, on June 12, 1996, Vigeant opened two business accounts at the same bank.

3. Vigeant made an initial deposit of $19,000.00 into one of the accounts in a mix of large and small bills.

4. Vigeant then immediately transferred $18,500.00 of this amount from one business account to the other.

5. Vigeant promptly filed a currency transaction report (CTR) required by the Treasury Department for currency transactions exceeding $10,000.00.

6. On July 17, 1996, Vigeant deposited an additional $39,231.59 in the form of a cashier's check into one of the business accounts.

7. Vigeant made no attempt to disguise the electronic or paper trail of either transaction.

8. In the Government's Affidavit for its application for a search warrant, a confidential informant, (CI), whose criminal record and general unreliability the Government was aware of, informed the investigating agent that the numbers and names contained in a "drug ledger" book, that was essentially a telephone book, and that "the B. V." and "Bobby V." in the telephone address book referred to Vigeant.

9. Subsequently, the Government obtained an indictment under seal charging Vigneau and six others, but not Vigeant, with money laundering and drug distribution offenses.

10. On May 9, 1997, nearly a year after the Fleet Bank business account transactions and shortly before the sealed Vigneau indictment was to be made public, agents of the DEA, IRS, and Alcohol, Tobacco and Firearm Department (ATF), obtained search warrants for Vigeant's residence at 24 Newport Lane, Narragansett, Rhode Island and for Vigneau's residence, 25 Kulas Road, West Warwick, Rhode Island.

11. Both warrant applications were supported by the same nine page Affidavit prepared by Special Agents, Botelho and Burns, of the IRS and ATF.

12. The vast majority of the statements in the Affidavit contained activity relating to Vigneau that had occurred two years earlier; approximately two pages worth of information related to Vigeant, none more recent than seven months.

13. On May 12, 1997, the agents raided Vigeant's home at dawn. They used a battering ram to break down the door, Vigeant was handcuffed and placed half naked in a chair in his bedroom.

14. During the search (and while Vigeant was already handcuffed to the chair), agents found a pistol in the nightstand and another weapon located behind a downstairs liquor cabinet.

15. Though he was never charged with money laundering or drug conspiracies, Vigeant was indicted on two Counts of being a felon in possession of a firearm (the pistol and the second weapon respectively) and one Count of possession of ammunition (in the loaded guns).

16. A warrant application must demonstrate probable cause to believe a particular person has committed a crime, "the commission element", and that enumerated evidence relevant to the probable criminality likely is located at the place to be searched, "the nexus element".

17. The Circuit Court of Appeals held that "the commission" element of the probable cause inquiry was not satisfied for three reasons:

(1) there is no link, temporal or otherwise, between the alleged drug dealing and the bank activity that took place more than six months later;

(2) the banking and investment activity was not itself of a character sufficient to establish that the "proceeds of some form of unlawful activity" were involved;

(3) the conclusionary statements of the Affidavit that might otherwise have helped create probable cause are entirely without factual support.

18. The information regarding Vigeant's alleged drug transactions that took place two years before the warrant application was based on the word of a confidential informant, whose reliability and credibility are neither supported nor referred to in the Affidavit.

19. There were no "self-authenticating" details, such as extensive description, that would suggest that the report was not simply made up.

20. Nor was there any indication that the Botelho Affidavit had other information independently corroborating the CI's information so as to bolster the lack of a showing of reliability.

21. Indeed, the Government's failure to indict Vigeant along with Vigneau suggests that the Government had insufficient evidence of drug dealing activity on Vigeant's part.

22. Even if there was such evidence in the Affidavit, there was simply no connection between the alleged drug activity (and any proceeds there from) and the banking transactions. There was a sufficient temporal gap between the events; the amounts deposited were not similar to those involved in the drug transactions in which

the CI had participated in 1995, nor to the numbers in the "drug ledger" next to Vigeant's initials.

23. The Affidavit itself says that the drug distribution conspiracy in which Vigeant was supposed to have played a part "terminated in or about December 1995", well before the deposits alleged to be layering. Thus, we conclude that the Government was unable to identify with factual particulars any illicit source that might cast doubt on the otherwise legal 1996 transactions.

24. Our conclusion rests on the fact that a finding of good faith is inconsistent with the numerous material omissions excluded from and false and misleading statements included in the underlying Affidavit.

25. Accordingly, Plaintiff begins by examining whether the Government has shown objective good faith on the part of Affiant Botelho. As in Ricciardelli, we conclude that the Government has not met its burden. Specifically, Botelho's numerous omissions of material fact were at least reckless. Reilly 76 F.3d 1280 (Citing Reveira v United States, 928 F.2d 592 604 (2nd Cir. 1991) for the proposition that "recklessness may be inferred when omitted information was "clearly critical" to assessing the legality of the search". An enumeration of Botelho's omissions follows:

A. Botelho neglected to mention the CI's long criminal history, his numerous aliases, his recent plea agreement and other indicia of his unreliability.

B. Botelho failed to note that Vigeant had filed the necessary CTR, yet included such minute details of the transaction as that it involved "small bills" , a fact that he presumably obtained from the CTR. Filing a CTR, like failing to "structure" a transaction to avoid a reporting requirement, is evidence manifestly inconsistent with money laundering.

C. Botelho mentioned an additional deposit by cashier's check but neglected to say that Vigeant's grandmother, who was above suspicion in this case, was the purchaser of the check.

D. Botelho could have (but did not) obtained Vigeant's employment status from the Probation Office, apparently deciding instead to infer (without informing the Magistrate that he had done so) Vigeant's present unemployment from a blank space marked "current employment" on a two-year old bank application.

E. Botelho stated that: "the evidence indicates that Robert Vigeant has created "front companies" which implies the existence of underlying evidence not disclosed. Such evidence did not, in fact, exist.

F. Botelho stated that the CI "identified" the $10,000.00 transaction in a "drug ledger" when, in fact, the CI only identified Vigeant by his initials and suggested that the

numbers listed next to the initials represented dollar amounts, none of which was $10,000.00.

G. The Government failed to note that the supposed "pleasure boat" mentioned in the Affidavit was, in fact, a stripped down craft in poor condition, in need of considerable repair and refurbishing before it could be sold at a profit.

H. The Affidavit implies that the CI personally witnessed the marijuana transaction and personally received $10,000.00. Neither is true. According to the contemporaneous DEA report of the investigation on which the Affidavit was based, the CI, in fact, said that Vigeant gave Vigneau approximately $4,000.00, which Vigneau gave to the CI. The CI does not report witnessing an exchange of marijuana.

I. Several of Botelho's statements regarding "front companies" and "layering" were foundationless expert testimony. Such statements weigh against our finding of objective good faith.

26. The Government offers no rational explanation for these omissions and foundationless conclusions. Instead, the Government argues in its Brief, with information obtained after the search in question, that Vigeant is a bad person.

Be that as it may, even unsavory persons have constitutional rights. We conclude that a reasonable Officer in Botelho's position who is in possession of the omitted information would have known that he "should not have applied for the warrant," Mally, 475 US 345, at least not without further investigation.

27. In footnote 4, page 19 of the Decision, contrary to the Government's claim at oral argument, the Affidavit does not show any independent corroboration of information provided by the CI. Even the "drug ledger" (in fact, a phone book) did not corroborate the CI's information; rather, the CI was necessary to provide an explanation for the cryptic remarks in the ledger (which in any case dated from September of 1995 and thus tells us nothing about Vigeant's activities thereafter).

28. In the present case, we have no recency of first hand observation of wrongdoing, no plausible excuse for omitting the material, and no informant on the premises who was first-hand witness as to the wrongdoing cited in the warrant application – in this case, money laundering. It follows then that, in light of the more egregious circumstances in our case, that we must also vacate the conviction here. United States v Vigeant, 176 F.3d 565, 575.

In its argument, the Defendant also attempts to utilize the comments of Judge Israel to substantiate its claim that Vigeant was guilty of the charge of possession of a weapon after being convicted of a violent felony. See Defendant's Brief, p. 24.

What is really pertinent in the findings made by Judge Israel are his comments at pages 77, 78 and 79 of his Decision not to find Vigeant in violation of probation on a previous charge.[5] Exhibit 5. He states:

"an agent or officer of law enforcement who deliberately, as these agents were found, misleads the Court is undermining not only the Fourth Amendment but the integrity of the judicial profession itself. That shocks my conscience. . . "

"I am satisfied that there was a most egregious violation of the Fourth Amendment and Fourteenth Amendment of the Constitution of the State of Rhode Island and that the means by which that violation was perpetrated, that is to say an Affidavit which undermines the integrity of the Court's issuance of search warrants is utterly shocking. In at least sixteen years up here, my conscience has never been shocked by a search as it was in this one."

**B. The actual search of 24 Newport Lane**

The search itself was calculated to shock, intimidate and confuse the Plaintiff. It was executed at 6:15 a.m. while the Plaintiff was in a sound sleep. The agents, if you believe their testimony, waited approximately five seconds before they smashed down the door of his home with a battering ram. They threatened to shoot his dog, handcuffed him half naked to a chair in the presence of a female officer, and then proceeded to ransack his house.

Predictably, they found nothing that substantiated money laundering but, as was their motive, did find something that accomplished the real purpose of their search, two pistols.

In addition to the two pistols that were found, the Government now alleges they found several bags of marijuana, some cash and a bill of sale for a 1989 vessel. No previous evidence of finding marijuana or money has ever been presented to the Plaintiff

[5] Judge Israel prior to being appointed to the Bench was a career prosecutor who made his legal reputation convicting Raymond Patrarca of conspiracy to murder and later served several terms as the Rhode Island Attorney General.

and despite the fact of the volume of marijuana allegedly found on May 12th, the Government never charged Vigeant with possession of a controlled substance. See Defendant's Exhibit F. Exhibit 5.

Absolutely no evidence was produced connecting Vigeant in any way with Richard Crandall or Patrick Vigneau. The reality is the Government did not care if there was any connection. All they wanted to do was find anything that they could charge Vigeant with after trashing his home and prosecute him as a career criminal.

Without giving him his Miranda rights, and while he is handcuffed half naked in a chair, (which was done prior to finding any weapons), the agents waived guns and documents in his face and allegedly elicited an admission that the guns were his. As a result, Vigeant was charged with two Counts of being a felon in possession of a firearm and one Count of being in possession of ammunition.

Vigeant states that he told the agents he had never seen one of the guns and that the other belonged to his girlfriend, not to him. See Affidavit of Robert Vigeant. Exhibit 7.

**III. Criminal Trial**

Vigeant, as previously noted, was charged with being in possession of a firearm after being convicted of a violent felony. He was held in prison from the date of the search, May 12, 1997. Motions to Suppress his statements were denied; his request for a Franks hearing challenging the validity of the Botelho/Burns Affidavit was denied. He was convicted on one of the firearm's charges and found innocent on the other. The ammunition charge was dismissed.

In April of 1998, after serving almost a year in prison, he was sentenced to an additional 235 months as an armed, career criminal, which incidentally was the minimum sentence that could be given to him. At his sentencing, Judge Lisi made the comment that he ought to appeal. See Trial Sentencing Transcript p 61. Exhibit 8. After serving 27 months in jail, his conviction was vacated and he was released. Vigeant was never recharged and he stands today an innocent man.

**IV. Travel of the civil case.**

Prior to filing his Federal Tort Claim Act in May of 2000, Vigeant had filed a so-called "Bivens" action against Agents Burns and Botelho in the Rhode Island Federal District Court. Unfortunately, Vigeant's attempts to locate either Botelho or Burns were unsuccessful. The United States Government refused to divulge their addresses and the 120-day time period allowed to serve them expired. Vigeant obtained one extension; however, the second extension was denied and the District Court thereafter dismissed the case for failure to serve the Defendants. Vigeant filed an appeal but fearing that he had no chance of success, voluntarily dismissed it and re-filed under the Federal Tort Claims Act. This was done on October 9, 2002. Defendant immediately filed a Motion to Dismiss two out of the six Counts (False Arrest and False Imprisonment) on the basis of lack of jurisdiction due to the running of the statute of limitations. The Government stated that the Plaintiff's claim of Abuse of Process and Unlawful Search and Seizure (Counts I and V) failed to state a claim for which relief could be granted. Magistrate Martin sustained the Motion to Dismiss Count I which alleged unlawful search and seizure because it did not fall under the purview of the Federal Tort Claims Act and Count VI, the claim of Concetta Pazienza. The Court specifically denied Defendant's

Motion to Dismiss the second and third Counts of False Arrest and False Imprisonment indicating that the running of the statute did not start until Vigeant's conviction was overturned in 1999. The Court found that there was more than sufficient evidence to support the Count for Abuse of Process and, in fact, suggested that it might have been the strongest claim on Vigeant's part.

The Government appealed the Report and Recommendation of Magistrate Judge Martin. Judge Mary Lisi in the District Court affirmed the Magistrate's Decision.

The Defendant makes an odd statement on page 7 in its Brief. The Defendant states: "although the Court states that "the defendant's objection (as to Counts II and V) does appear to have merit," it did not rule on the substance of the Motion as to the other Counts because it would not have disposed of the entire case." The exact opposite is true. Judge Lisi's Memorandum and Order specifically states:

> "having conducted a de novo review of the challenged portions of the Report and Recommendation, the Court overrules the Defendant's objection and adopts the Magistrate Judge's recommendations as to Counts II, IV and V. While the Defendant's objection does appear to have merit, the Court concludes that the questions presented are too close to call at this stage of the proceedings and that permitting the action to go forward as to develop a record is the better course. Accordingly, Defendant's objections are overruled and the Report and Recommendation issued on May 6, 2004 is accepted and adopted in its entirety. The Defendant's Motion to Dismiss is granted as to Counts I and VI of Plaintiff's Complaint. The Motion to Dismiss is denied as to Counts II, IV and V. (See Decision of Judge Lisi)." Exhibit 15.

Arguably, since no new evidence has been produced concerning the running of the statute of limitations, nor could there be, the Decision of Judge Lisi is the law of the case.

Second, the Defendant in its Brief in no way elicits any new information or new evidence contradicting the findings made by Magistrate Martin which were adopted by Judge Lisi, concerning Count V, the Abuse of Process Count. Judge Martin's astute

observations as to how the United States, or its agents, misused the justice system stand tall in response to the claim of the Government that Plaintiff has failed to assert sufficient facts to support an abuse of process claim.

**V. Summary of the Argument.**

The first argument of the Government is that the 1st Circuit opinion does not establish through res judicata or collateral estoppel that the United States did not have probable cause for the purposes of Plaintiff's claims in this action. Plaintiff argues that the ruling in United States v Vigeant, 176 F.3d 565 conclusively establishes the lack of probable cause to enter the residence at 24 Newport Lane on May 12, 1997. It also establishes that agents Burns and Botelho deliberately misled Magistrate Lovegreen with false statements and reckless omissions, that they knew or should have known that they had no probable cause to ask for a warrant, and that their request for a warrant was done in bad faith.

The Government's argument in the criminal appeal extended far beyond the four corners of the allegations contained in the original Affidavit used to support the request for the search warrant.

In reference to the malicious prosecution claim, the Government argues that while it may not have had probable cause to search for bank records that it already possessed, once they got into the house through the ticket of a false Affidavit, the fact that they were fortuitous enough to find weapons negates any charge of malicious prosecution since once they had the weapons, they had probable cause and the exclusionary rule does not keep out evidence that is obtained through such conduct.

The fly in the ointment of this argument is that the cases that discuss this issue provide the caveat that if the police methods involve fraud, perjury, dishonesty or other untoward means, the fact that the agents may have eventually found something that justifies an arrest will not inoculate the Government from a malicious prosecution charge. The same proviso applies to the so-called "favorable termination" finding. Additionally, Plaintiff raises strong arguments that his criminal case did terminate favorably pursuant to Rhode Island case law which is controlling in FTCA cases.

Vigeant alleges that a finding of probable cause or a conviction was fatally tainted by the dishonesty and recklessness on the part of the agents who secured the warrant to search the house. In addition, Vigeant states by Affidavit that he was actually found innocent of one of the weapons charges, that the second weapon legally belonged to his live-in girlfriend, and that he neither intended to possess nor exercised dominion and control over that weapon. Thus, a material issue of fact exists negating the possibility of summary judgment.

Since we are at the stage that all inferences are taken in favor of the non-moving party and no issues of credibility can be raised, this Court has no jurisdiction or authority to grant Summary Judgment when there are material issues in dispute.

Plaintiff's injuries were proximately caused by the deviousness of the agents who procured the warrant to search the residence. They knew he was eligible to be sentenced as a "career criminal" and the severe consequences resulting from this pretextural search were foreseeable.

In reference to Count V, the Abuse of Process Count, the Defendant essentially re-files the same Motion to Dismiss that it filed over three years ago when the case was

first presented to this Court. As stated in the previous section, there has been no new evidence presented in Defendant's Brief, or otherwise, to contradict the findings made by Magistrate Martin that there was more than sufficient evidence to support an abuse of process claim in the Complaint filed by the Plaintiff. Therefore, the law of the case requires denial of this Motion. Further, Judge Martin found: (1) the agents executed a warrant at dawn; (2) they used a battering ram to break the door down after waiting five to ten seconds; (3) Vigeant was handcuffed, placed half naked on a chair in his bedroom; (4) he suffered mental anguish and emotional distress as a result of the actions in front of the agents, one of which was a female; (5) the search warrant authorized the agents to look for Vigeant's bank records, which the Court of Appeals suggested could have been obtained from the bank without invading Vigeant's home; (6) Vigeant would have no reason to destroy the records while the agents waited for him to admit them into his house; (7) the records were not contraband; (8) yet the agents broke the door down, invaded his home in a manner akin to a raid on a crack house; (9) it could be reasonably inferred from these allegations that the purpose of the agents in obtaining the search warrant was not to search for bank records but to frighten, intimidate and humiliate Vigeant. It can also be reasonably inferred, particularly from the timing of the warrant application and the manner in which they executed it, that there was another ulterior or wrongful purpose, citing Butera v Boucher, 798 A.2d 353. The agents were using the warrant to search for items of contraband for which they lacked probable cause but, if found, would enable them to immediately charge Vigeant with some offense. Indeed, the agents were successful in their ulterior and wrongful purposes. They stormed into Vigeant's house at dawn in a manner that can be reasonably viewed as intended to instill

fear and confusion. They humiliated him by forcing him to remain handcuffed in an undressed condition while they searched the home and found firearms for which they had no probable cause to search. This enabled them to immediately detain and arrest Vigeant. See Report and Recommendation of Magistrate Martin, dated May 6, 2004. Accordingly, the Court found that Vigeant plead sufficient evidence to allow a fact finder to conclude that the search warrant was obtained for a perverted, ulterior or wrongful purpose.

Not one scintilla of evidence has been produced to contradict that earlier finding.

Finally, in reference to lack of subject matter jurisdiction, this is again a re-hash of the Motion to Dismiss filed by the Defendant at the time of the case's inception. The law of the case requires that this Motion be denied. Should the Court revisit this issue, the time constraints for the False Arrest and False Imprisonment Counts did not begin to run until Vigeant's criminal conviction was reversed in May of 1999. No new facts or case law have been produced by Defendant to justify the earlier denial of this identical Motion.

## VI. ARGUMENT

### A. STANDARD FOR REVIEW

#### 1. Summary Judgment.

For a moving party to succeed in a Motion for Summary Judgment, he is obligated to prove that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Lipset v University of Puerto Rico, 864 F.2d 881, 894 (1st. Cir. 1988).

In determining whether there is a material issue of fact, the Court considers affidavits and pleadings in a light most favorable to the non-moving party and only when

it appears that no genuine issue of material fact is asserted can summary judgment be ordered. Lipset v University of Puerto Rico, 864 F.2d 881, 895. Charles Garnier Paris v Andin Intern., Inc. 36 F.3d 1214 (1st Cir. RI 1994). Caylor v Virden, 217 F.2d 739 (8th Cir. 1955), Marandola v Hillcrest Builders, 277 A.2d 785 (RI 1967).

Summary Judgment should be denied if the facts established are such that conflicting inferences could be drawn therefrom or if reasonable men might disagree. Caylor v Virden, 217 F.2d 739.

An analogy exists between a Motion for Summary Judgment and a Motion for a Directed Verdict. Summary Judgment may be granted on a showing that it would permit a direction of a verdict tried to a jury. Sartar v Arkansas Natural Gas Corp., 321 U.S. 620, 64 S. CT. 724 (1924). Again, the Court stated in that situation that all inferences are read in favor of the non-moving party. Kelly v LaFarce, 288 F.3d 1, 9, 14. (1st Cir. 2002).

Summary Judgment is a drastic remedy and it should be cautiously applied. McPhilips v Zia Corp. 582 A.2d 747 (RI 1990).

In a Motion for Summary Judgment, the Court does not pass on the weight and credibility of the evidence. It simply determines whether there are any issues of fact to be resolved. Palazzo v Big G Supermarkets, Inc., 110 RI 242 (1972).

As a pre-requisite to an Order for Summary Judgment, the lower Court must review the pleadings, affidavits, admissions, answers to interrogatories and other appropriate evidence from a perspective most favorable to the party opposing the motion. Steinberg v State, 427 A.2d 338 (RI 1981).

Summary Judgment is not appropriate merely because facts offered by the moving party seem most plausible or because the opponent is unlikely to prevail at trial. Oriello v Rhode Island Department of Administration, Division of Motor Vehicles, 985 F. Supp. 48 Dist. of RI (1997). Schock v U.S. 56 F. Supp. 2d 185 Dist. of RI (1999).

A genuine issue of material fact exists for purposes of summary judgment motions if there is sufficient evidence to persuade a reasonable jury to resolve a point in a non-moving party's favor. Hope Furnace Associates, Inc.v F.D.I. C., 71 F.3d 39 (1st Cir. RI 1995). Charles Garnier, Paris v Andin Intern.,Inc., 36 F.3d 1214 (1st Cir. RI 1994).

If facts support plausible but conflicting inferences on pivotal issue in a case, a judge may not choose between those inferences at summary judgment stage. Schock v US 56 F.Supp. 2d 185.

**2. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

On a Motion invoking the Federal Tort Claims Act, the statute of limitations defense is a jurisdictional issue. It is the plaintiff's burden to establish that the statute of limitations has been met in order to invoke the District Court's jurisdiction. Davis v U.S. Department of Justice, 204 F.3d 723, 726 (7th Cir. 2000).

The plaintiff must prove this by a preponderance of the evidence. Osborne v U.S. 918 F.2d 724, 728 (8th Cir. 1990).

**3. Motion to Dismiss for failure to state a claim for which relief can be granted.**

In ruling on a 12(b)(6) Motion to Dismiss for failure to state a claim, this Court is obligated to look at the allegation set forth in the Complaint in a light most favorable to the Plaintiff. Paradise v Aetna Casualty Insurance Company, 796 F. Supp. 59, 61 (Dist. of RI 1992).

The Court must accept all reasonably articulated pleadings as true along with the inferences or presumptions following such pleadings. Steinberg v State, 422 A.2d 338 (RI 1981).

If under any set of facts or any theory of law the allegations set forth in the pleadings are sufficient to state a cause of action, the Motion to Dismiss must be denied. Hart v Mazur, 903 F. Supp. 277, 279 (Dist. of RI 1995).

**4. The law of the case.**

When a decision on an issue of law is made at one stage of a case by the same Court or coordinate Court in which the case is pending, a judge has power to reconsider a decision but should exercise that power only if there are extraordinary circumstances that otherwise would cause serious injustice. American Title Insurance Company v East West Financial Corporation, 817 F. Supp. 251, Affirmed in part, reversed in part, 16 F.3d 449 (Dist. of RI 1993).

Law of the case doctrine states that ordinarily after a judge has decided an interlocutory matter in a pending suit, a second judge, confronted at a later stage of the suit with the same question in the identical manner, should refrain from disturbing the first ruling. Ferguson v Marshall Contractors, Inc. 745 A.2d 147 (RI 2000).

**B. PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST ARGUMENT THAT THE 1ST CIRCUIT'S DECISION DOES NOT ESTABLISH ANY OF THE ELEMENTS OF COLLATERAL ESTOPPEL.**

The Defendant has chosen an issue that has nothing to do with its Motion for Summary Judgment to argue first: whether the Doctrine of Collateral Estoppel applies in the case at bar. We are tempted to borrow from Shakespeare's famous quote in Hamlet: "The Lady doth protest too much mee thinks."

Defendant cites the correct standard for collateral estoppel found in Wiggins v State of Rhode Island, F. Supp. 297, 303 (Dist. of RI 2004):

1. That the issue sought to be precluded is the same as that which was involved in the prior proceeding;

2. That the point was actually litigated in the earlier proceeding;

3. That the issue was determined by a valid and binding final judgment or order;

4. That the determination of the issue in the prior proceeding was essential to the final judgment or order.

Since the Plaintiff has not filed a Motion for Summary Judgment or a Motion to Preclude, it would seem that Defendant's first argument is premature. However, since it has been raised and under local Rule §12.1 if we don't address issues raised, there is a danger that we will be accused of waiving our claim, therefore we will discuss it.

Plaintiff states that the Decision of the 1st Circuit in United States v Vigeant, 176 F.3d 565, 566, 571 (1st Cir. 1999) conclusively addresses the issue of probable cause to search Vigeant's home.

Defendant argues that since a Count for malicious prosecution in Rhode Island requires clear proof as opposed to the Motion to Suppress in a criminal matter that requires a preponderance of the evidence therefore, collateral estoppel should not apply. Defendant does not address the Count of False Imprisonment or False Arrest; therefore, we assume it concedes that there is collateral estoppel in reference to those two Counts.

In reference to malicious prosecution, we would argue that the findings of the Circuit Court of Appeal in Vigeant indicated that the Government's lack of probable cause to search was proved far beyond a preponderance of the evidence and in all

likelihood, beyond a reasonable doubt. The burden of proof was actually more difficult if you consider the elements that had to be demonstrated on the criminal appeal. To show that the Government had probable cause to obtain the search warrant of Vigeant's house, it had the obligation to provide information that would warrant a man of reasonable caution the belief that an offense has been or is being committed. Brinegar v United States, 338 US 160, 175, 176. 69 S. Ct. 1302.

The Circuit Court in Vigeant found in its Decision that not only was there no probable cause in reference to believe there was the commission of a crime, i.e.: drug laundering, nor was there any reliability as to any information provided by a confidential informant that Vigeant had any link to drug activity, but that there were statements that were made by the Affiant that were either totally false or conclusionary statements without any basis in fact. Finally, that the Magistrate who issued the warrant was misled by information in the Affidavit that the Affiant knew was false or would have known as false except for his reckless disregard for the truth. United States v Vigeant 176 F.3d 565, 572. The Court ruled in addition to the fact that there was no probable cause for issuing the warrant, the Government failed to meet the "good faith" standards set forth in U.S. v Leon, 468 U.S. 897, 906, 918. This additional element is not required in a civil malicious prosecution case. Nagy v McBurney, 120 RI 925, 930 (1978).

The Defendant then argues that it was not given the chance to have a full and fair opportunity to litigate the issue in the prior proceeding. This is simply not the case. We have attached portions of the Brief in Opposition to the criminal appeal of Vigeant filed by the United States, through its attorney, Richard Rose. Exhibit 9. A review of the Government's response to Vigeant's appeal demonstrates, on page 20, that Mr. Rose

argued well beyond the four corners of the original Affidavit.[6] Even the Appellate Court's Decision states: "the Government argues in its Brief with information obtained after the search in question that Vigeant is a bad person." Id. p. 574. In fact, the Government argues to support its claim of probable cause that the Plaintiff admitted to engaging in criminal activity after he was arrested. See p. 32 of Defendant's Brief in Opposition to Plaintiff's Appeal in the criminal matter.[7] Exhibit 9. On page 33 of the Government's Appellate Brief, Rose alleges that Vigeant bought seven loads of marijuana between 1995 and 1996. Exhibit 9. Nowhere in Botelho's Affidavit is this found. It certainly demonstrates that the Government did not confine itself to the four corners of the Special Agent's Affidavit. Thus, the argument that they were restricted by what was in the Affidavit is not born out by the actual facts.

Finally, the core of Defendant's objection to the issue of collateral estoppel is that even if they did not have probable cause to search 24 Newport Lane, once they got in the house under the pretext of searching for drug laundering evidence, they found two guns. Therefore, the real probable cause is whether they could have arrested Vigeant for possession of those guns after he had been convicted of a felony and that the original lies, misrepresentations and reckless omissions made by the Government played no part in the finding of the guns. We beg to differ and state that like the large white elephant standing in the room, they cannot overlook how they got into that house, regardless of whether the exclusionary rule applies or does not apply. Even the most onerous cases cited by the Defendant in its Brief always have the qualifier that if probable cause or later

[6] At page 20 Rose discussed Vigeant as listing cash figures of $15,000.00 and $9,250.00 purportedly to be used for the purchase of drugs.

[7] The same character assassination is being used in Defendant's pending Motion in this case, arguing that summary judgment should enter because Vigeant allegedly admitted to criminal activity after he was arrested. See Defendant's Brief at p. 5.

convictions break the "law of causation" to defeat a malicious prosecution claim are tainted by police misconduct, fraud, or other untoward actions, that defense is void. Nagy v McBurney, 120 RI 925, 930 (1978), Ware v US, 91 F. Supp. 1442, 1450, Townes v City of New York, 176, F.3d 138, 147 (2nd Cir. 1999), Freeman v Sullivan, 788 A.2d 867 (NJ Supp. 2002).

In United States v Leon, 468 US 897, 923, the Supreme Court stated a policeman is not entitled to rely on a warrant when the issuing magistrate was misled by information in an Affidavit that the Affiant knew was false or would have known was false but for his reckless disregard for the truth. In Mally v Briggs, 475 US 337, 345, the Court found that a reasonably well-trained officer would have known his Affidavit failed to establish probable cause and that he should not have applied for the warrant.

There has been an unappealed judicial finding that these Government agents misled, lied, and recklessly omitted facts to a Federal Magistrate in order to obtain a search warrant for items they already had in their possession. For these reasons, Plaintiff states that the following facts should be accepted pursuant to the Doctrine of Collateral Estoppel:

1. There was no probable cause to enter and search the residence at 24 Newport Lane.

2. Burns and Botelho deliberately misled the Court with false statements and reckless omissions.

3. They knew they had no probable cause to apply for a search warrant and never should have asked for one.

4. Their request for the warrant was done in bad faith.

**C. ANY PROBABLE CAUSE THAT DEFENDANT HAD TO ARREST PLAINTIFF ON MAY 12, 1997 WAS FATALLY TAINTED BY THE ILLEGAL MOTIVES, ILLICIT PURPOSES, PERJURIOUS STATEMENTS, RECKLESS OMISSIONS AND OTHER UNTOWARD CONDUCT OF THE INVESTIGATIVE OFFICERS INVOLVED.**

Defendant presents what it believes is its strongest argument against the Malicious Prosecution Count in Sections C and D of its Brief alleging that: (1) they had probable cause to arrest Vigeant because the issue is not whether or not they had probable cause to obtain the search warrant to gain entry to Vigeant's home, but rather because they were already in the house pursuant to an illegally obtained search warrant and were fortuitous enough to find contraband, (two pistols), the probable cause issue should therefore be framed as to what they found in the house, not how they got into the house.

Defendant attempts to include the Counts of False Arrest and False Imprisonment in its argument stating that since there was probable cause to charge and arrest Vigeant for possession of a weapon after being a convicted felon, all three Counts should fail.

The Defendant, with obvious good reason, wants to move the focus of this claim away from the lies, omissions and misrepresentations that were the basis for its original search warrant and argue that the correct probable cause inquiry is whether the agents who made the arrest had reasonably trustworthy information that would cause a person of reasonable caution to believe that Vigeant committed the offense of possession of a firearm by a convicted felon. See Defendant's Brief p. 18.

To support this argument, they cite the case of Gordy v Burns, 294 F.3d 722 (5th Cir. 2002). They allege that this case is strikingly similar to Vigeant. The simple fact is that the cases are not even close. In Gordy v Burns, the police had reliable information from the United Parcel Post Company that there was a package of marijuana that was to

be sent to the address where Gordy resided. Based on that information, they obtained a warrant to search Gordy's home. The warrant had the conditional requirement that it would be activated subsequent to the delivery of marijuana. Apparently, an agent of the Sheriff's Department actually made the delivery to Gordy. The police waited a few minutes and then entered his apartment, arrested Gordy, confiscated the unopened package and charged him with possession of marijuana. Gordy claimed he did not know what was in the package, that it wasn't addressed to him personally, only to his address. Prior to trial, the attorney general determined that the warrant was fatally defective because the initial Order allowing the search stated that the warrant was not to issue until after the delivery of the marijuana and thereafter, dismissed the case prior to trial. Gordy then filed a malicious prosecution claim against the officers alleging they entered his apartment without probable cause and with malice.

The 3rd Circuit ruled that the search warrant was fatally defective but that at the time of the arrest the police officers had probable cause to go into the apartment because of the information they had already received and they had the search warrant, which at the time they believed to be valid. Id. 728. The Gordy Court noted that the only reason the District Court had found malice was that under Louisiana law lack of probable cause and malice are presumed if a case is dismissed prior to the criminal trial. Id. 727. For those reasons, the Court found in reference to an analysis of probable cause the officers did, in fact, have probable cause that Gordy was possessing marijuana and therefore overturned the District Court verdict in his favor. Id. 728.

The dicta of the Gordy case indicates that had the plaintiff shown that the officers had caused a criminal proceeding to be brought by providing false or misleading

information to a prosecuting attorney or a grand jury, they would not be insulated from acts of malicious prosecution since that grand jury's decision would have been "tainted" by the malicious actions of the Government officials", citing Hand v Geary 838 F 2d 1420, 1426 (5th Cir. 1988). Id. 728.

The same argument can be made in reference to giving false and misleading information to a Magistrate Judge as was done in the Vigeant matter. Nowhere in the Gordy case was there any allegation that the information they received from UPS that a shipment of marijuana was going to go to Gordy's address was incorrect or false. The defect in the Gordy warrant was bureaucratic and procedural, not the intentional misrepresentations or reckless omissions found in the case at bar.

The second case that Defendant argues is Freeman v New Jersey, 788 A.2d 867 (NJ Supp. 2002). In that case, they again cite an instance where a traffic stop produces cocaine possession, a conviction and later overturning of that conviction because of a bad search. See Defendant's Brief p.20. Townes v New York, 176 F.3d 138, 149 (2nd Cir. 1999) is also cited to support this argument.

In Freeman, the Court found that in a malicious prosecution context probable cause for a proceeding with criminal action is established conclusively by a conviction even if reversed on appeal. However, in both Freeman and Townes the Court stated that if a conviction was obtained through "fraud, perjury, or other corrupt means", then the conviction cannot be used to establish probable cause. The chain of causation is not broken by the exercise of independent judgment through a conviction or an indictment, if the independent judgment is skewed by the fact that the police officer deceived or

pressured the official who could be expected to exercise independent judgment. Freeman v Jones, 788 A.2d 867, 876, 877. Townes v City of New York, 176 F.3d 138, 147.

In Freeman, the police officers searched Jones' vehicle after smelling alcohol on his breath. As a result of the search, they found cocaine that resulted in the conviction and later the claim for malicious prosecution. There was absolutely no allegation that the police officers lied to a Magistrate Judge, lied to the District Attorney, misled a grand jury or acted in any other way untoward other than using bad judgment as to whether they had probable cause to search the car once they found alcohol on the breath of the driver.

In Townes v City of New York, the police officer stopped a taxicab that contained Townes and two of his companions and proceeded to search the cab finding several firearms and drugs. The officers then arrested Townes and charged him with possession of a weapon in the third degree and criminal possession of a controlled substance in the seventh degree. These complaints produced a conviction that was later overturned because of a search that did not have probable cause.

As in Freeman v New Jersey, there was no allegation that the police officers did anything other than exercise poor judgment. While Townes may have looked suspicious and made some furtive movement that piqued the interest of the police officers, he did not do enough to give them probable cause to search him and the cab in which he was riding. Those actions are a far cry from walking into a Magistrate's office, perjuring yourself, recklessly omitting facts and requesting a warrant for items that you already possess, knowing that once you get in the house, you may be able to find contraband or produce a conviction resulting in decades of incarceration to an individual who was known to have a prior police record.

The facts in Vigeant are much closer to those found in Bolduc v United States, 2002 WL 1760882(D Mass 2002). In that case, FBI agents intentionally withheld exculpatory evidence that resulted in Bolduc serving nine years in prison. The Court found that if the conviction was obtained by collateral fraud, the conviction does not establish probable cause. Id. p.3. When all reasonable inferences are drawn in favor of the plaintiffs, the Government's intentional failure to turn over exculpatory evidence is sufficient to establish that the conviction was obtained by collateral fraud or other corrupt means. Id. p. 4. As stated previously, in United States v Leon, 468 US 897 923, a policeman is not entitled to rely on a warrant when the issuing Magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false but for his reckless disregard for the truth.

For these reasons, we feel comfortable in stating that any allegation of probable cause justifying the arrest and conviction of Vigeant was fatally tainted by the illegal motives, illicit purposes, perjurious statements and reckless omissions of the agents of the United States.

## D. VIGEANT CAN ESTABLISH THE ELEMENTS OF MALICIOUS PROSECUTION AS A MATTER OF LAW

In reference to Defendant's Argument D, it presents a three-headed Hydra alleging: (1) that Vigeant's criminal prosecution did not result in a favorable termination as that term is used in malicious prosecution law; ( 2) that the conviction for the possession of firearms, even though reversed, is conclusive on the issue of probable cause and; (3) that he cannot establish malicious prosecution because he was, in fact, guilty of the crime charged.

### 1. The criminal case ended with a favorable termination for Vigeant.

Defendant's argument that the case did not end in a favorable termination for the Plaintiff is without merit. Defendant's argument appears to be that Plaintiff almost has to prove his innocence beyond a reasonable doubt. See Defendant's Brief, p. 22: "Termination is favorable only if it is dispositive of the accused's innocence of the crime for which he is charged."

Defendant cites no Rhode Island case that supports that proposition. In Nagy v McBurney, 92 A.2d 365 368, the Court merely states that a compromise settlement is not deemed a favorable termination. In Guay v Kappelle, 70 F. 3d 1252, Unpublished (1st Cir. RI). The Court found that Dr. Guay was liable on one Count of Malpractice and not liable on another Count of Lack of Informed Consent. That Guay did not appeal and paid a settlement sum of $70,000.00. This was determined to be not a favorable termination. Id. 1.

What the Rhode Island Supreme Court has found is that failure to prosecute is deemed favorable to defendant for purposes of establishing defendant's eligibility to maintain a subsequent action for malicious prosecution. Nagy v McBurney, 392 A.2d 365, 368, 369. See also Restatement of Torts, 2d., §677.

In this particular case, the initial conviction was vacated on May 14, 1999. It is now December 21, 2005. Obviously, the Government has no intention of re-indicting or re-charging Vigeant for the crime of possession of the weapon confiscated on May 12, 1997. This is clearly a decision on the part of the Government not to prosecute any further. Under the terms of Nagy, this is a favorable disposition or termination in reference to Vigeant. Id. 369.

The Government should receive no comfort from the comments of Judge Israel as set forth in Defendant's Brief at footnote 19, p. 24. While Judge Israel might have said he would have found Vigeant guilty if he was sitting without a jury of both firearms charges, the simple fact is that a jury heard all of the facts, not just a violation hearing, (in which the defense presented no evidence or rebuttal), and found Vigeant innocent of one of the charges and the second charge the issue was clearly a very close call. In fact the Appellate Court never had to address Vigeant's appellate issue that he never intended to possess the weapon that was owned and controlled by his girlfriend, Stacy Hutton. U.S. v Vigeant, 176 F.3d 565, 585. See Affidavit of Stacy Hutton. Exhibit 10. See also Affidavit of Louis Grieco, Exhibit 11.

If nothing else, the Government's arguments are all consistent in reference to Vigeant. Initially, he was a drug dealer that the Government never charges or indicts for dealing drugs. Second, he is a money launderer, who is never charged or indicted for laundering money. Third, he is an all around bad guy but is not indicted or charged for being a bad guy. Finally, he is a felon in possession of weapons, but he is never re-tried after the initial conviction is vacated.

Vigeant cannot argue that he wants a second criminal trial. His presumption of innocence is restored. He stands as an innocent man. The Government has had seven years to re-indict him. This is not an instance where the charges were denied without prejudice and can be brought back twenty years later as in Russell v Smith, 68 F.3d 33 (3rd Cir. NY 1995). The Court is aware that this is a FTCA action and State law controls as far as the burden of proof is concerned. The Nagy case has set forth the definition of

what a favorable termination is and looking at this in a light most favorable to the non-moving party, the termination was in favor of Vigeant.

**2. Vigeant's conviction was not conclusive on the issue of probable cause.**

The Defendant next argues that even though the original conviction was reversed and vacated, the issue of probable cause is conclusively proven by his initial conviction.

One of the cases that Defendant cites to support its argument is Bolduc v United States, 2002 WL 1760882 (Dist. of MA 2002). That case does state that a conviction, even though reversed on appeal, is conclusive evidence of the existence of probable cause in a subsequent malicious prosecution action. In the same paragraph, however, the case states: that if the conviction was obtained by collateral fraud, the conviction does not establish probable cause, citing the Restatement of Torts, §667, Id. 4. See also, Nagy v McBurney, 392 A.2d 365, 368. Bolduc's conviction, as we have indicated previously, was originally vacated because the FBI purposely withheld exculpatory evidence in prosecution of that case. U.S. v Bolduc, WL 7760882. In the case involving Bolduc's malicious prosecution claim, the Court, in fact, found that the conviction of Bolduc was obtained by collateral fraud or other corrupt means. Id. p. 3. This only reinforces Plaintiff's previous argument that the fraud, perjury, misrepresentations and reckless omissions that were made in Vigeant's case fatally taint any conviction or probable cause resulting from those fraudulent actions on the part of the Government's agents.

Looking at this issue in a light most favorable to the Plaintiff, the non-moving party, we would state that the vacated conviction is a nullity and has no relevance to the issue of probable cause, vis-à-vis Vigeant's Count of Malicious Prosecution.

Further, in both Rezendes v Beaudette, 797 A.2d 474 (RI 2002) and Nagy v McBurney, 392 A.2d 369 934, the Rhode Island Supreme Court found that the issue of probable cause is a question of law and fact and is normally a matter for the jury or fact finder to decide. Thus, this question is a disputed material issue of fact that should preclude summary judgment.

For these reasons, Plaintiff states the second head of Defendant's three-headed Hydra should be lopped off.

**3. Vigeant was not and is not guilty of the crime for which he was charged.**

Defendant finally argues that it should be allowed not only to be the prosecutor but also the judge and jury, making the claim that even if Vigeant was to demonstrate that Defendant acted without probable cause, he cannot prevail because he was, in fact, guilty of possessing a firearm. See Defendant's Brief p. 26.

One cannot imagine a more obvious issue of material fact than this core question. Vigeant, through his Affidavit, adamantly denies that he ever owned, possessed or intended to possess either one of the weapons. Exhibit 7. He was found innocent of possessing one weapon. The Government, we believe, conceded that the weapon found in the liquor cabinet was owned by Ms. Hutton but argued at trial that Vigeant constructively possessed it because he at times stayed at 24 Newport Lane with Ms. Hutton and he admitted he knew where the weapon was located. Therefore, the prosecutor argued Vigeant had "dominion and control over the gun". See Trial transcript p. 41. Exhibit 12.

His fingerprints were not found on either gun. There was no evidence that he ever had either gun in his possession. There was no evidence that he ever purchased

either weapon. Mere presence or association with another who possesses contraband is insufficient to establish constructive possession. U.S. v Wright, 968 F.2d 1293 (1st Cir. 1992). Not one scintilla of evidence was ever presented before or after Vigeant's trial that he had any intention of exercising dominion and/or control over the firearm found in the liquor cabinet at 24 Newport Lane. The only fact that has been established concerning Vigeant and the weapon found in the liquor cabinet is that he knew where it was located. A weapon is constructively possessed only if the possessor has the "power to control it and the intention to exercise that power". U.S. v Zavala Maldonado, 23 F.3d 4, 7, 8 (1st Cir. 1994). The issue of intention is quite as important as the issue of power. One may have effective power over drugs simply because they were located within reach while the actual owner was temporarily absent, but if such a person had such power, for instance a temporary visitor to the room in which they are located, but had no intention to exercise that power there may still be no crime. Power to control and intention to control are separate elements and each have to be proved beyond a reasonable doubt. Id. p. 8. Vigeant's appellate issue that he never intended to possess the weapon was not ruled on by the Appellate Court because the egregious conduct of the agents who discovered the weapon warranted reversal without the necessity of addressing that question. United States v Vigeant, 176 F.3d 565, 575.

Arguably, the only source of evidence that Vigeant was in possession of a weapon at 24 Newport Lane was the arresting agents, two of whom have been judicially determined to have lied to a Federal Court Magistrate. Who has the credibility problem?

The Government tries to buttress its argument that Vigeant was guilty of the underlying charge with Judge Israel's comments at the violation hearing. See

Government's Brief, p. 27. Judge Israel did not find Vigeant guilty of anything. In fact, Judge Israel found him innocent of violating his probation. The reason he did was because of the egregious conduct on the part of the agents of the Government in committing fraud on the Court by producing a perjurious Affidavit that contained false statements, reckless omissions and otherwise shocking the Judge's conscience. See Decision of Judge Israel in violation hearing of Vigeant, p. 77, 78, 79. Exhibit 5.

This also is an issue to be determined by the fact finder, not by dispositive Motion.

**E. VIGEANT'S CLAIMS FOR MALICIOUS PROSECUTION, FALSE ARREST, FALSE IMPRISONMENT AND ABUSE OF PROCESS ARE THE PROXIMATE CAUSES OF HIS INJURIES.**

Defendant's next argument is difficult to follow. Presumably, the Government claims that even if Vigeant proves his claims for malicious prosecution, false arrest, false imprisonment and abuse of process, none of those intentional torts caused him any injury or damage for which he seeks redress. To support this astounding claim, Defendant trots out that eighty-year old law school chestnut, Palsgraff v Long Island Railroad, 248 NY 339 (1928) to support its argument of lack of proximate cause. Looking back at Palsgraff, we see a "Rube Goldberg" type of situation where a railroad passenger attempted to catch a train operated by defendant, is assisted by an employee of the defendant, drops a package containing fireworks which explode and the concussion overturns some scales several feet away from the platform and the scales fall upon an innocent bystander. The eminent jurist, Benjamin Cardoza, said that this was an unforeseen result and that while the defendant was negligent, the harm that resulted to the remote victim was so farfetched that there could be no duty and therefore no liability to

that person. The facts of Vigeant are so different from the scenario set forth in Palsgraff that it is almost ludicrous to even attempt to distinguish them. Additionally, Defendant once again cites Townes v City of New York, 176 F.3d 138, for the principle that unreasonable searches or seizures may be compensated for an invasion of privacy but cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution. Id. 146. What the Government fails to admit or cite is that Townes has that all-important caveat in the Decision – except when the conduct of the police is malicious, fraudulent, unlawful and reckless. Id. 147.

Vigeant is not merely about trampling on his Fourth Amendment rights, which the Government did, it is also about an active attempt by agents of the United States Government to mislead a Court into issuing a search warrant for the specific reason of finding anything that can possibly be used to violate this man under the "Career Criminal Act". See Exhibit C of Plaintiff's Brief where in the initial phase of the investigation of Vigeant the agents note that any conviction they might be able to achieve against Vigeant would result in an extremely severe sentence because his previous record would define him as a "career criminal". Exhibit 13. Their misrepresentations, omissions, reckless conclusions and other conduct which under any circumstances would be classified as malicious, can be defined as a criminal attempt to misuse the judicial system in order to put Vigeant in jail for many years. These actions and their consequences were all foreseeable and thus out of the purview of Palsgraff v Long Island Railroad.

Where a police officer is an active participant in a resulting conviction and where he misled or pressured an official who would be expected to exercise independent judgment, a plaintiff may seek damages for Fourth Amendment violations because the

chain of causation has not been broken. Townes v City of New York, 176 F.3d, 147. A reasonable observer may readily expect that a plaintiff would be prosecuted and imprisoned after his arrest and the defendant's search and seizure. Rather than the acts of a prosecutor and a judge being considered intervening independent causes, which interrupted or destroyed the causal connection between the wrongful act and the injury to the plaintiff, such subsequent acts are reasonably foreseeable by the officer. Such a tortfeasor is not relieved from liability for his wrongful conduct by the intervention of third persons if those acts were foreseeable. Carter v Georgevich, 78 F. Supp. 2d 332, 335. See also, Barts v Joyner, 865 F. 2d 1187, 1195 (11th Cir. 1989), Menth v Breeze Corp., 73 A.2d 183 (NJ 1950). In reality, there is an issue of joint and several liability when a portion of a plaintiff's injuries may have been avoided if a particular defendant had not participated in wrongful conduct. Carter v Georgevich, 78 F. Supp. 2d 332, 336. Also, see Shakman v Democratic Org. of Cook Cty. 634 F. Supp. 895 (ND.. Ill. 1986).

Defendant's reliance on the findings in Hector v Watt, 235 F.3d 154 (3rd Cir. 2000) is misplaced. Hector v Watt involves a suit for damages alleging unlawful search and seizure under §1983 with no Count for Malicious Prosecution or Abuse of Process. Id. 156. As such, the Court's finding is not on point. It is interesting to note, however, that had there been a Malicious Prosecution Count or an Abuse of Process Count, its decision may have been different. The Court conceded that in Malley v Briggs 475 U. S. 344, a judicial officer's decision to issue a warrant did not break the causal chain between the application for the warrant and the improvident arrest. Hector v Watt 235 F.3d 154, 161. More impressive was the Court's notation that where an officer's testimony is knowingly and maliciously false, he is not shielded by a subsequent criminal

prosecution and/or sentence. Id. 161. See also, Warner v Orange County Department of Probation, 115 F.3d 1068, 1071 (2nd Cir. 1997).

This issue of proximate cause therefore is far from crystal clear. Because of this, it is not a question that should be decided in a summary fashion.

## F. THE ABUSE OF PROCESS COUNT WAS PROPERLY PLEAD

In III(f) of Defendant's argument it states that the Plaintiff has not alleged an Abuse of Process Count and that judgment must enter for the Defendant on that claim.

Plaintiff's first argument in response to this allegation is that the Doctrine of "Law of the Case" applies. The identical argument was propounded by Defendant in its Motion to Dismiss at the case's inception and the Motion was denied first in the Report and Recommendation of Magistrate Martin and later in the Order issued by Judge Lisi. See Exhibits 14, 15. The Law of the Case simply says that when a decision on an issue of law is made at one stage of the case by the same Court in which the case is pending, a judge has the power to reconsider such a decision but should exercise that power only if there were extraordinary circumstances that otherwise would cause a serious injustice. American Title Insurance Company v East West Financial Corporation 817 F. Supp. 251, affirmed in part, reversed in part 16 F.3d 449 (Dist. of RI 1993).

In this particular instance, there has been no new evidence presented by the Defendant. There has been no change in circumstances since the time that the original Motion was denied. Therefore, the threshold of some sort of extraordinary circumstance is not present. The Motion should therefore be denied. Should the Court see fit to revisit this issue, Plaintiff would present the following argument.

Abuse of process involves the elements listed below:

1. the defendant employed some form of legal or judicial process;

2. the existence of an ulterior or wrongful motive;

3. designed for what it was not;

Nagy v McBurney 120 RI 925 (1978); DeLeo v Anthony A. Nunes, 546 A.2d 1344 (RI 1988).

In ruling on a 12(b)(6) Motion to Dismiss for failure to state a claim, this Court is obligated to look at the allegations set forth in the Complaint in a light most favorable to the Plaintiff. Paradise v Aetna Casualty Insurance Company, 796 F. Supp. 59 61 (Dist. of RI, 1992).

In addition, the Court must accept all pleadings as true along with the inferences or presumptions following such pleadings. Steinberg v State, 422 A.2d 338 (RI 1981).

If under any set of facts or any theory of law the allegations set forth in the pleadings are sufficient to state a cause of action, the Motion to Dismiss must be denied. Hart v Mazur, 903 F. Supp. 277 279 (Dist. of RI 1995).

In its argument, the Defendant completely ignores the allegations made in the Complaint involving the whole set of circumstances that led to the issuance of the search warrant and his arrest. First, the search warrant was specifically authorized to obtain bank records that displayed evidence of money laundering. This was the purported purpose for the search of Vigeant's home. In reality, the Government already had the bank records. See Appellate Brief of Government in the criminal case, p. 20, Exhibit 9. Also, refer to U.S. v Vigeant, p. 176 F. 3d 574. Indeed, as part of the basis for the Government's request for a search warrant, they were quoting from records they had already obtained through previous subpoenas of banks containing these same records that

they allegedly were going to search for in Vigeant's house. Id. p. 585. Therefore, the actual reason for the search warrant did not exist. A plan was made to invade Vigeant's house at dawn on Mother's Day, to smash down the door after waiting five to ten seconds, to restrain him in handcuffs half naked in a chair so as to cause mental distress, pain, intimidation and humiliation.

They were not looking for drugs that could be flushed down the toilet. They were looking for paper that in some cases had existed for several years. There was no need to smash down Vigeant's door to execute the warrant. There was no need to handcuff him prior to finding any evidence of contraband. We can come to no other conclusion other than that the Government's ulterior motive was to confuse, intimidate and humiliate Vigeant in order to get him to make admissions to other crimes or to simply cause him physical and mental discomfort.

One very important additional motive of the Government was to invade Vigeant's home, ransack it in the hope they would discover evidence of crime or contraband, i.e. guns, drugs, money. The Government knew it had no probable cause to search for guns, money and drugs so they formulated a pretextural purpose to search for documents that they already possessed. This is what is alleged in the pleadings. The purpose of the Court in issuing the search warrant was not to allow the agents free rein to ransack Vigeant's home in the hope of finding contraband. It was not for the purpose of allowing the agents to humiliate, denigrate, intimidate, prosecute and incarcerate Vigeant.

Looking at the four corners of the Complaint and finding all inferences in favor of Vigeant, one can only conclude that those ulterior motives and despicable purposes were, in fact, the real reason behind the motive to obtain the search warrant. The tort of abuse

of process is not starting the action without justification but in misusing the process for a purpose other than for which it was originally started. Brough v Foley, 572 A.2d 63, 67, 68 (RI 1990).[8]

For these reasons, Plaintiff requests that the Motion to Dismiss for failure to state a cause of action be denied for a second time.

## G. VIGEANT'S FALSE ARREST AND FALSE IMPRISONMENT CLAIMS (COUNTS II AND IV) ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

Defendant next argues that the statute of limitation bars Plaintiff's Complaint for false imprisonment and false arrest. Plaintiff again asserts the principle of the "law of the case". Defendant filed the identical Motion to Dismiss when this case was initially filed in October of 2002. The Motion was denied by Magistrate Martin and his Decision was sustained by Judge Mary Lisi. No new evidence has been produced to overcome the threshold previously set forth under the principle of the law of the case.

Should the Court feel the need to analyze this issue a second time, the crux of Defendant's argument is that the Federal tort claims of false arrest and false imprisonment accrued immediately upon the date the alleged wrongs took place. In this case, the early morning hours of May 12, 1997. Since the administrative claim was not filed until May 10, 2001, the claim is almost four years after the alleged wrong was committed; therefore, the statute of limitations bars these claims.

The major obstacle to Defendant's theory is the case of Heck v Humphrey, 512 US 477. As Defendant is aware, in Heck Judge Scalia indicated that for a plaintiff to bring an action pursuant to 42 USC §1983 for unconstitutional conviction or

---

[8] Defendant's reliance on Washington v Drug Enforcement Administration, 183 F.3d (8th Cir. 1999), is unwarranted. This case was an issue of a wrong address resulting in a search of the home of an innocent family. There was no allegation of an ulterior purpose for the search of the Washington home.

imprisonment, the plaintiff must prove that the conviction or sentence was reversed on direct appeal, expunged by executive order, declared invalid by the State tribunal authorized to make the determination or called into question by the Federal Court's issuance of a Writ of Habeas Corpus. Heck v Humphrey 512 US 486, 487. Therefore, Plaintiff argues that it would have been an exercise in futility for Vigeant to bring this claim prior to his successful appeal in the 1st Circuit on May 14, 1999.

The case of Erwin v United States No. 00-16986, 2004 WL 829897 (9th Cir. April 19, 2004) found a claim for wrongful imprisonment would not accrue until the prisoner has established a successful appeal of his imprisonment and that he is entitled to be released from custody. In that case, the FTCA was analogized as having no real difference with a successful §1983 suit. Therefore, the Court stated that the time of accrual of a FTCA action is the same as that set forth by the Heck Court in reference to §1983 claims.

In Paris v U.S. 45 F.3d 383, 385 (10th Cir. 1995), the Court again indicated that the FTCA, like the §1983 case, falls under the principles set forth in Heck v Humphrey, i.e. there must be a final finding that imprisonment or arrest is not warranted before a civil claim can be made and that a FTCA action is not the appropriate vehicle for challenging the validity of an outstanding criminal judgment.

In the case of Dalis v U.S. 210 F.3d 389 (10th Cir. March 31, 2000), the Circuit Court found that the FTCA comes under the purview of Heck v Humphrey requiring a plaintiff to prove the original criminal sentence invalid prior to initiating an FTCA claim.

Finally, in the case of Schilling v White, 58 F.3d 1081, 1086 (6th Cir. 1995), the Court held that a lawsuit for unconstitutional search or seizure is premature if brought while the plaintiff still faces criminal punishment.

While there is case law cited by the Defendant that supports its argument that the accrual of a claim begins with the actual wrongful event, there is no 1st Circuit case subsequent to Heck v Humphrey that does so. In this instance, we are taking all inferences in favor of the non-moving party and since there appears to be a split of authority, the Court should find on the side of the non-moving party, in this case the Plaintiff.

Furthermore, the facts of this case are such that it rises or falls on the validity of the underlying search. Prior to May 10, 1999, Robert Vigeant stood convicted of possession of a weapon that directly resulted from that underlying search. For him to file a complaint for false arrest or false imprisonment after he has been convicted by a jury, and that conviction was still valid, the case would have been dismissed faster than one could say res judicata.

**CONCLUSION**

Wherefore, Plaintiff requests that the Motions of the Defendant be denied.

Plaintiff,
By his attorneys:

Frederick A. Costello #2205
**FLAHERTY, BUTTERFIELD & COSTELLO**
33 College Hill Road Suite 20D
Warwick, Rhode Island 02886
Tel. No. 401 822 1800 x 6 Fax 822 1879

Daniel K. Flaherty, #
FLAHERTY, BUTTERFIELD & COSTELLO
33 College Hill Road Suite 20D
Warwick, RI 02886
Tel. 401 822 1800 x 3 Fax. 401 822 1879

**CERTIFICATION**

I hereby certify that on the 11 day of January, 2006 I sent a true copy of within to: Robin E. Feder, Assistant United States Attorney, Fleet center, 50 Kennedy Plaza 8th Floor, Providence, RI 02903.