UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROBERT A. VIGEANT | : | |
| | : | |
| V. | : | C.A. NO. 02-441S |
| | : | |
| UNITED STATES OF AMERICA | : | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OBJECTION TO MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

The defendant, United States of America, by and through its undersigned counsel, hereby replies to plaintiff's objection to motion for summary judgment and motion to dismiss, as set forth in the accompanying memorandum.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney
Robin E Feder AUSA
Anthony C. DiGioia by REA

ROBIN E. FEDER
Assistant United States Attorney
ANTHONY C. DIGIOIA
Assistant United States Attorney
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by first-class mail, postage pre-paid, on the Plaintiffs' counsel, by mailing same on this the 21st day of February, 2006, to:

Daniel K. Flaherty, Esq.
Frederick A. Costello, Esq.
Flaherty, Butterfield & Costello
33 College Hill Road, Suite 20D
Warwick, RI 02886

Nancy A. DeQuenzo

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROBERT A. VIGEANT | : | |
| | : | |
| V. | : | C.A. NO. 02-441S |
| | : | |
| UNITED STATES OF AMERICA | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S REPLY TO PLAINTIFF'S OBJECTION TO MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

## I. INTRODUCTION

Although Plaintiff objects to all of the arguments raised in our motion for summary judgment, he confuses the issues raised by his claims in this action with those raised in his motion to suppress in the criminal case. A review of the motion for summary judgment and the plaintiff's opposition reveals the following legal issues which are central to the resolution of this case:

1. Does the lack of probable cause, an element of plaintiff's claims of false arrest, malicious prosecution, and false imprisonment, focus on whether the agents had probable cause to arrest and charge plaintiff with a crime at the time of the arrest or whether they had previously stated probable cause to believe he had committed money laundering in an affidavit to obtain a search warrant?

2. Does the First Circuit opinion reversing the denial of Vigeant's motion to suppress collaterally estop defendant from litigating any issues that are raised in this case or do differences in a) the issues presented in the two cases; b) the burden of proof; and c) the opportunity for a complete hearing, preclude application of collateral estoppel?

3. Does the First Circuit opinion vacating the conviction against Vigeant on the ground that the agents lacked probable cause to seek a search warrant for evidence of money laundering amount to a favorable termination, for purposes of establishing a claim for malicious prosecution?

4. Does Vigeant's conviction as a felon in possession of a firearm conclusively establish that there was probable cause to arrest and charge him with that crime, even though the conviction was vacated on the ground that the agents lacked probable cause to seek a search warrant for evidence of money laundering?

5. Has plaintiff plead all three elements of a claim for abuse of process and, if so, has he presented sufficient evidence of an abuse of process to establish a genuine issue of material fact?

6. Do claims of false arrest and false imprisonment accrue at the time of arrest and imprisonment or only when the conviction flowing from the arrest is ultimately reversed by a higher court?

Because of Vigeant's confusion of the issues, none of the numerous factual allegations he has set forth in his opposition, save one, are material to the legal issues presented by our motion for summary judgment. Thus, defendant's motion can and should be granted in its entirety.[1]

## II. STANDARD OF REVIEW

Plaintiff's argument that "summary judgment is a drastic remedy that should be cautiously applied," is based on a 1990 State of Rhode Island case. See, Memorandum In Support of Plaintiff's Objection to Defendant's Motion for Summary Judgment and Motion to Dismiss for Lack of Jurisdiction (Pl's Obj.) at 17. This federal civil action, including this motion for summary judgment, is governed by the Federal Rules of Civil Procedure, not the more restrictive interpretations of the Rhode Island state courts under the Rhode Island Rules of Civil

---

[1] The one exception concerns defendant's argument that it is entitled to judgment on the malicious prosecution count because Vigeant was guilty in fact of possessing the firearms. In his declaration, plaintiff states that he did not possess the firearms, one of which belonged to his girlfriend. This statement raises a genuine issue which is material to our defense that he was in fact guilty of the charges. The court therefore may not enter summary judgment on the malicious prosecution count on a finding that he was guilty in fact. We therefore withdraw that one argument. Vigeant's statements, however, are not material to the other arguments for summary judgment and so judgment may still enter on each of the counts remaining in plaintiff's complaint. Defendant reserves the right to raise guilt in fact as a defense should there be a trial.

Procedure.

As noted in our opening memorandum, the role of summary judgment in civil litigation is "to pierce the pleadings to assess the proof in order to see whether there is a genuine need for a trial." Ousley v. Town of Lincoln, 313 F. Supp. 2d 78, 81 (D.R.I. 2004). "The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money, and permitting courts to husband scarce judicial resources. McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 314-15 (1st Cir. 1995). Although the court may not grant a motion for summary judgment if there are genuine issues of fact material to the legal issues, a motion for summary judgment is not a "drastic remedy" which must be "cautiously applied" under the Federal Rules. Rather, the court has an obligation to grant a motion whenever it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993); Lipsett v. University of Puerto Rico, 864 F.2d 881, 894 (1st Cir. 1988).

Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trialworthy issue exists. McCarthy, 56 F.3d at 314-15. Additionally, a party opposing a motion for summary judgment cannot just respond by pointing to his allegations. "As to issues on which the summary judgment target bears the ultimate burden of proof, she cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." McCarthy, 56 F.3d at 315. Plaintiff has failed to meet this burden, except as indicated in footnote 1.

## III. COLLATERAL ESTOPPEL

In his opposition, Plaintiff contends that the First Circuit opinion in Vigeant v. United States, 176 F.3d 565 (1st Cir. 1999) "conclusively addresses the issue of probable cause to search Vigeant's home." Memorandum in Opposition at 20. Plaintiff is wrong. First, as shown in our opening memorandum and as demonstrated below, whether the agents had "probable cause to search Vigeant's home" is not the issue raised by plaintiff's claims in this action.[2] Since "the matter raised in the second suit is not identical in all respects with that decided in the first proceeding," Comm'r of Internal Revenue v. Sunnen, 333 U.S. 591, 599-600 (1948), collateral estoppel does not apply. Moreover, even if the issue were whether the agents had probable cause to search, collateral estoppel does not apply to any of plaintiff's claims because the United States did not have a full and fair opportunity to have all evidence on that point considered in the criminal case. Additionally, as to plaintiff's malicious prosecution claim, collateral estoppel does not apply because plaintiff must establish lack of probable cause by clear proof in order to make that claim.[3]

As to the burden of proof, plaintiff states that "we would argue that [the First Circuit's opinion] indicated that the Government's lack of probable cause to search was proved far beyond

---

[2] Defendant explains why probable cause to search is not the issue in this case below. Rather than restate that argument here, we refer the court to pp. 6-9.

[3] This last deficiency, the different burden of proof, is only applicable to the malicious prosecution count, for it is only in that count that plaintiff must establish lack of probable cause by clear proof. We do not, however, concede, as plaintiff suggests at page 20 of his Memorandum, that collateral estoppel applies to plaintiff's false arrest and false imprisonment claims. The other two arguments we make, that there is no identity of issues in the two actions and that the United States did not have a full and fair opportunity to litigate the issue in the motion to suppress, preclude application of collateral estoppel as to all of plaintiff's counts.

a preponderance of the evidence and in all likelihood, beyond a reasonable doubt." Memorandum in Opposition at 20-21. While plaintiff may believe the Court would have found a lack of probable cause even under a higher burden of proof, his beliefs are mere speculation. The Supreme Court has explicitly held that in a motion to suppress evidence obtained pursuant to a warrant, the burden on the criminal defendant is preponderance of the evidence. United States v. Matlock, 415 U.S. 164, 177-78, n. 14 (1974). There is no indication in the First Circuit's opinion in United States v. Vigeant, that the court applied a more exacting standard than that required by Supreme Court precedent, and this Court may not accept plaintiff's speculation that the First Circuit would have ruled that way had it been required to do so. The dispositive fact for purposes of collateral estoppel is that the court was not called upon to make a finding by the standard of clear proof and it did not even purport to do so. Since the plaintiff's burden in the malicious prosecution claim is higher than the burden in the motion to suppress, collateral estoppel does not apply.

Plaintiff objects to our argument that the United States did not have a full and fair opportunity to litigate the issue in the motion to suppress, by noting that the United States referred to matters outside the four-corners of the affidavit in its First Circuit brief in the criminal case. While that is true, it is no more helpful to plaintiff here than it was helpful to the Government in the criminal appeal. There is no suggestion in the court's opinion that it considered this information. Indeed, in its opinion, the First Circuit specifically stated it was limiting itself to "assessing the information provided in the four corners of the affidavit supporting the warrant application ... " 176 F.3d at 569 (emphasis added). In this action, even if the issue were whether there was probable cause to search, defendant's proof of probable cause

would not be limited to the evidence previously set forth in the affidavit. Since the Government's proof was more limited in the criminal case than it would be here, collateral estoppel does not apply.

## IV. THE PROBABLE CAUSE INQUIRY

### A. The Proper Inquiry in the Malicious Prosecution, False Arrest, and False Imprisonment Counts Is Whether There Was Probable Cause to Arrest and Charge Vigeant as a Felon in Possession of a Firearm, Not Whether There Was Probable Cause to Search His Premises for Evidence of Money Laundering

In our opening Memorandum we demonstrate that there was probable cause to believe Vigeant was a felon in possession of a firearm both at the time he was arrested and at the time he was charged. Plaintiff does not dispute this. Indeed, he admits that the agents found the firearms and that he admitted he possessed them. Vigeant Affidavit ¶¶ 8-12 and 14. Instead, he responds to our argument by stating:

> The Defendant, with obvious good reason, wants to move the focus of this claim away from the lies, omissions and misrepresentations that were the basis for its original search warrant and argue that the correct probable cause inquiry is whether the agents who made the arrest had reasonably trustworthy information that would cause a person of reasonable caution to believe that Vigeant committed the offense of possession of a firearm by a convicted felon.

Pl's Obj. at 24. Since that is the offense for which he was arrested and charged, that is indeed the probable cause issue raised by his malicious prosecution, false arrest, and false imprisonment counts. Defendant is not responsible for this being the focus of plaintiff's claims in this action. It is plaintiff who chose to bring claims of false arrest, malicious prosecution, and false imprisonment. It is hardly defendant's fault that each of these claims requires plaintiff to prove that there was no probable cause to arrest or charge him with the offense of possession of a

firearm by a convicted felon. Defendant is merely focusing on plaintiff's inability to prove the elements of the claims he has chosen to bring.

If Vigeant's Bivens[4] action for illegal search had not been dismissed, the question of whether there were probable cause to search his premises would indeed have been the focus of the claim. This action, however, contains no such claim. Similarly, if plaintiff's claim of unreasonable search and seizure (Count I) had not been dismissed by this Court on October 1, 2004, the question of whether there was probable cause to search his premises would have been the focus of that Court. The legality of the search of his premises is not an element in any of the claims that remain pending in this action. It is thus plaintiff who is trying to shift the focus of this action away from the elements of the claims now pending to other issues: issues as to which he apparently believes he could prevail, but that are simply not material to the claims in his complaint. The Court should recognize this transparent misdirection for what it is, and should not be fooled by his head-fake.[5]

Plaintiff also attempts to distinguish the cases we rely on in our motion. Some of his distinctions are inaccurate, the remainder are insignificant. In his attempt to distinguish Gordy v. Burns, 294 F.3d 722 (5th Cir. 2002), Plaintiff states:

> The 3rd [sic] Circuit ruled that the search warrant was fatally defective but that at the time of the arrest the police officers had probable cause to go into the apartment because of the information they had already received and they had the

---

[4] Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

[5] The fallacy of Plaintiff's attempt to focus on the issue of whether there was probable cause to search his home for evidence of money laundering is well demonstrated by reviewing pages 4-8 of his Memorandum, where Plaintiff purports to identify the "findings" made by the First Circuit. Not one of those "findings" is material to the elements of plaintiff's claims in this action.

search warrant, which at the time they believed to be valid. Id. 728.

Pl's Obj. at 25 (emphasis added). That is not what the court held. After stating that "[t]he crux of this case is whether there was probable cause for the criminal proceedings against Gordy," 294 F.3d at 727, the Fifth Circuit held:

> The validity of the search warrant is irrelevant to whether an officer reasonably could have believed that Gordy had committed the crime of possessing marijuana with intent to distribute. The most obvious reason is that probable cause to institute criminal proceedings must be determined as of the time that charges were filed.
>
> * * *
>
> The correct question, then, is whether the officers, at the time Gordy was charged, had probable cause to believe that he was guilty of possessing marijuana with intent to distribute.

Gordy, 294 F.3d at 729 (emphasis added). This holding directly supports Defendant's argument.

Plaintiff also attempts to distinguish Freeman v. New Jersey, 788 A.2d 867 (N.J. Super. 2002), and Townes v. City of New York, 176 F.3d 138 (2d Cir. 1999), cases relied upon by defendant in its opening Memorandum. Plaintiff argues that this case involves fraud or perjury on the part of the officers and that those cited cases did not. In effect, he is arguing that the court should infer a lack of probable cause from the evidence of bad acts by the agents, because the allegedly malicious acts of the agents were worse here than in those cases. Pl's Obj. at 25-27.

Initially, we dispute that the agents in this case committed fraud or perjury. Nonetheless, as we demonstrate below, the fraud and perjury exception only applies when the fraud undercuts the reliability of a guilty verdict. Even if the agents had committed fraud or perjury in obtaining the warrant, that fraud would have had no impact on whether the agents had probable cause to believe Vigeant was a felon in possession of a firearm at the time he was arrested and charged with that offense. Moreover, "[p]roof of malice alone, however, even in the extreme, will not

suffice to establish a case of malicious prosecution unless accompanied by a showing that the original action was instituted without probable cause." Nagy v. McBurney, 392 A.2d 365, 367 (R.I. 1978). None of these cases supports entry of a judgment for a plaintiff on counts of malicious prosecution, false arrest, or false imprisonment when his conviction for possession of contraband was overturned due to a Fourth Amendment violation. Indeed, all of those cases rejected claims of malicious prosecution by plaintiffs whose criminal cases had been overturned or terminated because of a Fourth Amendment violation in the search which uncovered the contraband. Plaintiff has not cited a single case of a judgment for a plaintiff bringing a claim for malicious prosecution under those circumstances. Since the agents had probable cause to arrest Vigeant, this court should enter judgment for Defendant on Vigeant's false arrest, malicious prosecution, and false imprisonment counts.[6]

**B. The Exclusionary Rule and Fruit of the Poisonous Tree**

Vigeant argues that any probable cause that existed to arrest him on May 12, 1997, was fatally tainted by the Government's actions in obtaining the search warrant. In effect, he argues that the Court should treat the firearms and ammunition found in the search as the fruit of the poisonous tree, which should be suppressed. See, Pl's Obj. at 24. No matter how he frames his argument, at bottom Vigeant is asking this Court to apply the exclusionary rule in this civil

[6] Plaintiff argues that probable cause is a mixed question of law and fact and should be left for the jury. In Solitro v. Moffatt, 523 A.2d 858, 862 (R.I. 1987), the court held that the existence of probable cause is a question of law to be determined by the Court. Even if probable cause were a pure question of fact, however, this Court could still enter summary judgment if there were no genuine issues of fact material to the question of probable cause. Plaintiff does not dispute that the agents found weapons in the search and that Vigeant admitted the weapons were his. In his Affidavit, he admits that the agents found weapons, Vigeant Affidavit ¶¶ 8-12. and that he made admissions that he possessed the weapons. Id. ¶ 14. Under these circumstances, this Court may conclude that there is no genuine dispute that the agents had probable cause to arrest and charge Vigeant as a felon in possession of a firearm.

case to prohibit consideration of the guns and ammunition found in the search. The exclusionary rule does not apply to civil proceedings, however. Pennsylvania Bd. of Prob. and Parole v. Scott, 524 U.S. 357, 364 (1998).

The exclusionary rule is a judicially-created means of deterring illegal searches and seizures. United States v. Calandra, 414 U.S. 338, 348 (1974). It is calculated to deter future unlawful police conduct and to create an incentive - - avoidance of the suppression of illegally seized evidence - - for state actors to respect the constitutional rights of suspects, Townes, at 145, quoting Calandra, 414 U.S. at 347. It is not a basis for damages. Nor is the purpose of the exclusionary rule to redress the injury to the privacy of the search victim. The rule is calculated to prevent, not to repair. Its purpose is to deter. Id. The Supreme Court has never applied the exclusionary rule to exclude evidence from a civil proceeding, federal or state. United States v. Janis, 428 U.S. 433, 447 (1976). Indeed, the Court has repeatedly refused to extend the rule beyond a criminal prosecution. Id. See also, Pennsylvania Bd. of Probation and Parole, 524 U.S. at 363; and INS v. Lopez-Mendoza, 468 U.S. 1032 (1984).

Similarly, the fruit of the poisonous tree doctrine is an extension of the exclusionary rule that operates in the context of criminal procedure and is inapplicable to civil actions. Townes, at 145, citing Reich v. Minnicus, 886 F. Supp. 674, 681-82 (S.D. Ind. 1993). Like the exclusionary rule, the fruit of the poisonous tree doctrine is a judicially-created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved. Id.

Even in criminal cases, the Supreme Court has repeatedly recognized that the suppression of probative evidence exacts a costly toll upon the ability of courts to ascertain the

truth. See, e.g., United States v. Payner, 447 U.S. 727, 734 (1980), and cases cited therein. Indeed, in recognition of these costs, the Court has frequently refused to apply the exclusionary rule to more remote uses of the illegally-seized evidence in the very criminal trial in which the motion to suppress was decided. For example, it is well settled that evidence obtained in violation of the Fourth Amendment can be admitted to impeach a criminal defendant's credibility. Walder v. United States, 347 U.S. 62, 65 (1954) (rejecting notion that a criminal defendant "can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths.")

The exclusionary rule cannot be extended as far as Plaintiff seeks. To paraphrase the court in Townes v. City of New York, 176 F.3d 138, 148 (2d Cir. 1999):

> No Fourth Amendment value would be served if [Vigeant], who illegally possessed firearms ... reaps the financial benefit he seeks. [Vigeant] has already reaped an enormous benefit by reason of the illegal seizure and search to which he was subjected: his freedom, achieved by the suppression of evidence obtained in violation of the Fourth Amendment. That benefit to [Vigeant] is merely incidental to the purpose of suppression, which is to compel law enforcement compliance with the Fourth Amendment and thereby prevent the invasions of law-abiding citizens' privacy. See, United States v. Calandra, 414 U.S. 338, 347 (1974); see also, United States v. Peltier, 422 U.S. 531, 536-39 (1975). Now [Vigeant] seeks damages to compensate him for his conviction and time served, on top of the benefit he enjoys as a result of the suppression. That remedy would vastly overdeter police officers and would result in a wealth transfer that "is peculiar, if not perverse." (Citation omitted.)

In determining whether the agents had probable cause to arrest and charge Vigeant as a felon in possession of a firearm, this Court cannot ignore, or hold that the agents should have ignored, the guns which were found in the search or Vigeant's admission that those guns were his. This Court should reject Vigeant's "perverse" application of the exclusionary rule.

We are not suggesting that Vigeant would have no civil remedy for an illegal search. If Vigeant had properly sought damages for and proved that he had been subjected to an unconstitutional search, he would be entitled to compensation for the invasion of privacy caused by the illegal search. There is no claim here for an illegal search, his Bivens action and the illegal search count in this action have been dismissed. No matter how he tries, he cannot morph an illegal search into a malicious prosecution for the contraband found in that search. Despite the righteous indignation in his opposition, he has not cited a single case in which a court awarded damages for malicious prosecution, false arrest, or false imprisonment to a criminal defendant who was prosecuted for contraband seized in an illegal search.

**C. Vigeant's Conviction for Possessing Firearms Was Not Obtained by Fraud or Perjury and Is Therefore Conclusive on the Issue of Probable Cause**

Plaintiff contends that his conviction on charges of possessing a firearm does not conclusively establish that there was probable cause to bring those charges. He does not dispute that in Rhode Island a conviction conclusively establishes the existence of probable cause to bring the charge, even if the conviction is reversed on appeal. E.g., Nagy, 392 A.2d at 368 and cases cited therein. See also, Yates v. Gawel, 37 F.3d 1484 (1st Cir. 1994) (unpublished) (applying Rhode Island law). Instead, he argues that the exception to that general rule regarding convictions obtained by perjury or fraud precludes application of the general rule to his case. A review of the underlying rationales for the general rule and for the exception demonstrates that Plaintiff is wrong.

The rationale for the presumption that a conviction is conclusive evidence of probable cause is quite plain: "a competent tribunal is not likely to render a decision for a party who

lacked probable cause for initiating the action." Nagy, 392 A.2d at 368. The rationale for the exception to this rule for convictions obtained by fraud or perjury derives from the same logic as the original rule: When there was perjury or fraud in the trial leading to the judgment, the jury's verdict is no longer a reliable barometer of whether there was probable cause to bring the charges. In Neher v. Dobbs, 66 N.W. 864, 866 (Neb. 1896) the court cogently described reason for the exception as follows:

> The reason that a conviction procured by perjury is not proof of the existence of probable cause for the prosecution is that the false testimony deceived the trial court so that the inference naturally drawn from a judgment of that court is no longer a reasonable inference.

Accord, Kennedy v. Burbidge, 183 P. 325, 327 (Ut. 1919) ("It is the falsity of the testimony and its tendency to deceive and mislead the court that vitiates the judgment and renders it ineffective ... ").[7]

This is still the basis for the fraud or perjury exception. In Freeman, 788 A.2d at 878, the court applied this same reasoning after a conviction had been reversed based upon an illegal search.

> Similar to what we have previously said concerning the existence of probable cause, our reversal of the conviction did not impugn the validity of the jury's determination of guilt. There is no evidence that plaintiffs' prosecution, trial or ultimate conviction came about as the result of fraud, corruption, perjury or other untoward conduct that would negate the jury verdict as invalid or indicate that the plaintiffs were otherwise innocent of the offenses for which they were prosecuted.

The alleged misstatements and omissions which plaintiff relies upon to bring himself within the exception were all set forth in the search warrant affidavit. None of those

---

[7] Plaintiff's argument that this exception is an extension of United States v. Leon, 468 U.S. 897 (1984), or some other corollary of the exclusionary rule or the fruit of the poisonous tree doctrine is wrong. As set forth above, those rules do not even apply in civil cases.

misstatements or omissions could possibly have affected the jury in its determination that the defendant was guilty of possessing a firearm. Consequently, those misstatements and omissions, even if they amounted to fraud or perjury, which they did not, could not undercut the reliability of the jury's verdict as the best evidence that there was probable cause to believe the defendant was guilty of possessing a firearm.

Plaintiff's reliance on Bolduc v. United States, 2002 WL 1760882 (D. Ma. 2002) is misplaced. There, the court held that a failure to turn over exculpatory evidence was "sufficient to establish that the conviction was obtained by collateral fraud or other corrupt means." Unlike an illegal search yielding inculpatory evidence, a Brady violation does undercut the reliability of the verdict. If the Bolduc jury had been presented with the exculpatory evidence, which is by definition material, it may well have acquitted.

As with his other objections, Plaintiff's argument here reveals a basic misunderstanding: the question raised by malicious prosecution, false arrest, and false imprisonment claims is whether there was probable cause to bring the charges which were brought, here possession of a firearm by a convicted felon, not whether there was probable cause to bring some other charges, e.g., money laundering, which were not filed. At the time this prosecution was brought, there was ample cause to believe that Vigeant possessed firearms in violation of the law. Indeed, Vigeant had admitted that the firearms the agents discovered in their search were his. Nothing that occurred in the jury trial undercuts the reliability of the jury's guilty verdict on that charge. His conviction, therefore, conclusively establishes that there was probable cause to initiate the charges.

## V. THERE WAS NO FAVORABLE TERMINATION OF THE UNDERLYING SUIT FOR MALICIOUS PROSECUTION PURPOSES

Plaintiff, in his Objection, asserts that we cited no Rhode Island case for the proposition that to be favorable, a termination must be reflective of the merits of the action and of the plaintiff's innocence of the misconduct alleged therein. Pl's Obj. at 29. His statement is misleading. Guay v. Wistow, 685 A.2d 290 (R.I. 1996), a Rhode Island Supreme Court decision, relied directly upon and adopted the reasoning of Guay v. Kappelle, 70 F.3d 1252 (1st Cir. 1995), the earlier-decided Federal companion case. The First Circuit in Guay v. Kappelle, interpreting Rhode Island law on malicious prosecution, and the element of favorable termination in particular,[8] stated that "[t]o be favorable, then, a termination 'must be reflective of the merits of the action and of the plaintiff's innocence of the misconduct alleged therein.'" Id., citing Villa v. Cole, 4 Cal. App. 4th 1327, 1335 (1992). The First Circuit found that the underlying action was not reflective of Guay's innocence. Guay v. Kappelle, 70 F.3d at 1252. The Rhode Island Supreme Court, relying on the First Circuit's decision and interpretation of Rhode Island law, then found that Guay's later action against Wistow, *et al.*, was collaterally estopped, stating that "plaintiff failed to state a claim for malicious prosecution because he could not show that the judgment on the prior medical malpractice action was in plaintiff's favor." Guay v. Wistow, 685 A.2d at 291.

## VI. THERE WAS NO PROXIMATE CAUSE FOR DAMAGES PURPOSES

Plaintiff may not like the Second Circuit's conclusion that Townes' claim for damages, including those resulting from conviction and two years' incarceration, fails due to a lack of proximate cause, but that is indeed the Second Circuit's well-reasoned determination. Townes v.

[8] The First Circuit relied in part on Nagy v. McBurney, 392 A.2d 365, 368 (R.I. 1978).

City of New York, 176 F.3d at 148. See also, Hector v. Watt, 235 F. 3d at 134. Plaintiff's attempts to distinguish the reasoning enunciated by Townes falls short. For example, his reliance on Carter v. Georgevich, 78 F. Supp. 2d 332 (D.N.J. 2000), and the cases cited therein is inappropriate. The Third Circuit, in Hector, 235 F. 3d at 160, specifically rejected the reasoning of the Carter district court, a court within the Third Circuit.[9] Moreover, Malley v. Briggs, 475 U.S. 335, 344-45 (1986), does not cover this case. In this case, the intervening cause is not the issuance of the warrant, rather, it is the intervening decisions of the prosecutor, grand jury, judge (including her ruling on the denial of the motion to suppress as in Townes) and the jury which convicted him. Thus, Barts v. Joyner, 865 F.2d 1187, 1195 (11th Cir. 1989), another case relied upon by plaintiff, actually supports our position. In Barts, the 11th Circuit, distinguishing Malley, found that intervening decisions of the prosecutor, grand jury, judge and jury supervene.[10] Id. at 1195-96.

Plaintiff's reference to the "malicious, fraudulent unlawful and reckless" caveat once again does not assist him in his objection, for the reasons set forth at pp. 12-14, *supra*.

---

[9] The Carter court cited Menth v. Breeze Corp., 73 A.2d 183 (N.J. 1950) (discussing a claim for damages based on a fire which destroyed the plaintiffs'-neighbors' property); Shakman v. Democratic Organization of Cook County, 634 F. Supp. 895 (N.D. Ill. 1986) (discussing joint and several liability in the context of a petition for attorneys' fees in a § 1983 action); and Barts v. Joyner, 865 F.2d 1187, 1195 (11th Cir. 1989) (which supports defendant's position as noted, *infra*).

[10] The Barts court also stated [even though Barts was seized without probable cause], "the confession, when linked to the other information available to police, was sufficient to justify a lawful arrest. Once the officers were faced with probable cause to arrest, they had a duty to arrest Barts." Barts, 865 F.2d at 1195.

## VII. ABUSE OF PROCESS

### A. Law of the Case

Plaintiff claims that the Court should not rule on defendant's arguments regarding abuse of process because defendant's motion as to that issue is barred by the "law of the case" doctrine. Pl's Obj. at 19 and 37. He is mistaken in several ways.

For the law of the case doctrine to apply, a decision on the merits is required. In re Buckner, 218 B.R. 137, 142 (10th Cir. BAP. 1998), citing Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr., 94 F.3d 1407, 1410 (10th Cir. 1996). See also, Murr Plumbing, Inc. v. Scherer Bros. Financial Services Co., 48 F.3d 1066, 1070 (8th Cir.1995) (Denial of the motion to dismiss was not a decision on the merits of that motion, but was a means of postponing decision on the merits.). Cf., Irving v. United States, 162 F.3d 154, 161 (1st Cir. 1998) (In all events, we consider denials of rehearing en banc a very weak justification for a strict application of the law of the case doctrine. Denials of suggestions for rehearing en banc are pure exercises of discretion, and, as such, the grant or denial of rehearing en banc is the functional equivalent of a grant or denial of certiorari by the Supreme Court. Such actions make no statement about the full court's view on the merits of a claim it declines to hear.), citing Missouri v. Jenkins, 515 U.S. 70, 85 (1995).

In this case, the Court has never made a ruling on the merits. As in Murr Plumbing, it postponed a ruling on the merits. There was a Report and Recommendation (R&R) by a Magistrate Judge, but in ruling on the objection to the R&R, the Court declined to entertain the issues raised at such an early stage in the proceedings:

> Having conducted a de novo review of the challenged portions of the report and recommendation, the Court overrules the defendant's objection and adopts the magistrate judge's recommendations as to Counts II, IV and V. While the defendant's objection does appear to have merit, the Court concludes that the questions presented are too close to call *at this stage of the proceedings* and that permitting the action to go forward so as to develop a record is the better course.

Memorandum and Order, dated October 1, 2004, Docket No. 21 (emphasis supplied). The indisputable intent of Judge Lisi, as demonstrated by the meaning of her carefully chosen words, is that the issue would be decided later, not as plaintiff suggests: that it never will be decided. The Court did not even mention the arguments by name, let alone discuss the case law presented in support of the arguments. "[I]nterlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute law of the case." Harlow v. Children's Hospital, 432 F.3d 50, 55 (1st Cir. 2005), citing Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994). See also, Bethlehem Steel Export Corp. v. Redondo Construction Corp., 140 F. 3d 319, 321 (1st Cir. 1998). See also, Murr Plumbing, 48 F.3d at 1070 (Doctrine of law of the case is applicable only to final judgments, not to interlocutory orders.)

"Reconsideration often is better deserved, and more important, while an action wends its way toward the first final judgment in the trial court." Harlow, 432 F.3d at 56. Moreover, whether plaintiff has complied with the statute of limitations, a jurisdictional prerequisite under the FTCA, is particularly appropriate for reconsideration. See, e.g., Kennedy v. Lubar, 273 F.3d 1293, 1299 (10th Cir. 2001), quoting Wright & Miller § 4478, at 799 & n. 32 (An issue such as subject matter jurisdiction may be particularly suitable for reconsideration.).

In actuality, this Court, Lisi, J., declined to entertain the merits of the motion, although in her words, our objection to the R&R appeared "to have merit," Memorandum and Order, dated

October 1, 2004, Docket No. 21 at 1, because even if the objection were sustained as to the abuse of process, false arrest and false imprisonment counts (Counts II, IV and V), plaintiff's claim for malicious prosecution (Count III), would still have had to be litigated. By contrast, the entire case is ripe for disposition at this stage in the proceedings. Plaintiff has had more than 40 months to develop his case.[11] If he cannot demonstrate his ability to prove each of the elements of his claim by now, judgment should enter for defendant on these claims.

Second, even if the complex issues raised by the motion to dismiss had been decided by the Court (and they have not been), the doctrine of law of the case would not be a bar to subsequent review. "Law of the case directs a court's discretion, it does not limit the tribunal's power." Harlow, 432 F.3d at 55, citing Arizona v. California, 460 U.S. 605, 618 (1983). In this Circuit, "the law of the case doctrine has not been construed as an inflexible straightjacket." Bethlehem Steel, 140 F.3d at 321, quoting Northeast Utilities Service Co. v. Federal Energy Regulatory Commission, 55 F.3d 686. American Title Insurance Company v. East West Finanacial Corporation, 817 F. Supp. 251 (D.R.I. 1993), the case relied on by plaintiff, was quoted out of context. That case had been remanded to the District Court following an appeal, with specific instructions that only one issue be relitigated. It was in that context that the First Circuit admonished that reconsidering other parts of the decision could only be undertaken in "extraordinary circumstances." Id. at 257. Ferguson v. Marshall Contractors, Inc., 745 A.2d 147 (R.I. 2000), the other case relied on by plaintiff, is a state law case and is also unavailing.

Third, at a scheduling conference on August 1, 2005, this Court specifically requested that defendant raise all possible grounds for dismissal or judgment that were ready to be decided.

---

[11] This, Vigeant's second suit based on the same events, was filed on October 9, 2002.

Fourth, and finally, the case is in a different procedural posture than it was in 2002, when the motion to dismiss was filed in answer to the complaint. Written discovery is complete, and the entire case can now be disposed of as a matter of law.

**B. Plaintiff Has Not Pled Nor Can He Establish an Abuse of Process Claim**

Vigeant also argues that he has pleaded the elements of an abuse of process claim. Citing Nagy v. McBurney, 392 A.2d 365, 370 (R.I. 1978), he points out in his objection that

> [A]buse of process involves the elements listed below:
> 1. The defendant employed some form of legal or judicial process;
> 2. The existence of an ulterior of wrongful motive;
> 3. Designed for what it was not.

Pl's Obj., p. 38. Vigeant claims that he has alleged all three elements, but he is mistaken. The only element of these three that has been alleged is that defendant used some form of legal or judicial process. Complaint, ¶¶ 28, 36-40. On the contrary, Vigeant did not allege the existence of an ulterior or wrongful motive in his complaint. In fact, the allegations in Count V, Abuse of Process are identical to those in Count III, Malicious Prosecution. His objection to the summary judgment motion sets forth his belief that the Government's ulterior motives were (1) to confuse, intimidate and humiliate Vigeant in order *to get him to make admissions to other crimes* or simply cause him physical and mental discomfort; and (2) *to discover evidence of crime or contraband.* Pl's Obj. at 39 (emphasis supplied). However, there are no such allegations in the complaint, nor has Vigeant offered any admissible evidence which would support a reasonable factfinder in concluding that there was such an ulterior purpose.

Neither has Vigeant alleged the third element, which is the use of the judicial process in

some way other than was intended. This element is not even raised in objection to the motion for summary judgment. Without a showing that the use of the process itself was illegal, a claim for abuse of process must be dismissed. Andrade v. Chojnacki, 65 F. Supp. 2d 431, 469 (W.D.Tex. 1999). A plaintiff's first burden in an abuse of process case is to allege that defendant perverted the legal process and to specify how it was perverted. See, e.g., Beaudoin v. Levesque, 697 A.2d 1065, 1068 (R.I. 1997) ("Other than Beaudoin's unsupported and conclusory allegations, there is nothing in the record that even suggests that the prosecution against Beaudoin was perverted for an ulterior or a wrongful purpose."). See also, Koresko v. Crosswhite, 2006 WL 263623, *7 (E.D.Pa.) (The challenged conduct must involve a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process. That judicial process was initiated with a bad motive is not enough.); Fraternal Order of Police, D.C. Lodge 1, Inc. v. Gross, 2005 WL 3201400, *1 (D.D.C.) ("In addition to ulterior motive, one must allege and prove that there has been a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge ... The mere issuance of the process is not actionable, no matter what ulterior motive may have prompted it; the gist of the action lies in the improper use after issuance.") (Citations omitted); Grabinski v. National Union Fire Ins. Co., 2005 WL 2412784, *5 (D.Ariz.) (It is not enough to establish a defendant's ulterior purpose in the use of process, since some goals, like a purpose of settlement, are includable in the goals of proper process ... Rather, the process must be used primarily to accomplish a purpose for which [it] was not designed. Under this view, the action for abuse of process assumes an ulterior motive, usually extortionate in nature ... Mere speculation about the defendant's purposes provides no foundation for an abuse of process claim.) (Internal citations and quotations

omitted); Bunch v. City of Ridgetop, Tenn., 2005 WL 2333965, *5 (M.D.Tenn.) (Abuse of process does not occur unless the process is perverted; that is, directed outside of its lawful course to the accomplishment of some object other than that for which it is provided.); Godshalk v. Borough of Bangor, 2004 WL 999546, *13 (E.D.Pa.) (Examples of actions that are recoverable under the abuse of process tort are "extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution.). The party asserting the claim must allege an ulterior motive and a use of the process for a purpose other than that for which it was designed. Gilbert v. Field, 788 F.Supp. 854, 861 (E.D.Pa.1992). The essence of an abuse of process claim is that the process is used for a purpose not intended by the law. Abuse of process usually pertains to situations involving "extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution." Zappala v. Hub Foods, Inc., 683 F.Supp. 127, 129 (W.D.Pa.1984). There is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion.

However, even allegations of each of the three elements would not save Vigeant's abuse of process claim. "To avoid summary judgment, the party opposing the motion cannot rest upon mere allegations or denials but must affirmatively set forth competent evidence that raises a genuine issue to be resolved." Beaudoin at 1068, citing Harritos v. Cambio, 683 A.2d 359, 360 (R.I.1996) (finding that summary judgment was properly entered with regard to the abuse of process count in Beaudoin's complaint for failure to set forth competent evidence that raises a genuine issue to be resolved.). See also, Normandin v. Gauthier, 2005 WL 1274350, *9 (R.I. Super. 2005) (defendants have not produced the slightest evidence that plaintiff had an improper

purpose or ulterior motive.); LaBonte v. National Grange Mut. Ins. Co., 2001 WL 736251, *2 (R.I.Super.) (plaintiff provided the court with nothing beyond mere allegations to demonstrate that the defendant's motivation for filing the federal action had any purpose other than that which the defendant represented to this Court.); Voyticky v. Village of Timberlake, 412 F.3d 669, 677 (6th Cir. 2005) ("While no party disputes that Plaintiff was subjected to a legal proceeding, Plaintiff has proffered no evidence, nor does he suggest or argue, that the proceeding was 'perverted' for the achievement of an'ulterior purpose.'"); Ducey v. Meyers, 144 Fed. Appx. 619, 624 (9th Cir. 2005) ("There is no evidence from which to infer that any of these defendants instigated criminal proceedings against [plaintiff] in order to accomplish an ulterior purpose."); Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001), citing Feliciano de la Cruz v. El Conquistador Resor & Country Club, 218 F.3d 1, 5 (1st Cir. 2000) (Rule 56(c) compels summary judgment even where motive and intent are at issue, if the nonmoving party 'rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'). Medina-Munuz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (same).

Once the moving party has made a preliminary showing that no genuine issue of material fact exists, "the nonmovant must produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted). A plaintiff's perception is not evidence. See, Pilgrim v. Trustees of Tufts

University, 118 F.3d 864, 870 (1st Cir. 1997).

Vigeant suggests that in order to defeat summary judgment, the Court should accept the ulterior motives he proffers in his objection, as "inferences" that should be drawn from the complaint.[12] Pl's Obj. at 38-39. First, the motion before the court is a motion for summary judgment, not a motion to dismiss, and defendant cannot rely on mere allegations or inferences which might flow from those allegations. See, Beaudoin, 697 A.2d at 1068, and discussion, *supra*. Second, even if allegations were sufficient to defeat a summary judgment motion (and they are not), the allegations Vigeant says should be inferred would be insufficient as a matter of law. These inferences amount to, in essence, a claim that defendant was trying to arrest, charge and try Vigeant with some crime - any crime. As the District Court in Massachusetts found, a desire to make an arrest is not the type of ulterior motive encompassed by abuse of process. "Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Bolduc v. U.S., 2002 WL 1760882, *4 (D.Mass.).

In sum, not only has Vigeant not alleged all of the elements of an abuse of process claim, he has produced no competent evidence that would get him to a factfinder. All he has done is draw conclusions based on the First Circuit's decision in United States v. Vigeant, that the Government had an ulterior motive to get him to make admissions to other crimes, or to discover evidence of other crimes. He concedes this very point: "We can come to no other conclusion

---

[12] (1) to confuse, intimidate and humiliate Vigeant in order *to get him to make admissions to other crimes* or simply cause him physical and mental discomfort; and (2) *to discover evidence of crime or contraband.*

other than that the Government's ulterior motive was to ... " Pl's Obj. At 39. Such blanket speculation cannot defeat a motion for summary judgment.

## VIII. STATUTE OF LIMITATIONS

Vigeant's first objection to the statute of limitations argument is that it has been barred by the doctrine of law of the case. For the reasons stated in detail, *supra*, law of the case does not bar defendant's argument on the statute of limitations in this motion for summary judgment.

Vigeant's next objection is that his claims for false arrest and false imprisonment are saved by Heck v. Humphrey, 512 U.S. 486 (1994). For the reasons explained in our opening brief, he is mistaken. If, however, the Court finds that the agents had probable cause to arrest Vigeant as an armed career criminal, plaintiff's claims for false arrest and false imprisonment fail and the Court need not reach this issue. If the Court chooses to address the issue, defendant points out that Vigeant's analysis of Heck and the four other cases he relies on, Erlin v. United States, 364 F.3d 1127 (9th Cir. 2004) (incorrectly cited as Erwin); Parris v. United States, 45 F.3d 383 (10th Cir. 1995); Dalis v. United States, 210 F.3d 389 (10th Cir. 2000) (unpublished); and Schilling v. White, 58 F.3d 1081 (6th Cir. 1995) misses the point of Heck. Neither Heck, nor any of the published cases cited by plaintiff, simplistically holds that the rule established in Heck, without more, applies to FTCA cases. Rather, the principle announced by the Supreme Court in Heck is that in order for a § 1983 plaintiff

> to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, declared invalid ... or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

Heck, at 486-87. As Heck goes on to instruct, a district court must determine whether the

§ 1983 action would *necessarily* imply that the plaintiff's conviction was unlawful. Id. at 487, n. 7. Nowhere does the Heck Court apply its principle to a tort claim (it simply likens the § 1983 claim before it to a malicious prosecution action), and our position is that Heck does not apply to tort claims. Nonetheless, a few courts have found that certain tort claims, which necessarily implicate the constitutionality of a conviction, cannot be brought unless the conviction or sentence has been reversed on direct appeal, declared invalid ... or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. What plaintiff has missed in his analysis is whether the tort claim, if successful, would *necessarily imply* that plaintiff's conviction was unlawful. Id., n. 7.

Schilling, *supra*, like Heck, brought a § 1983 claim which, if successful, would have meant that his conviction was invalid. It does not explore the junction between Heck's principle and tort claims under the Federal Tort Claims Act. Parris, *supra*, a tort action brought under the FTCA, does not stand for the simplistic proposition that an FTCA case falls under the principles set forth in Heck. The Plaintiff in Parris alleged legal malpractice by the public defender, leading to a conviction. There, the court concluded that Parris was actually seeking further review of the basis for his conviction.[13] In this circumstance, the court stated that an FTCA is not a proper vehicle for challenging the validity of a prior conviction. Finally, Erlin, *supra,* is a negligence action brought under the FTCA, based on the Parole Commission's having miscalculated Erlin's release date and was not a claim for false imprisonment. Id. at 1130. As such, the court found that so long as Erlin was incarcerated, a judgment for damages for the miscalculation would

[13] Dalis, *supra,* on the other hand, is a tort case (which arose out of an immigration case) alleging wrongful detention beyond six months. However, this unpublished decision's simple declaration that Heck applies to FTCA actions, id. at *2, lacks the necessary analysis of Heck's principles.

necessarily imply that he was wrongfully imprisoned. Vigeant, by contrast, is claiming that he was falsely arrested and imprisoned as a result of the search warrant which the First Circuit found lacked probable cause to believe Vigeant was engaged in money laundering. Despite his protestations to the contrary, his claims are not an attack on his conviction for being a felon in possession of a weapon, and thus, Heck's analysis does not apply.

Vigeant's final salvo is that because there is contrary authority to the multitude of cases cited by defendant, the Court should take all inferences in favor of, and find on the side of, the non-moving party. Vigeant cites no authority for the outlandish proposition of stretching the standard of review applied to factual evidence to a pure question of law. It is axiomatic that questions of law are not decided in favor of the non-moving party, but rather decided as a matter of law. See, e.g., Campbell v. Washington County Technical College, 219 F.3d 3, 7 (1st Cir. 2000) (On summary judgment, factual inferences are to be drawn in favor of the non-moving party, but that rule refers to the inferring of one fact from another. Here, whether the individual defendants should be called employees or independent contractors does not amount to inferring one fact from another; it is a determination as to legal status or characterization based on undisputed facts). See also, United Municipal Leasing Corp., v. Lexington Corporate Properties, Inc., 1997 U.S. Dist. LEXIS 14428, * 17, n.3 (N.D. Ill. 1997) (The court inferred that the facts regarding the issue were as the non-moving party claimed, but determined the legal issue as a matter of law.) As in Campbell, the legal issue in this case (the statute of limitations) is not fact or inference dependent. Neither the date Vigeant was arrested, nor the date he filed his administrative claim, is in dispute. The issue presented simply requires the Court to determine a legal issue as a matter of law.

## X. CONCLUSION

Wherefore, for all of the forgoing reasons and those set forth in its original memorandum, defendant requests this Court to enter judgment in its favor.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

Anthony C. DiGioia by REF

ROBIN E. FEDER
Assistant United States Attorney
ANTHONY C. DIGIOIA
Assistant United States Attorney
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by first-class mail, postage pre-paid, on the Plaintiffs' counsel, by mailing same on this the 21st day of February, 2006, to:

Daniel K. Flaherty, Esq.
Frederick A. Costello, Esq.
Flaherty, Butterfield & Costello
33 College Hill Road, Suite 20D
Warwick, RI 02886