UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**ROBERT A . VIGEANT**

**VS C.A. NO. 02-441S**

**UNITED STATES OF AMERICA**

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS REPLY TO DEFENDANT'S MEMORANDUM IN SUPPORT OF DEFENDANT'S REPLY TO PLAINTIFF'S OBJECTION TO MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

## 1. INTRODUCTION

Plaintiff does not confuse any issues raised by his claims in this action and has demonstrated in his original Objection to Defendant's Motion for Summary Judgment that there are issues of fact and law that are in question and that this matter is not ripe for summary judgment.

In reference to the so-called issues that are raised in Defendant's twenty-eight page reply to Plaintiff's Objection, Plaintiff would state the following:

1. Plaintiff has presented sufficient evidence to support his claim that Defendant had neither probable cause to search Vigeant's home in May of 1997 nor did Defendant have probable cause to arrest and charge Plaintiff with the crime of possession of a weapon at that time.

2. Defendant is incorrect when it states that Plaintiff argues that the defense is collaterally estopped from litigating any issues that are raised in this case. What Plaintiff has stated and set forth on page 23 of his original Memorandum is that the Doctrine of Collateral Estoppel has established the following four facts:

1. That there was no probable cause to enter and search the residence at 24 Newport Lane;

2. That Agents Burns and Botelho deliberately misled the Court with false statements and reckless omissions;

3. That Agents Burns and Botelho knew they had no probable cause to apply for a search warrant and never should have asked for one;

4. That their request for a search warrant was done in bad faith.

3. Plaintiff will indicate further in this Reply that the First Circuit opinion vacating the conviction against Plaintiff is one of several reasons why the case against Vigeant ended in a favorable manner for the purpose of establishing an element of the claim for malicious prosecution.

4. Plaintiff will set forth in his Reply that his initial conviction was overturned, the facts involving that conviction were such that no presumption of probable cause can flow from that conviction based on the conduct of the agents prior to the search, subsequent to the search and during the trial.

5. Rhode Island and the Federal Courts have liberal pleading provisions and, in fact, Plaintiff has plead all of the factors necessary to put the Defendant on notice that he is making a claim for abuse of process. He has produced sufficient facts of conduct by the Defendant's agents to raise an issue of fact as to whether there was an abuse of process in their conduct prior and subsequent to obtaining the search warrant.

6. Plaintiff will address the issue of jurisdiction re: the statute of limitations in a later portion of this brief.

## II. Standard of Review

In Plaintiff's original brief in opposition to Defendant's Motion for Summary Judgment, Plaintiff presented approximately three and one-half pages of cases in argument concerning the standard of review that this Court should utilize in addressing a Motion for Summary Judgment and a Motion to Dismiss.

In those three and one-half pages, Plaintiff cited twenty-one cases. Defendant takes issue with one case that was cited, a Rhode Island case, McPhillips v Zayre Corp.. 582 A.2d 747 (RI 1990). In that case, the Rhode Island Supreme Court stated that summary judgment is a drastic remedy that should be cautiously applied. McPhillips also held that in reviewing summary judgments the Court must apply the same standard as the trial court and view the opposing party's material in its most favorable light. The Court must not pass on a witness' credibility. These particular principles are not overly restrictive as alleged by the Defendant and are found in Federal Court cases cited in Plaintiff's Standard of Review section.

In Schock v U.S. 56 F. Supp. 2d 185 Dist. of RI (1999), when the facts support a plausible but conflicting inference on pivotal issues of a case, a judge may not choose between the inferences at a summary judgment stage.

The court must find all inferences are read in favor of the non-moving party. Kelly v LaFarce 288 F.3d 1, 9, 14 (1st. Cir. 2002).

The court must consider all affidavits and pleadings in a light most favorable to the non-moving party. Lipset v University of Puerto Rico, 846 F.2d 881, 895 (1st Cir. 1988).

Simply put, summary judgment is a drastic remedy. If it is granted, the case is over. One cannot imagine a more drastic result than that. It should be applied cautiously.

Does Defendant really argue that the Court should not be cautious when it is ruling on a dispositive motion?

## III. Collateral Estoppel.

It would appear the Defendant misunderstands or misconstrues Plaintiff's argument on collateral estoppel. In Plaintiff's original brief he has narrowly assessed the areas where collateral estoppel should apply. Defendant has basically regurgitated its original argument about clear proof and whether or not the Appellate Court considered matters outside the four corners of the Affidavit submitted by the Government's agents.

Defendant admits it argued about matters outside the four corners of the Affidavit but that the Circuit Court of Appeals in U.S. v Vigeant 176 F.3d 565 (1st Cir. 1999) addressed only the issues that were in the Affidavit and therefore collateral estoppel should not attach. This is a head fake on the part of the Government. What the Court did find was the following: "the Government offers no rational explanation for these omissions and foundationless conclusions. Instead, the Government argues in its brief with information obtained after the search in question that Vigeant is a bad person. Be that as it may, even unsavory persons have constitutional rights. We conclude that a reasonable officer in Botelho's position that is, in possession of the omitted information, would have known that he 'should not have applied for the warrant'. Malley 475 U.S. 345, at least not without further investigation." id. p. 574.

In reality, Defendant's argument that the Court may have heard evidence outside the four corners of the Affidavit but did not address it is false. The Government heard it, considered it, and found it to be utterly worthless. There is a big difference.

To say that the Court only found by a 51% margin or by a preponderance of evidence that these agents had committed misconduct is pure rubbish. One need only look and read the decision. It requires no speculation. A good barometer of the strength of that decision is the reaction of Judge Israel, previously noted. He found "there was a most egregious violation of the Fourth Amendment, Fourteenth Amendment, and the Constitution of the State of Rhode Island and that the means by which the violation was perpetrated, that is to say, an affidavit which undermines the integrity of the court issuing the search warrant is utterly shocking." See Plaintiff's Exhibit 5, p. 79. That comment by an obvious neutral observer supports the argument that the Court decided these issues by far more than a mere preponderance of the evidence.

For these reasons, Plaintiff reiterates his initial position that collateral estoppel should attach to the following facts:

1. There was no probable cause to enter and search the residence at 24 Newport Lane;

2. Burns and Botelho deliberately misled the Court with false statements and reckless omissions;

3. Burns and Botelho knew they had no probable cause to apply for a search warrant and never should have asked for one;

4. Their request for a warrant was done in bad faith.

**IV. Probable Cause Inquiry.**

Defendant apparently misunderstands the whole gist of Plaintiff's argument in this area. Plaintiff does not concede that the Government had probable cause to either search Vigeant's home or arrest him for possession of a weapon after being convicted of

a violent felony. The issue of probable cause to search the home has obviously already been decided by the Circuit Court of Appeals. The issue of probable cause to arrest Vigeant for possession of the weapons is one of the elements Plaintiff has to prove at trial and Plaintiff understands that; however, by no stretch of the imagination does Plaintiff admit Defendant had probable cause to arrest him for possession of a weapon. The basis for this argument is what Plaintiff has been shouting from day one of this case. The Government's agents lied, misrepresented, omitted and fabricated evidence to get into Plaintiff's house. Not for one minute does Plaintiff believe that their misconduct ended once the agents were inside his house. If you look at Vigeant's Affidavit, page 2, paragraph 8, Plaintiff's Exhibit 7, he states: he never saw the firearm that was found in the nightstand next to his bed; he never laid eyes on it before and never touched the firearm. That he believed the firearm was planted by the agents so they could arrest him and charge him with being a career criminal. That was Plaintiff's defense during his trial, and he was, in fact, found innocent of that Count. Apparently, the jury just may have believed his argument that the weapon was planted. Whether or not the weapon found in the bedroom was placed there by the Government agent is a factual issue to be determined by a fact finder.

Where is the probable cause for charging Vigeant with possession of this weapon? Defendant argues that the Plaintiff admitted having possession of these weapons. This is based on the allegations of the Government's agents. The same agents judicially found to have misled the Magistrate in the first place and to have been found to have committed egregious violations of Vigeant's Fourth and Fourteenth Amendment rights. As much as my sister may want to forget about perjury, reckless omissions and

misrepresentations, Plaintiff is not going to drop that issue. Vigeant said any admission that may have been pulled out of him on the day he was arrested was coerced. The same argument that Plaintiff makes in reference to whether the gun was planted can be used in reference to `a coerced confession. An analogy of this would be that instead of breaking into Vigeant's home at dawn, holding a gun to his head, tying him half naked to a chair and threatening him with life imprisonment if he did not cooperate - instead, hypothetically let us say the policemen were more crude – they tie him in a chair and burn him with cigarettes until he admits the guns are his – does that legitimately give the police probable cause to charge him with possession of the weapons?

Interrogation procedures can produce many, many different types of admissions, as we all know. We can go back to the notorious KGB policeman of the Stalin area, Lavrentii Beria, who boasted - "let me have one night with him and I will have him confessing he is the King of England" Simon Sebag Montefiore, Stalin, the Court of the Red Tsar (Alfred A. Knopf, New York, 2004), 276, 277. Now our Government has less crude and more efficient methods that can be described as "torture lite". The result is the same. People admit to things they did not do and the Government obtains convictions based on the coerced admissions. The bottom line is there is an issue of fact. Plaintiff has submitted more than enough evidence to impugn the reliability and motives of the Government's witnesses.

Defendant talks about the fallacy of Plaintiff's attempts to focus on the findings made by the Circuit Court of Appeals on pages 4-8 of his Memorandum. This was no fallacy on Plaintiff's part. These were factual findings made by the Circuit Court that eviscerate the credibility of the Government's witnesses. When Vigeant states under

oath that the gun in his bedroom was not his, that it was probably planted by the Government and that he never had dominion or control over his girlfriend's gun that was in the downstairs' liquor cabinet that raises an issue of fact. The Government's denial of those claims does not trump them since the Government's agents are the only individuals to have been judicially determined unreliable.

This position on the part of the Plaintiff is amply supported in the findings of Freeman v New Jersey 788 A.2d 867; Townes v City of New York, 176 F.3d 138 (2nd Cir. 1999). Plaintiff most definitely alleges that fraud and perjury committed by the Government undercuts the initial guilty finding in this case. The conduct of these agents was substantially the same as the conduct of the FBI agents in the case of Bolduc v United States, 2002 WL1760882 (D MA 2002).

As in Bolduc, if a jury in Vigeant's initial trial knew that Agents Botelho and Burns had lied to the Magistrate in their Affidavits and recklessly omitted exculpatory facts in their request for the search warrant, do you think for one minute it would not have questioned the veracity of these agents when they testified that Vigeant freely admitted possessing those weapons at his original trial?

This Court should give little weight to the argument about the fruit of the poisonous tree made by Defendant. Plaintiff is not asking anyone to exclude evidence pursuant to the fruit of the poisonous tree theory. Plaintiff is saying the agents are not believable. Their documented unethical conduct belies their claims that they found contraband in Vigeant's home. It may very well be that at a trial on the merits the judge acting as a fact finder in this Federal Tort Claims Act may choose to believe these agents

at the time of trial and disbelieve Vigeant. That is something that should happen at the time of trial, not through a dispositive Motion.

Defendant's claim of a perverse wealth transfer has no application whatsoever to Vigeant. In Townes v City of New York, there was not one finding in the Circuit Court's decision or the Trial Court that the police officers lied, omitted facts, planted evidence or did anything other than exercise poor judgment in searching the cab without probable cause. There was no finding in that case that the drugs and guns did not belong to Mr. Townes and arguably in that case there would have been a perverse result if he was enriched due to a technical error on the part of the police officers. The opposite is true in this case. This was no technical error. These allegations are of a concentrated effort on the part of certain law enforcement officials, including but possibly not limited to Agents Botelho and Burns, to mislead the Court, omit information recklessly, misrepresent information and give outright false information in a sworn document. These actions directly resulted in Vigeant spending almost three years in jail. That Vigeant should receive financial compensation as a result of their misconduct is by no means perverse.

For the same reasons Plaintiff previously mentioned in reference to probable cause, Vigeant's initial conviction does not conclusively prove anything because Plaintiff alleges the conviction was obtained by false statements made by the Government agents and that but for the perjury and reckless conduct on the part of the Government's agents, the conviction never would have occurred. This was the basis for the holding in Bolduc v United States. A conviction obtained by collateral fraud or other corrupt means does not raise a presumption of probable cause.

**V. Was there a favorable termination of the underlying suit for malicious prosecution purposes?**

Defendant in its argument cites the case of Guay v Kappelle, 70 F.3fd 1252 (1st Cir. RI 1995). This is a civil case. Dr. Guay was initially sued by Mr. Kappelle for malpractice. Apparently, there were two Counts to that suit. One of the Counts was for medical negligence and the other Count was for lack of informed consent. In that case, Dr. Guay was not found negligent; however, he was found liable for failure to obtain informed consent and paid the plaintiff $70,000.00 in settlement. All the Federal Court said when Guay later sued for malicious prosecution was that paying $70,000.00 after being found liable for failure to obtain informed consent can hardly be considered a termination in Dr. Guay's favor. Guay, p 1252. The Court found that Mr. Kappelle prevailed in the action because he was awarded damages by the jury.

Plaintiff stated in his earlier brief that lack of prosecution is an example of a finding of a favorable termination in favor of the Plaintiff. Nagy v McBurney, 392 A.2d 365, 368, 369. The Government has chosen not to further prosecute Vigeant. Vigeant cannot demand another trial. To argue that he wasn't found innocent because the Government's misconduct precluded any new trial, is a catch 22. There is a presumption in this country that one is innocent until proven guilty. Vigeant has never been proven guilty by a final judgment. The original trial verdict was vacated and the Government chose not to proceed any further. Based on Rhode Island law, which governs in FTCA cases, this is sufficient since the Government failed to prosecute this case any further.

**VI. THERE WAS PROXIMATE CAUSE FOR DAMAGES.**

Plaintiff reiterates that he does not accept the Government had probable cause to charge him with possession of a weapon. Plaintiff states that the Government manufactured the evidence to get into his house. The Government manufactured at least some of the evidence that was allegedly found in his house. The Government coerced admissions knowing that those admissions would produce an indictment. They knew or should have known the indictment most probably would produce a conviction and that a conviction would result in lengthy incarceration. All of their actions were foreseeable. All of their misconduct was intentional. There was no sufficient intervening cause to vitiate their behavior. Their tortious actions are compensatable.

**VII. Abuse of process.**

A. Law of the Case. Plaintiff will not restate his previous argument on law of the case. The original Motion to Dismiss was labeled as such by Defendant. It now labels the exact same Motion a Motion for Summary Judgment. Because of this, perhaps the law of the case does not apply. But, even with that being said, Defendant offers no new information in its argument that was originally denied by the Magistrate Judge and then affirmed by Judge Lisi. When Judge Lisi made her decision, it is clear that the Motion was denied. See Memorandum and Order dated October 1, 2004. She did say the parties could develop a better record and presumably if a better record was produced, meaning more evidence, she might re-visit the issue. Nothing has changed in the record from the time the original Motion to Dismiss was denied. Notwithstanding two pages of case citings set forth by Defendant that had nothing to do with the issue, the simple fact is that when a judge has decided an interlocutory matter in a pending suit, a second judge, when confronted with the same question in the identical manner, should refrain from disturbing

the first ruling absent some change in circumstances. Ferguson v Marshall Contractors, Inc., 745 A.2d 147 (RI 2000). Where is the change of circumstances? Defendant literally repeats the same argument made in its argument to support its original Motion to Dismiss. Whether one views this issue as a Motion to Dismiss or Motion for Summary Judgment, it was previously addressed by the Court and nothing has changed.

Assuming the Court gives Defendant another bite of the apple, Plaintiff reiterates his earlier arguments in his initial brief.

1. We are in a notice pleading era. Rule 8 states that each averment of a pleading shall be simple, concise and direct. No technical forms or pleadings or motions are required. Rule 8(e)(1) Federal Rules of Civil Procedure.

In the Complaint prior to getting to Count V, the Abuse of Process Count, Plaintiff had alleged in paragraphs 1 through 55 numerous allegations of abuses by the agents of the Federal Government. You have heard those abuses ad nauseaum. Plaintiff is not going to repeat them.

In the first paragraph of Count V, Plaintiff realleges paragraphs 1 through 55 as if set forth in full herein in Count V. Plaintiff then repeats his previous allegations in reference to Burns and Botelho deliberately and recklessly initiating a criminal prosecution against Vigeant, misleading the Magistrate for the purpose of obtaining a search warrant without probable cause in a deliberate and reckless disregard for the truth. As a direct result of the first 55 paragraphs that were previously set forth and other allegations contained in paragraph 73 of Plaintiff's Complaint, Vigeant was subject to an abuse of process.

Magistrate Martin and Judge Lisi found that the numerous allegations made in those first 55 paragraphs clearly showed (1) that Defendant employed a form of legal judicial process in the obtaining of the search warrant, (2) the existence of an ulterior or wrongful motive, (3) that the search warrant was designed for what it was not. Among other things, the search warrant was specifically authorized to obtain bank records that displayed evidence of money laundering. This was the purported purpose of searching Vigeant's home. The Government already had the bank records that it was asking for; therefore, it did not need them and the purpose to get in the home was obviously not to obtain bank records. See Plaintiff's Exhibit 9, p. 20. Therefore, there is a perverted purpose. The agents had a search warrant they could have executed during the day when Vigeant was not there. The agents purposefully chose to search at dawn, with guns drawn and handcuffs out. They chained Plaintiff to a chair, half naked in front of a female officer, with the specific intent to inflict maximum mental distress, humiliation and intimidation on Vigeant, another perverted purpose. Their real motive was to break this man, humiliate him, and cause him to confess to some other crime that they had no probable cause to investigate in his home at that time; i.e. possession of drugs, weapons, etc. There was no need to break down Vigeant's door to execute a warrant. The fact the Agents waited only five to eight seconds before smashing down Plaintiff's front door provides further indictment of their ulterior motive to shock and humiliate the Plaintiff. As Vigeant indicated in his Affidavit, Agent Burns told him he had waited three years to get him and now he had succeeded. Clearly, the process was used for something other than for which it was originally designed in violation of Brough v Foley 572 A.2d 63, 67, 68 (RI 1990).

Defendant states that the party opposing the Motion cannot rest on mere allegations or denials but must set forth affirmatively competent evidence that raises an issue to be resolved. Plaintiff has, in fact, raised competent evidence. Defendant's own admissions previously cited were: (1) they already had the bank records that they were allegedly searching for in this house, Plaintiff's Exhibit 9, p. 20.; (2) the agents admitted they waited only five to eight seconds before smashing down Vigeant's door, Plaintiff's Exhibit 14, p. 18; (3) the agents have admitted they handcuffed Plaintiff half-naked to a chair, Exhibit 14, p. 18; (4) the agents have been found by the second highest Court in the land to not having probable cause for the search warrant that was issued and to have applied for that warrant in bad faith, Plaintiff's Exhibit 1; (5) Plaintiff has set forth in a sworn Affidavit Agent Burn's vows to get him, Plaintiff's Exhibit 7, par. 2.

This is not speculation. These are facts. The truth of which this Court is bound to accept at this stage of the proceedings as Plaintiff is the non-moving party defending the Motion for Summary Judgment.

For these reasons Plaintiff believes that the Motion to Dismiss and/or Summary Judgment should be denied again.

**VIII. LACK OF JURISDICTION (DEFENDANT'S MOTION TO DISMISS FOR VIOLATION OF THE STATUTE OF LIMITATIONS).**

Plaintiff would state that the argument of the Law of the Case is even stronger with this issue since the initial Motion of Defendant was a Motion to Dismiss filed in 2002 and denied by the Magistrate Judge and Judge Lisi in October, 2004.

Absolutely no new evidence has been produced since this identical question of law was decided on October 1, 2004.

If the Court should decide to re-visit this issue, Plaintiff would reallege his arguments set forth in his original brief plus the following.

Defendant raises another issue in its Reply Brief indicating that if Heck v Humphrey 512 U.S. 486 (1994) is to apply to the facts in this case, Defendant is obliged to raise the probability that the tort claim if successful would have implicated the validity of Plaintiff's original conviction. See Defendant's Reply brief, page 26.

Defendant simplistically argues that Vigeant's claim of false arrest and false imprisonment as a result of the search warrant, which the First Circuit found lacked probable cause, would have had no effect on his conviction for being a felon in possession of a weapon. Thus, Heck's analysis does not apply. If one looks at United States v Vigeant, 176 F.3d 565, the foundation for the reversal of Vigeant's conviction was the fact that the original search warrant was obtained under false, misleading and reckless circumstances and done in bad faith. Thus, the fruits of that original search warrant; i.e. the weapons and confessions, were all suppressed and the conviction vacated. But for his false arrest and imprisonment that was triggered by the issuance of the search warrant, he never would have given the alleged confession that the State used against him in his original trial, the Defendant would not have obtained the evidence they presented at that trial, nor would the false testimony given by the agents at the trial been allowed.

In Rashid v Montroverty and Handfield, No. SVIC A 95-2449, 1997 WL360922 (Eastern District Pa. June 24 1997), State law claims for negligence, false arrest, malicious prosecution, false imprisonment as claims brought under the FTCA had to be dismissed because those claims "implicated the validity of Plaintiff's criminal conviction

even if they were disguised in terms of negligence or constitutional deprivations." Id. Judge Martin in his Report and Recommendation stated that "the same considerations which influenced the Court in Heck, the avoidance of "parallel litigation" Heck 512 US 484, the "strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transactions, and the avoidance of "collateral attack on (a) conviction through the vehicle of a civil suit id. 126, also apply to State law claims brought under the FTCA which undermine or negate the validity of Plaintiff's conviction." Exhibit 14, page 16. Magistrate Martin went on to say "Vigeant's claims for false arrest and false imprisonment unquestionably implicate the validity of his conviction. Vigeant's arrest and his detention immediately thereafter flowed directly from the discovery of the firearms and ammunition. The seizure of those items was a direct result of the search of Vigeant's house. If the search was illegal then his arrest was also illegal. Vigeant could not prevail on these claims without undermining the validity of his conviction. Citing Mackey v Dickson, 47 F.3rd 744, 746 (5th Cir. 1995)." Id.

For these reasons, and the reasons previously stated in Plaintiff's original brief, Defendant's Motion to Dismiss the Claims of False Imprisonment and False Arrest should be denied since the running of the Statute of Limitations did not start until May 14, 1999, the date Vigeant's conviction was vacated.

Plaintiff,
By his attorneys,

Frederick A. Costello #2205
**FLAHERTY, BUTTERFIELD & COSTELLO**
33 College Hill Road Suite 20D
Warwick, Rhode Island 02886

Tel. No. 401 822 1800 x 6 Fax 401 822 1879

Daniel K. Flaherty, #2466
FLAHERTY, BUTTERFIELD & COSTELLO
33 College Hill Road, Suite 20D
Warwick, Rhode Island 02886
Tel. 401 822 1800 x 213, Fax 401 822 1879

**CERTIFICATION**

I hereby certify that on the 10th day of March, 2006 I sent a true copy of within to:

Robin Feder
Office of U.S. Attorney
Fleet Center
50 Kennedy Plaza
Providence, RI 02903