UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ROBERT A. VIGEANT and CONCETTA PAZIENZA, Plaintiffs, | |
| v. | C.A. No. 02-441S |
| UNITED STATES OF AMERICA, Defendant. | |

**DECISION AND ORDER**

William E. Smith, United States District Judge.

Facts arising from a now defunct criminal case begot the civil action currently before the Court. On May 12, 1997, a contingent of federal agents raided Plaintiff Robert A. Vigeant's ("Vigeant" or "Plaintiff") home in Narragansett, Rhode Island. The search yielded two firearms and, ultimately, Vigeant's conviction by a jury for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Vigeant appealed, and was released after serving twenty-seven months of a 235-month sentence when the Court of Appeals vacated his conviction because the search warrant was obtained without probable cause. See United States v. Vigeant, 176 F.3d 565 (1st Cir. 1999).

After his release, Vigeant filed this multi-count action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. Two

of Vigeant's six original counts (Counts I and VI) were dismissed previously without objection; still viable are his claims of false arrest (Count II), malicious prosecution (Count III), false imprisonment (Count IV), and abuse of process (Count V). The Government has moved for summary judgment on all remaining Counts, and additionally has filed motions to dismiss Counts II, IV, and V based upon the FTCA's two-year statute of limitations.

For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED, and Defendant's motions to dismiss are DENIED as moot.

I. Facts and Procedural History

Vigeant's name first surfaced with federal law enforcement agencies[1] in connection with a 1995 investigation into a drug-dealing ring headed by Patrick Vigneau ("Vigneau"), an individual whom Vigeant has known since grammar school.[2] Vigeant, 176 F.3d at 566; (Def.'s Ex. B); see also United States v. Vigneau, 187 F.3d 70, 72 (1st Cir. 1999). During the investigation into Vigneau, agents learned that Vigeant had a lengthy criminal record that

---

[1] These agencies included (or came to include) the Drug Enforcement Administration ("DEA"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and the Internal Revenue Service ("IRS").

[2] Vigeant does not dispute how federal agents first connected him to criminal activity; he states simply that he is unaware about how he came to be targeted.

included convictions for carrying a pistol without a license, extortion and blackmail, conspiracy, possession of arms after being convicted of a crime of violence, breaking and entering, and possession of a controlled substance. (See Def.'s Exs. C and D.) Eventually, as a result of the investigation, an indictment issued under seal charging Vigneau and others, but not Vigeant, with money laundering and drug distribution offenses. Vigeant, 176 F.3d at 567.

Although he was not indicted with Vigneau and company, Vigeant remained under investigation by federal authorities. On May 9, 1997, agents obtained a search warrant for Vigeant's residence at 24 Newport Lane in Narragansett, Rhode Island. The nine-page affidavit, prepared by Special Agent Robert Botelho, Jr., ("Agent Botelho") of the DEA,[3] contended that previously seized materials, suspicious banking transactions, and the statements of a confidential informant created probable cause to believe that Vigeant had laundered money from illegal drug sales in violation of 18 U.S.C. § 1956. See id. at 567-68 (setting forth the affidavit in detail). Accordingly, the search warrant "authorized the agents

---

[3] In Vigeant, 176 F.3d at 567, the Court of Appeals mistakenly identified Agent Botelho as a special agent with the IRS. (See Def.'s Ex. F and G) (indicating that Robert Botelho, who applied for the search warrant, was a special agent with the DEA, and that Patrick Burns, who actually conducted the search, was a special agent with the IRS Criminal Investigations Division).

to look for all 'original bank records or copies' of Vigeant's business and personal accounts at Fleet Bank." Id. at 568.

Federal agents executed the warrant in the early morning hours of May 12, 1997, first knocking on Vigeant's door, then waiting five to ten seconds, and finally breaking down the door with a battering ram. Id. Finding Vigeant asleep in an upstairs bedroom, the agents handcuffed him and placed him on a chair "for security reasons," (Def.'s Ex. G), while they continued to search the residence. The agents discovered a cornucopia of contraband and other questionable effects, including two handguns (one upstairs in a night stand and the other downstairs in a cabinet)[4] with accompanying ammunition; approximately 184 grams of marijuana; a Fleet Bank transaction receipt in the amount of $5,000; a $9,000 cashier's check; two personal checks identifying Vigeant as the payor (one for $10,000 and the other for $20,000); and handwritten notes indicating, among other things, "for profit from $20,000 in pot."[5] (Def.'s Exs. F, G, and H.) It is undisputed that, when

[4] The record reflects that the second handgun was found inside the cabinet on the top shelf, (see Def.'s Exs. F, G, and J), not behind it. Cf. Vigeant, 176 F.3d at 568 ("another weapon located behind a downstairs liquor cabinet").

[5] Vigeant claims he was unaware the agents had seized any items other than the two firearms and ammunition.

asked during the search, Vigeant responded that both handguns belonged to him.[6]

Vigeant was placed under arrest and charged with two counts of being a felon in possession of a firearm and one count of possession of ammunition. (United States v. Vigeant, No. 97-42-L, Indictment (D.R.I. May 21, 1997.) Before trial, Vigeant moved (1) to suppress the seized guns and ammunition, arguing that the search warrant was defective for failing to establish probable cause, and (2) for a Franks hearing to challenge the truthfulness of Agent Botelho's affidavit. See Franks v. Delaware, 438 U.S. 154, 171-72 (1978). The District Court denied both motions. After a jury trial, Vigeant was convicted of possessing the downstairs firearm and the ammunition, but acquitted of possessing the upstairs firearm. Upon government motion, the District Court dismissed the ammunition count as duplicative and, on April 3, 1998, sentenced Vigeant to a 235-month term of imprisonment on the remaining count. Vigeant appealed.

On May 14, 1999, the First Circuit vacated Vigeant's conviction, holding that the affidavit Agent Botelho submitted to

---

[6] Vigeant disputes only the veracity of his admission, i.e., that intimidation and coercion caused him falsely to claim ownership of the handguns, not whether the exchange itself occurred. (Pl.'s Ex. 7.) Indeed, during the progenitorial criminal case, Vigeant advanced similar arguments in his request to remain free on bail and his motion to suppress. (See Def.'s Exs. I and Q.)

support the warrant application failed to establish "probable cause to believe that Vigeant had committed the crime of laundering drug proceeds in violation of 18 U.S.C. § 1956." Vigeant, 176 F.3d at 569, 570-71. Moreover, focusing on affiant and warrant-applicant Botelho, the Court of Appeals held that the good faith exception to the exclusionary rule was inapplicable to the case before it because Agent Botelho had made "numerous omissions of material facts [that] were at least reckless" and a reasonable officer in Agent Botelho's position who possessed the omitted information would have known that he should not have applied for the warrant. Id. at 573.

On May 11, 2000, Vigeant filed a federal action, pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), alleging that Agent Botelho and several other unknown federal agents had violated his right under the Fourth Amendment to be free from unreasonable searches and seizures. (Vigeant v. Botelho et al., No. 00-236-T, Compl. (D.R.I. May 11, 2000).) However, Vigeant's attempts to serve the defendants in a timely manner repeatedly failed, and his claim ultimately languished. After granting two enlargements of time in which to serve the defendants, the District Court denied the third such motion. Vigeant filed an interlocutory appeal; however, upon motion, the First Circuit dismissed the appeal pursuant to Fed. R.

App. P. 42(b). (Vigeant v. Botelho et al, No. 01-1020, Judgment (1st Cir. February 20, 2001).) After receiving the First Circuit's mandate dismissing the appeal, the District Court granted yet another extension to effect service; when that deadline came and went, the Court dismissed the case for lack of prosecution on May 17, 2001.

Taking a different tact, Vigeant filed an administrative claim against the DEA, ATF, and IRS on May 11, 2001, requesting more than $18 million in damages.[7] Vigeant's grandmother and investor in several of his businesses, Concetta Pazienza ("Pazienza"), filed a separate administrative claim. Both claims were denied on April 17, 2002. Thereafter, on October 9, 2002, Vigeant and Pazienza initiated the instant action, alleging unlawful search and seizure (Count I), false arrest (Count II), malicious prosecution (Count III), false imprisonment (Count IV), abuse of process (Count V), and various damages resulting from Pazienza's inability to manage Vigeant's businesses (Count VI). Defendant moved to dismiss all but the malicious-prosecution count.

The motion was referred to a Magistrate Judge, who, on May 6, 2004, issued a Report and Recommendation that Defendant's motion to dismiss concerning Counts I and VI be granted, but denied as to

---

[7] The filing and perfection of a written administrative claim with the appropriate federal agency is an absolute prerequisite to maintaining an action under the FTCA. See 28 U.S.C. § 2675(a).

Counts II, IV, and V. The Magistrate Judge reasoned that Count I was barred by sovereign immunity and Count VI failed to state a cause of action (and, to the extent Count VI was an attempt to plead tortious interference with contract, was barred by 28 U.S.C. § 2680(h)).[8] Applying to Counts II and IV the rule of Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), the Magistrate Judge concluded that Vigeant's claims did not accrue until his conviction was vacated on May 14, 1999, and thus were timely filed under FTCA's two-year statute of limitations. Finally, concerning Count V, the Magistrate Judge posited that, based on the allegations in Vigeant's Complaint, one could infer that the federal agents executed the search warrant "to frighten, intimidate, and humiliate Vigeant," and to search for contraband for which no probable cause otherwise existed; dismissal was therefore inappropriate. On October 1, 2004, over Defendant's objection, the District Court adopted the Report and Recommendation with the caveat that a more fully developed record might support a future dispositive motion. (See Dkt. No. 21.)

This writer became involved in the case on October 18, 2004, after two judges of the District Court recused themselves. Defendant filed its pending Motion for Summary Judgment and Motion

[8] The FTCA explicity excludes from the federal courts' jurisdictional ambit "[a]ny claim arising out of . . . interference with contract rights." 28 U.S.C. § 2680(h).

to Dismiss on October 31, 2005, but extensions of time delayed the completion of briefing until March 10, 2006. At oral argument, Defendant argued that Count V should also be dismissed as time barred. Because the parties previously had not explored this issue, and so that Vigeant could respond adequately to this newly minted attack, the Court gave the parties an opportunity for further briefing.

II. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The role of summary judgment is to look behind the facade erected by the pleadings and assay the parties' proof in order to determine whether a trial will serve any useful purpose." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). This Court must view all of the facts in the light most favorable to the non-moving party, and draw from those facts all of the reasonable inferences that favor the non-moving party. See DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997).

Here, where Defendant seeks summary judgment against the party (Vigeant) bearing the burden of proving the claims asserted against

it, Defendant bears the "initial responsibility of informing the district court of the basis for [his] motion, and identifying those portions of [the record] which [he] believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If Defendant prevails on this front, then the burden shifts to Vigeant "to demonstrate that a trialworthy issue exists." Mulvihill, 335 F.3d at 19. However, Vigeant cannot meet his burden by merely alleging that a fact is in dispute or by simply denying the absence of disputed facts. See DeNovellis, 124 F.3d at 306. Rather, Vigeant must show that there is sufficient evidence for a jury to find for him on each essential element of his claims. Id. In other words, Vigeant must provide evidence that is both "genuine" — "such that a reasonable factfinder could resolve the point in favor of the nonmoving party" — and "material" — "the fact is one that might affect the outcome of the suit under the applicable law." Mulvihill, 335 F.3d at 19. Where a plaintiff presents no such evidence, or presents evidence that is "merely colorable or is not significantly probative," summary judgment may be appropriate. DeNovellis, 124 F.3d at 306. Importantly, in an action such as this one, summary judgment is not necessarily precluded where the plaintiff's claims involve "elusive concepts such as motive or intent" if the plaintiff opposes the motion with only "conclusory

allegations, improbable inferences, and unsupported speculation." Smith v. Stratus Computer, Inc., 40 F.3d 11, 13 (1st Cir. 1994) (internal citations and quotation marks omitted).

## III. Discussion

### A. False Arrest, Malicious Prosecution, and False Imprisonment (Counts II, III, and IV)

Principal among its several arguments, Defendant contends that Vigeant has failed to establish a necessary element common to his claims of false arrest, malicious prosecution, and false imprisonment. Defendant observes that to succeed on each claim under Rhode Island law a plaintiff must establish, inter alia, the lack of probable cause. The probable-cause inquiry in the present case, Defendant submits, is directed not to the probable cause supporting the search warrant application (on suspicion of laundering drug proceeds), but to the probability that Vigeant actually committed the crimes for which he was arrested and subsequently charged, viz., being a felon in possession of a firearm. This distinction renders inapplicable to the present inquiry the Court of Appeals's holding in Vigeant, 176 F.3d 565, which addressed only the former issue. (If it were otherwise, the holding of Vigeant may have had an estoppel effect precluding Defendant from re-litigating that issue in this Court.) Because undisputed facts show that federal agents reasonably could have believed that Vigeant was a felon in possession of a firearm,

Defendant argues that summary judgment is appropriate on this ground alone.

Plaintiff responds by aligning the probable-cause inquiry with the issue decided by the First Circuit in Vigeant. Framing the inquiry in this manner, Plaintiff argues (1) that collateral estoppel precludes Defendant from taking another bite at the probable-cause apple, and (2) regardless, "any allegation of probable cause justifying the arrest and conviction of Vigeant was fatally tainted by the illegal motive, illicit purposes, perjurious statements and reckless omissions of the agents." (Pl.'s Mem. Opp'n Def.'s Mot. Sum. J. 28.)

The parties do not dispute that, under the FTCA, Rhode Island law governs the disposition of Plaintiff's claims. See 28 U.S.C. § 1346(b)(1) (limiting jurisdiction to the "law of the place where the act or omission occurred"). This Court's first task then is to ascertain, under Rhode Island law, the common-law elements of the torts alleged.

Recovery for malicious prosecution requires that Vigeant prove four conjunctive elements: "(1) the initiation of a criminal proceeding against [him]; (2) the termination of that previous proceeding in [his] favor; (3) a lack of probable cause on [Defendant's] part when [it] initiated the criminal proceeding; and (4) the existence of malice on [Defendant's] part." Henshaw v.

Doherty, 881 A.2d 909, 915 (R.I. 2005). Although long recognized in Rhode Island, actions for malicious prosecution are generally disfavored because of the belief that they deter prosecution of criminal acts. Id. at 915 n.5. This distinction is manifest in the requirement of a heightened showing for, at a minimum, the third element above; that is, Vigeant's claim fails unless he establishes "want of probable cause 'by clear proof'" at the time criminal proceedings commenced. Solitro v. Moffatt, 523 A.2d 858, 862 (R.I. 1987).

Similarly, recovery for false arrest and false imprisonment requires, amongst other elements not relevant to this discussion, a showing that Vigeant "was detained without legal justification." Dyson v. City of Pawtucket, 670 A.2d 233, 239 (R.I. 1996); see also Mailey v. Estate of DePasquale, 177 A.2d 376, 379 (R.I. 1962) (describing this requirement as an "essential element" of false imprisonment). Put simply, Vigeant must prove that, on May 12, 1997, he was arrested and imprisoned without probable cause, see Wiggins v. Rhode Island, 326 F. Supp. 2d 297, 312 (D.R.I. 2004) (describing these requirements as synonymous in the context of false arrest); Beaudoin v. Levesque, 697 A.2d 1065, 1067 (R.I. 1997) (identifying the absence of probable cause as a "necessary element in false arrest, false imprisonment, and malicious prosecution");

although, unlike malicious prosecution, a fair preponderance will suffice.

Want of probable cause runs through each tort, and its existence would be fatal to Plaintiff's claims — a sentiment expressed in numerous holdings of the Rhode Island Supreme Court, see, e.g., Henshaw, 881 A.2d at 915-19 (existence of probable cause alone defeats claims of malicious prosecution and false arrest); Beaudoin, 697 A.2d at 1067-68 (same, but with false imprisonment as well), and echoed in the First Circuit's construction of Rhode Island law, see, e.g., Mann v. Cannon, 731 F.2d 54, 63-64 (1st Cir. 1984) (existence of probable cause dispositive to the plaintiff's claim of false arrest under Rhode Island law); cf. Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 12 (1st Cir. 2004) (existence of probable cause rendered arrest legal under § 1983) (citing Mann, 731 F.2d at 62).

The presence vel non of probable cause in the instant case turns upon on the focus of the inquiry itself. In Gordy v. Burns, 294 F.3d 722, 729 (5th Cir. 2002), a civil action for malicious prosecution brought under 42 U.S.C. § 1983, the Fifth Circuit aligned that focus in the manner suggested by Defendant here:

> The validity of the search warrant is irrelevant to whether an officer reasonably could have believed that Gordy had committed the crime of possessing marijuana with intent to distribute. The most obvious reason is that probable cause to institute criminal proceedings must be determined as of the time that charges were

> filed. The magistrate judge erred by focusing on probable cause to search the apartment . . . .
> The correct question, then, is whether the officers, at the time [the plaintiff] was charged, had probable cause to believe that he was guilty of possessing marijuana with intent to distribute. We focus on what the officers reasonably and honestly believed . . . .

Similarly, in Townes v. City of New York, 176 F.3d 138, 149 (2d Cir. 1999), the Second Circuit emphasized the distinction in the context of a § 1983 plaintiff's demand for compensatory damages for his arrest and pre-arraignment detention:

> The individual defendants here lacked probable cause to stop and search [the plaintiff], but they certainly had probable cause to arrest him upon discovery of the handguns in the passenger compartment of the taxicab in which he was riding. The lack of probable cause to stop and search does not vitiate the probable cause to arrest . . . ."

See also Freeman v. State, 788 A.2d 867, 877 (N.J. Super. Ct. App. Div. 2002) ("[a]lthough later suppressed, the evidence of illegally possessed contraband establishes that probable cause existed at the time the criminal prosecution proceeded," thus defeating the plaintiff's claims predicated on false imprisonment or arrest); Martinez v. City of Schenectady, 761 N.E.2d 560, 564-65, 565 n.2 (N.Y. 2001) (existence of probable cause to arrest, despite absence of probable cause to search, disposed of the plaintiff's false-imprisonment claim).

To succeed in this case, Vigeant must establish the absence of probable cause when he was arrested (for his claims of false arrest

and false imprisonment); and moreover, he must establish the lack of probably cause by "clear proof" at the initiation of criminal proceedings (for malicious prosecution).[9] See Meehan v. Town of Plymouth, 167 F.3d 85, 88-90 (1st Cir. 1999) (false arrest concerns probable cause at the time of arrest, whereas malicious prosecution concerns probable cause at the initiation of criminal charges). The undisputed facts show that Vigeant can do neither.[10]

Probable cause to arrest "exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime," United States v. Vongkaysone, 434 F.3d 68, 73 (1st Cir. 2006) (quoting United States v. Young, 105 F.3d 1, 6 (1st Cir. 1997)), "focuses on what the officer knew at the time of the arrest," United States v. Brown, 169 F.3d 89, 91 (1st

---

[9] This is ultimately a distinction without a difference; under the circumstances of this case, the Court need only explain Vigeant's failure to establish the absence of probable cause at his arrest. Vigeant was charged with the crime for which he was arrested, viz., being felon in possession of a firearm. He does not allege – nor is there any evidence in the record to support – a divergence of "reasonably trustworthy facts and circumstances" in the one day that separated his arrest from the filing of the criminal complaint (May 13, 1997), or even the nine days between his arrest and the filing of the indictment (May 21, 1997). And certainly, if Vigeant cannot prove the absence of probable cause by a fair preponderance, a fortiori, he cannot do so by "clear proof."

[10] Because there is no identity between the present issue and that litigated in Vigeant, 176 F.3d 565, the Court finds that Vigeant's collateral-estoppel argument is without merit. See Faigin v. Kelly, 184 F.3d 67, 78 (1st Cir. 1999).

Cir. 1999) and "does not require 'evidence sufficient to convict the individual, but merely enough to warrant a reasonable belief that he was engaging in criminal activity.'" United States v. Jones, 432 F.3d 34, 43 (1st Cir. 2005) (quoting United States v. Link, 238 F.3d 106, 110 (1st Cir. 2001)). "[P]robable cause is a common sense, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Vongkaysone, 434 F.3d at 73-74 (quoting United State v. Meade, 110 F.3d 190, 198 n.11 (1st Cir. 1997)).

At the time of arrest, federal agents, well familiar with Vigeant's felonious past, had just discovered two handguns and ammunition in his home that Vigeant himself admitted belonged to him. It is clear to this Court that these were "reasonably trustworthy facts and circumstances" that exhibited the probability that Vigeant was a felon in possession of a firearm. Indeed, a jury ultimately convicted Vigeant for that crime, although his conviction was later reversed on appeal.[11] Vigeant's attempt to deny the

---

[11] The Court need not address Defendant's remaining arguments in support of summary judgment. However, under Rhode Island law, it appears that "[p]roof of a conviction resulting from an arrest is conclusive evidence of probable cause in malicious-prosecution cases," Dyson, 670 A.2d at 239 (declining to extend the rule to false arrest), even though that conviction is ultimately reversed on appeal, see Yates v. Gawel, 37 F.3d 1484 (1 Cir. 1994) (unpublished) (citing Nagy v. McBurney, 120 R.I. 925, 931, 392 A.2d 365, 368 (1978) (applying the same principle to a civil collection

truthfulness of his statement to federal agents, without disputing that he uttered the statement, does not diminish probable cause because the inquiry concerns only the information federal agents possessed and relied upon at the time of arrest, as long as it was "reasonably trustworthy." And federal agents simply had no reason to believe that Vigeant would admit possession were it not true, or at least trustworthy, because of the serious legal ramifications such an admission might hold for a felon like Vigeant.

---

suit, but noting an exception for judicial determinations "obtained by fraud or other imposition upon the court")). Massachusetts maintains a similar rule, Broussard v. Great Atl. & Pac. Tea Co., 86 N.E.2d 439, 440 (Mass. 1949), which the First Circuit has recognized and applied. See, e.g., Meehan, 167 F.3d at 90-91 (holding that Broussard barred the plaintiff's malicious-prosecution claim under Massachusetts law, and that the "false testimony" exception did not apply because "no reasonable fact-finder could conclude that [the plaintiff's] conviction was based solely on the false testimony of the defendants").

It appears also, even without the benefit of this rule, that Vigeant's malicious-prosecution claim would fail because he cannot show that the previous criminal proceedings terminated in his favor, a term-of-art that requires a plaintiff to show more than mere contentment with the outcome. See Nagy v. McBurney, 930, 392 A.2d 365, 368 (R.I. 1978) ("termination based on a compromise or settlement is not deemed favorable"); see also Guay v. Wistow, 685 A.2d 290 (R.I. 1996) (mem.) (similar). Although the Rhode Island courts have not addressed a situation quite like this, it is unlikely that Vigeant could satisfy the favorable-termination prong of malicious prosecution because the reversal of a conviction based on an invalid search warrant alone is not "reflective of the merits of the action and of the plaintiff's innocence of the misconduct alleged therein." Guay v. Kappelle, 70 F.3d 1252 (1st Cir. 1995) (quoting Villa v. Cole, 6 Cal. Rptr. 2d 644, 648-49 (Cal. Dist. Ct. App. 1992)); see Martinez, 761 N.E.2d at 564; Freeman, 788 A.2d at 877-78.

All that remains is Vigeant's allegation of improper motives, which, even if true, do not insulate his claims from summary judgment. See Brough v. Foley, 572 A.2d 63, 66 (R.I. 1990) ("[p]roof of malice alone, however, even in the extreme, will not suffice to establish a case of malicious prosecution") (quoting Nagy, 392 A.2d at 367); see also, e.g., Henshaw, 881 A.2d at 909 (malicious prosecution and false arrest); Beaudoin, 697 A.2d at 1067-68 (plus false imprisonment); Mann, 731 F.2d at 63-64 (false arrest). In this case, the existence of probable cause is dispositive; consequently, summary judgment shall enter for Defendant on Counts II, III, and IV, and Defendant's Motion to Dismiss Counts II and IV is denied as moot.[12]

---

[12] In its Motion to Dismiss, Defendant, largely reiterating an earlier position, contends that Vigeant filed his claims for false arrest and false imprisonment out of time, and, therefore, this Court lacks subject-matter jurisdiction to entertain those claims. The Court is aware that, ordinarily, "the better practice is to confirm the existence of subject-matter jurisdiction before proceeding to the merits." Muirhead v. Mecham, 427 F.3d 14, 17 (1st Cir. 2005). However, because the presence of probable cause clearly defeats Vigeant's claims of false arrest and false imprisonment, this writer declines to assume the thorny task of fixing the dates upon which those claims accrued for the purposes of the FTCA's two-year statute of limitations. See Bolduc v. United States, 402 F.3d 50, 55 n.4 (1st Cir. 2005) ("We recognize that, in some circumstances, a court may avoid a jurisdictional quandary if a tidier resolution on the merits will dispose of the case in favor of the party challenging jurisdiction."); United States v. Stoller, 78 F.3d 710, 715 (1st Cir. 1996) ("It is a familiar tenet that when an appeal presents a jurisdictional quandary, yet the merits of the underlying issue, if reached, will in any event be resolved in favor of the party challenging the court's jurisdiction, then the court may forsake the jurisdictional

B. Abuse of Process (Count V)

Defendant also moves for summary judgment on Count V, arguing that Vigeant has not pled sufficiently the elements of abuse of process. Even if he has, Defendant continues, Vigeant's factual allegations are unsupported, conclusory, and cannot survive the scrutiny that Rule 56(c) demands. Vigeant initially responded to Defendant's first contention with a law-of-the-case argument, pointing to the District Court's adoption of the Report and Recommendation (Pl.'s Mem. Opp'n Def.'s Mot. Sum. J. 37-38); later, however, Vigeant appears to have conceded the doctrine's inapplicability.[13] (Pl.'s Mem. Supp. Reply Opp'n Def.'s Mot. Sum. J. 11.) Attempting to forestall summary judgment nevertheless, Vigeant objects to Defendant's characterization of his evidence, and presses facts and circumstances that he claims raise at least a question of fact as to an ulterior, improper motive behind the initiation of process against him.

---

riddle and simply dispose of the appeal on the merits.").

[13] To the extent that Vigeant yet contends that the law-of-the-case doctrine precludes summary judgment on Count V, that contention is rejected. See Harlow v. Children's Hosp., 432 F.3d 50, 55 (1st Cir. 2005) ("[i]nterlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute law of the case") (quoting Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994)).

The Rhode Island Supreme Court routinely has defined abuse of process by juxtaposition. See Hillside Assoc. v. Stravato, 642 A.2d 664, 667 (R.I. 1994) ("The torts of malicious prosecution and abuse of process, although often linked, are two distinct causes of action.") Although equally disfavored at law, see Clyne v. Doyle, 740 A.2d 781, 782 (R.I. 1999), "[a]buse of process, as distinguished from malicious prosecution, 'arises when a legal proceeding, although set in motion in proper form, becomes perverted to accomplish an ulterior or a wrongful purpose for which it was not designed.'" Butera v. Boucher, 798 A.2d 340, 353 (R.I. 2002) (quoting Clyne, 740 A.2d at 783). "Thus if the defendant prosecutes an innocent plaintiff for a crime without reasonable grounds to believe him guilty, it is malicious prosecution; if he prosecutes him with such [reasonable] grounds [but his ulterior motive is] to extort payment of a debt, it is abuse of process." Hillside Assoc., 642 A.2d at 667 (quoting W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 121 at 897-98 (5th ed. 1984)). As this comparison illustrates, the improper purpose typically is extortionary, "tak[ing] the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." Butera, 798 A.2d at 353 (quoting Keeton, Law of Torts § 121 at 898). Two elements emerge: to prove

abuse of process, Vigeant must demonstrate "(1) the defendant instituted proceedings or process against the plaintiff and (2) the defendant used these proceedings for an ulterior or wrongful purpose that the proceedings were not designed to accomplish." Id. (citing Nagy, 120 R.I. at 934, 392 A.2d at 370).

Vigeant asserts that the "real motive was to break [him], humiliate him, and cause him to confess to some other crime that [the federal agents] had no probable cause to investigate," (Pl.'s Mem. Supp. Reply Opp'n Def.'s Mot. Sum. J. 11), and also "to invade Vigeant's home, ransack it in the hope they would discover evidence of crime or contraband." (Pl.'s Mem. Opp'n Def.'s Mot. Sum. J. 39.) To support these assertions, Vigeant points to three main facts or circumstances: (1) federal agents already possessed the bank records that were the subject of the search (Pl.'s Ex. 9 at 20); (2) one agent, Patrick Burns, uttered derogatory comments during the search, including "I knew I would get you" (Pl.'s Ex. 7 at 1); and (3) federal agents waited only seconds before breaking down the door and

"handcuffed Plaintiff half-naked to a chair."[14] (Pl.'s Ex. 14 at 18.)

Yet these facts and circumstances, even viewed in the light most favorable to Vigeant, fail to demonstrate that a trialworthy issue exists. To support his first point, Vigeant directs the Court to a page in what appears to be the government's brief on appeal to the First Circuit in Vigeant, 176 F.3d 565. (Pl.'s Ex. 9 at 20.) This cryptic excerpt, however, does little to support the expansive proposition for which it is cited; rather, it merely identifies two bank records disclosed in Agent Botehlo's affidavit, compare (Pl.'s Ex. 9 at 20) ($19,000 deposit with a turn-around $18,500 transfer),

---

[14] Additionally, Plaintiff argues that the First Circuit's holding in Vigeant precludes summary judgment because it held that there was no "probable cause for the search warrant that was issued" and the search warrant was "applied for . . . in bad faith." (Pl.'s Mem. Supp. Reply Opp'n Def.'s Mot. Sum. J. 14.) However, the former is irrelevant because the absence of probable cause is not an element for abuse of process. See Hillside Assoc., 642 A.2d at 667 (comparing abuse of process with malicious prosecution). With respect to the latter, the Court notes that, however convenient, it is inappropriate for Vigeant to lift circumscribed language from a criminal case and pawn it off as sufficient evidence of "bad faith" in a subsequent civil action. In Vigeant, the First Circuit underscored the opprobrium of Agent Botelho's warrant application only in the context of deciding not to apply the good-faith exception to the exclusionary rule. 176 F.3d at 571-75. This does not ease Plaintiff's burden to show sufficient evidence of an ulterior or wrongful purpose here. Further, consider the divergent policies at play: in Vigeant, 176 F.3d at 575, the likelihood of a substantial deterrent effect on the police informed the First Circuit's decision; here, Rhode Island law disfavors abuse of process precisely because it tends to deter the prosecution of crimes. Butera, 798 A.3d at 354.

with Vigeant, 176 F.3d at 567 (quoting ¶ 23 of the affidavit that describes those transactions), and does not encompass all the bank records federal agents conceivably sought in the search. See Vigeant, 176 F.3d at 568 ("The warrant authorized the agents to look for all 'original bank records or copies' of Vigeant's business and personal accounts at Fleet Bank.") In fact, the process at issue (the search) did uncover some additional insignia of money laundering and drug distribution, (see Def.'s Exs. F, G, and H), even though the government ultimately chose to charge Vigeant with another crime, thus fulfilling at least one purpose for which it was designed. See Hoffman v. Davenport-Metcalf, 851 A.2d 1083, 1090-91 (R.I. 2004) (investigation of harassment allegation resulted in attainment of no contact orders, and thus did not constitute abuse of process, even though the complaints were dismissed based on insufficient evidence).

With respect to Vigeant's second point, Agent Burns's alleged remarks show, if anything, only a colorable malevolence toward Vigeant and not, as required, the perversion of process to obtain some collateral advantage. Under Rhode Island law, "[t]he gist of an abuse-of-process claim is the misuse of legal process to obtain an advantage, 'not properly involved in the proceeding itself . . . . [However], even a pure spite motive is not sufficient where process is used only to accomplish the result for which it was

created." Butera, 798 A.2d at 354 (quoting Keeton, Law of Torts § 121 at 897) (emphasis in original); see also Bolduc v. United States, No. 01-CV-11376PBS, 2002 WL 1760882 at *4 (D. Mass. July 30, 2002) (holding that an ulterior purpose simply to make arrests rather than find the true perpetrators was not abuse of process under state law similar to Rhode Island).

Finally, Vigeant's third point, which references the agents' entry at the initiation of the search and the manner in which they secured him during it, shows nothing more than the zealous execution of the agents' office. Assuming without deciding that these actions were influenced by dislike for Vigeant, they are not a sufficient gauge of abuse under the law of decision.[15] Accordingly, the Court shall also enter summary judgment for Defendant on Count V, and, for the reasons discussed in note 12 supra, deny Defendant's corresponding Motion to Dismiss as moot.

V. Conclusion

Based on the foregoing reasons, Defendant's Motion for Summary Judgement on Counts II, III, IV, and V (all remaining Counts) is

---

[15] As a brief aside, Vigeant's support includes only a citation to a photocopy of the Report and Recommendation (not discrete evidence), which addressed Plaintiff's allegations under the limited and deferential Rule 12(b)(6) standard (not the more exacting standard Vigeant must satisfy here). (See Pl.'s Mem. Supp. Reply Opp'n Def.'s Mot. Sum. J. 14; Pl.'s Ex. 14 at 18.)

GRANTED, and Defendant's collective motions to dismiss Counts II, IV, and V are DENIED as moot.

IT IS SO ORDERED.

William E. Smith
United States District Judge
Date: 10/19/06